Michael A. Bliven
BLIVEN LAW FIRM, PC
704 S. Main
Kalispell, MT 59901
Telephone: (406) 755-6828
Email:  mike@blivenlawfirm.com

John Heenan
HEENAN & COOK
1631 Zimmerman Trail
Billings, MT 59102
Telephone:  (406) 839-9091
Email:  john@lawmontana.com

Steve W. Berman (*pro hac vice*)
Craig R. Spiegel (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
Email:   steve@hbsslaw.com
            craigs@hbsslaw.com

**UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
BUTTE DIVISION**

| | |
|---|---|
| CITY AND COUNTY OF BUTTE-SILVER BOW,<br><br>            Plaintiff,<br><br>   v.<br><br>3M COMPANY (F/K/A MINNESOTA MINING AND MANUFACTURING COMPANY); DUPONT DE NEMOURS, INC.; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; CORTEVA, INC.; GLOBE MANUFACTURING COMPANY, LLC; W.L. GORE & ASSOCIATES, INC.; and LION GROUP, INC.,<br><br>            Defendant(s). | Case No. 2:25-cv-00036-BMM |

**PLAINTIFF'S OPPOSITION TO DEFENDANT
<u>3M COMPANY'S MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................1

II.   ARGUMENT.......................................................................................2

    A.    BSB has standing to sue 3M. ...............................................2

         1.    3M's traceability argument lacks merit. ....................2

         2.    3M's argument that BSB may not assert non-Montana claims is premature. ...................................7

    B.    The Court has personal jurisdiction over 3M.......................10

         1.    Personal jurisdiction exists under Montana's long-arm statute. .............................................................10

         2.    Personal jurisdiction comports with due process......15

             a.    3M purposefully availed itself of the privilege of activity in Montana. ...................15

             b.    Plaintiff's claims arise out of or relate to 3M's Montana activity.....................................15

             c.    Exercising jurisdiction over 3M would be reasonable. ...................................................15

    C.    BSB alleges valid RICO claims. .........................................16

         1.    The indirect-purchaser rule does not bar the RICO claims. ..............................................................16

             a.    The Court should await a decision by the Ninth Circuit before ruling on the IPR issue. .................16

             b.    The IPR does not apply to RICO claims. ........................18

          2.    BSB adequately alleges the existence of an enterprise...........................................................22

3. BSB sufficiently alleges that 3M conducted or participated in the conduct of an enterprise. ...........................27

4. BSB adequately alleges that the Enterprise proximately caused its RICO injuries. .....................................30

D. The state-law claims should not be dismissed. ..................................33

1. BSB adequately alleges its Montana claims. ...........................33

a. Causation. .................................................................33

b. Reliance. ...................................................................34

c. The MCPA Applies to Municipal and Institutional Plaintiffs. ......................................34

2. Because BSB alleges valid individual claims, the class claims should not be dismissed. .....................................35

III. CONCLUSION.........................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Albert v. Glob. Tel\*Link Corp.*,
    68 F.4th 906 (4th Cir. 2023) ......................................................................32, 33

*Apple Inc. v. Pepper*,
    587 U.S. 273 (2019) ...................................................................................18, 20

*Barnstable Cnty. v. 3M Co.*,
    2017 WL 6452245 (D. Mass. Dec. 18, 2017) ....................................................4

*Barron v. Reich*,
    13 F.3d 1370 (9th Cir. 1994) ............................................................................6

*Basic Energy Servs., LP v. Pierce*,
    2013 WL 1390382 (D. Mont. Apr. 4, 2013) ....................................................29

*Bennett v. Spear*,
    520 U.S. 154 (1997) ...........................................................................................2

*Biederman v. FCA US LLC*,
    2025 WL 1266907 (N.D. Cal. May 1, 2025) ...............................................16, 17

*Boyle v. United States*,
    556 U.S. 938 (2009) .............................................................22, 23, 24, 26

*Bravo v. Cnty. of San Diego*,
    2014 WL 555195 (N.D. Cal. Feb. 10, 2014) .....................................................5

*Bridge v. Phoenix Bond & Indem. Co.*,
    553 U.S. 639 (2008) ................................................................22, 31, 32

*Bristol-Myers Squibb Co. v. Superior Ct.*,
    582 U.S. 255 (2017) .................................................................13, 14, 15

*Bryan v. Apple Inc.*,
    2023 WL 2333893 (N.D. Cal. Mar. 2, 2023) ....................................................9

*Cameron v. Cross Harbor Cap. Partners, LLC*,
  2025 WL 2880053 (D. Mont. Oct. 9, 2025) .......................................................30

*Carter v. Berger*,
  777 F.2d 1173 (7th Cir. 1985) ........................................................................21

*Cataraha v. Elemental Prism, LLC*,
  2018 WL 3448283 (D. Mont. July 17, 2018) .............................................13, 14

*Club One Casino, Inc. v. Perry*,
  837 F. App'x 459 (9th Cir. 2020) ....................................................................30

*Coleman v. Bos. Sci. Corp.*,
  2011 WL 1532477 (E.D. Cal. Apr. 20, 2011) ....................................................5

*DeWitt v. Best Buy Stores, L.P.*,
  2022 WL 17340258 (D. Mont. Nov. 30, 2022)..................................................16

*In re E.I. DuPont de Nemours & Co. C-8 Pers. Inj. Litig.*,
  87 F.4th 315 (6th Cir. 2023) ..............................................................................4

*Fenner v. Gen. Motors, LLC*,
  113 F.4th 585 (6th Cir. 2024) ..........................................................................21

*Hicks v. Boeing Co.*,
  2014 WL 1284904 (D. Del. Mar. 21, 2014) .......................................................5

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*,
  22 F.4th 1125 (9th Cir. 2022) ..........................................................................17

*In re Ins. Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010) ......................................................................28, 29

*Kerley v. Nat'l R.R. Passenger Corp.*,
  2023 WL 8618242 (D. Mont. Dec. 13, 2023) ...................................................25

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014)..........................................................................................10

*Lucey v. Saint-Gobain Performance Plastics Corp.*,
  2018 WL 2926289 (N.D.N.Y. June 11, 2018) ....................................................4

*Martin v. California Dep't of Veterans Affs.*,
560 F.3d 1042 (9th Cir. 2009) ................................................................9

*McCarthy v. Recordex Serv., Inc.*,
80 F.3d 842 (3d Cir. 1996) ...................................................................21

*McKinney v. Corsair Gaming, Inc.*,
2022 WL 2820097 (N.D. Cal. July 19, 2022) ........................................9

*Med. Marijuana, Inc. v. Horn*,
604 U.S. 593 (2025).................................................................19, 20, 21

*Mendoza v. Zirkle Fruit Co.*,
301 F.3d 1163 (9th Cir. 2002) ...............................................................21

*Murphy v. Olly Pub. Benefit Corp.*,
651 F. Supp. 3d 1111 (N.D. Cal. 2023)....................................................9

*Nelson v. Forest River, Inc.*,
2023 WL 2610769 (D. Mont. Mar. 23, 2023) ........................................8

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007) ...............................................................22

*Oki Semiconductor Co. v. Wells Fargo Bank*,
298 F.3d 768 (9th Cir. 2002) .................................................................7

*In re Oral Phenylephrine Mktg. & Sales Prac. Litig.*,
755 F. Supp. 3d 208 (E.D.N.Y. 2024)...................................................21

*Parris v. 3M Co.*,
595 F. Supp. 3d 1288 (N.D. Ga. 2022)....................................................5

*Peeler v. SRG Glob. Coatings, LLC*,
2024 WL 4625640 (E.D. Mo. Oct. 30, 2024)........................................3, 6

*Peterson v. 3M Co.*,
2025 WL 2784485 (D. Minn. Sept. 30, 2025)..........................................5

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985)..............................................................................9, 10

*Plotts v. Am. Honda Motor Co.*,
  2023 WL 4843342 (C.D. Cal. June 9, 2023)......................................................9

*Pohl v. Cheatham*,
  718 S.W.3d 173 (Tex. 2025) ............................................................................10

*Rougeau v. Ahlstrom Rhinelander, LLC*,
  785 F. Supp. 3d 438 (W.D. Wis. 2025)..............................................................6

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
  473 U.S. 479 (1985)..........................................................................................18

*Simon v. E. Ky. Welfare Rts. Org.*,
  426 U.S. 26 (1976).............................................................................................9

*In re Snowflake, Inc. Data Sec. Breach Litig.*,
  2025 WL 3012889 (D. Mont. Oct. 28, 2025)....................................................33

*In re Snowflake, Inc. Data Sec. Breach Litig.*,
  2025 WL 3023007 (D. Mont. Oct. 29, 2025)..................................................2, 3

*Sultanis v. Champion Petfoods USA Inc.*,
  2021 WL 3373934 (N.D. Cal. Aug. 3, 2021) .....................................................7

*SW. Distrib. Co. v. Mont. Nineteenth Jud. Dist. Ct.*,
  562 P.3d 199 (Mont. 2024)...............................................................................15

*Tackett v. Duncan*,
  334 P.3d 920 (Mont. 2014)...............................................................................15

*Trollinger v. Tyson Foods, Inc.*,
  370 F.3d 602 (6th Cir. 2004) ...........................................................................21

*United Food & Com. Workers v. Walgreen Co.*,
  719 F.3d 849 (7th Cir. 2013) ......................................................................28, 29

*United Healthcare Servs., Inc. v. United Therapeutics Corp.*,
  2024 WL 1256266 (D. Md. Mar. 25, 2024) .....................................................21

*United States v. Christensen*,
  828 F.3d 763 (9th Cir. 2016) ..............................................................22, 27, 28

*United States v. Westlands Water Dist.*,
  134 F. Supp. 2d 1111 (E.D. Cal. 2001) ................................................................17

*Vance v. Church & Dwight Co.*,
  2023 WL 2696826 (E.D. Cal. Mar. 29, 2023).......................................................9

*Wash. Envtl. Council v. Bellon*,
  732 F.3d 1131 (9th Cir. 2013) ..........................................................................2, 3

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
  546 F. Supp. 3d 1216 (S.D. Fla. 2021)...........................................................21, 22

## STATUTES

18 U.S.C. § 1961(4) .................................................................................................22

28 U.S.C. § 1962...............................................................................................*passim*

28 U.S.C. § 1292(b) .................................................................................................16

Mont. Code Ann. § 30-14-102(1) ............................................................................34

Mont. Code Ann. § 30-14-102(6) ............................................................................34

Mont. Code Ann. § 30-14-133(1) ............................................................................33

Organized Crime Control Act, Pub. L. No. 91-452, § 1 (1970)..............................18

## OTHER AUTHORITIES

Fed. R. Evid. 201(b)(2) ...........................................................................................12

Mont. R. Civ. P. 4(b)(1)...........................................................................................11

## I.     INTRODUCTION

3M's motion to dismiss should be denied in its entirety.[1] For decades, 3M and the other Defendants have known the health risks of per- and polyfluoroalkyl substances ("PFAS").[2] Through a common enterprise (the "PFAS Concealment Enterprise"), 3M sold PFAS-infused products to fire departments and public entities that respond to fires, including plaintiff Butte-Silver Bow ("BSB"), without ever disclosing that PFAS in turnout gear is extremely dangerous to health, property, and the environment.[3] Instead, Defendants collaborated to conceal the truth by means of the PFAS Concealment Enterprise.[4]

3M ignores key allegations, including that 3M and defendant DuPont de Nemours, Inc. ("Old DuPont") have known since the 1950s about the dangers of PFAS. *See* ¶¶ 112–132 (DuPont's knowledge). But they actively hid those dangers *for decades*. ¶¶ 12–16.

---

[1] *See* Defendant 3M Company's Brief in Support of Motion to Dismiss ("3M Br."), Dkt. No. 101.

[2] *See* Complaint And Demand For Jury Trial ("Complaint), Dkt. No. 1, ¶¶ 2, 10-11. References to "¶" are to paragraphs in the Complaint unless otherwise noted.

[3] ¶ 11.

[4] ¶ 12.

Because it ignores these allegations and more, 3M's motion should be denied.[5] First, BSB unwittingly purchased contaminated gear, has been injured as a result, and can trace its injury to 3M. Second, the Court has personal jurisdiction over 3M, because "Defendants, by selling products to Montana customers in Montana, have established contacts with Montana and exposed themselves to being sued in the District of Montana." Dkt. No. 85 at 13. Third, BSB has standing for its RICO claim, and there is no "indirect purchaser" bar to RICO claims. BSB has been proximately injured by the acts of the RICO enterprise, and all elements of the RICO claim are adequately plead. Fourth, BSB states valid claims under Montana law and has standing to assert claims based on the laws of other states.

## II.    ARGUMENT

### A.    BSB has standing to sue 3M.

#### 1.    3M's traceability argument lacks merit.

To allege Article III standing, a plaintiff must claim an injury "fairly traceable to the challenged conduct." *See Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1140 (9th Cir. 2013) (citation omitted). The burden to do so is "relatively modest" at the pleading stage. *Bennett v. Spear*, 520 U.S. 154, 171 (1997). It "does not require parties to show proximate causation or but-for causation." *In re Snowflake, Inc. Data*

---

[5] BSB sets forth the standards of review in detail in its Opposition to the DuPont Defendants' motion to dismiss and incorporate those standards here.

*Sec. Breach Litig.*, 2025 WL 3023007, at *5 (D. Mont. Oct. 29, 2025) (internal quotations omitted). Instead, traceability requires only that "[t]he line of causation between the defendant's action and the plaintiff's harm" be "more than attenuated." *Wash. Envtl. Council*, 732 F.3d at 1141.

3M argues that BSB doesn't allege that its turnout gear contains 3M product, *see* 3M Br. at 8, but that mischaracterizes the Complaint. BSB plausibly alleges that 3M manufactured, marketed, and sold PFAS and PFAS-containing materials that defendants Globe and Lion used to produce BSB's turnout gear. ¶¶ 10, 19, 98–99, 101, 104, 108, 109–110, 190. The presence of multiple links in a causal chain doesn't bar traceability so long as they aren't "hypothetical or tenuous." *See Wash. Envtl. Council*, 732 F.3d at 1141–42. The Complaint draws a clear line of traceability to 3M. *Cf., e.g., Peeler v. SRG Glob. Coatings, LLC*, 2024 WL 4625640, at *4 (E.D. Mo. Oct. 30, 2024) (causation established where 3M allegedly manufactured PFAS used in another defendant's manufacturing).

3M contends it is possible that some PFAS and PFAS-containing materials in question were manufactured by other Defendants or by unidentified non-parties. *See* 3M Br. at 8–9. But BSB is not required to allege that 3M is the "sole source" of injuries. *See Wash. Envtl. Council*, 732 F.3d at 1142. Therefore, 3M's argument— which urges the Court to infer that it did not touch *all* PFAS materials in BSB's

gear—is irrelevant. *Lucey v. Saint-Gobain Performance Plastics Corp.*, 2018 WL 2926289 (N.D.N.Y. June 11, 2018), shows this lack of relevance.

In *Lucey*, the plaintiff claimed that 3M, DuPont, and others contributed to PFOA contamination in a village. The defendants argued that the plaintiff failed to "identify the exact defendant" who supplied PFOA that "caused [her] injury." *Id.* at *8. But the court held that the plaintiff wasn't required to allege she was exposed solely to PFOA manufactured by 3M or DuPont. Rather, it was reasonable to infer that 3M and DuPont produced "much of the PFOA" at the contamination site. *Id.* at *9. The court ruled it was "irrelevant that the [plaintiff's complaint] [left] open the possibility that [the plaintiff] also consumed PFOA sold … by other suppliers." *Id.* It is similarly reasonable to infer that 3M and DuPont produced "much of the PFOA" that caused BSB's injuries.

3M also argues that the Complaint relies on impermissible group pleading. *See* 3M Br. at 8. 3M ignores allegations that unequivocally establish *its* contribution to BSB's harm. *See, e.g.*, ¶¶ 101, 108–110, 135-136. And the cases that 3M cites are easily distinguishable.[6] In any event, purported group pleading "only runs afoul of

---

[6] *See In re E.I. DuPont de Nemours & Co. C-8 Pers. Inj. Litig.*, 87 F.4th 315, 318–321 (6th Cir. 2023) (emphasizing plaintiff's bare allegations, choice to "treat the defendants as a collective" and "lump[] them all together," and failure to "allege any plausible pathway" by which any of the defendants could have injured plaintiff); *Barnstable Cnty. v. 3M Co.*, 2017 WL 6452245, at *11 (D. Mass. Dec. 18, 2017) (complaint "conclusorily assert[ed] that each defendant made AFFF and is thus liable for the County's damages," without specifying "which defendant's products"

the applicable pleading standard where it denies a defendant notice of the specific claim against it." *See Bravo v. Cnty. of San Diego*, 2014 WL 555195, at *2 (N.D. Cal. Feb. 10, 2014). 3M's "arguments for dismissal reveal that it understands in detail the nature of and basis for" BSB's claims. *Cf. Parris v. 3M Co.*, 595 F. Supp. 3d 1288, 1312 (N.D. Ga. 2022).

Finally, 3M incorrectly argues that: (1) BSB does not identify specific PFAS and PFAS-containing materials that 3M manufactured, and (2) the Complaint is contradicted by evidence that 3M phased out PFOA in 2002. *See* 3M Br. at 10–11. 3M has been a dominant global producer of PFAS and PFAS-infused materials that are incorporated in turnout gear. ¶¶ 88, 98–99, 118, 126, 136. These allegations suffice. *See, e.g., Coleman v. Bos. Sci. Corp.*, 2011 WL 1532477, at *3 (E.D. Cal. Apr. 20, 2011) (plaintiff not required to "specifically identify" products at issue); *Hicks v. Boeing Co.*, 2014 WL 1284904, at *2 (D. Del. Mar. 21, 2014) (rejecting argument that complaint must "identify the specific Boeing product that is the subject of Plaintiffs claims" and collecting cases).

---

led to the contamination or "why the County believe[d] each of the named defendants were the manufacturers of the AFFF"); *Peterson v. 3M Co.*, 2025 WL 2784485, at *4 (D. Minn. Sept. 30, 2025) (allegations attributing PFAS products at issue to non-defendant and grouping defendants together with same non-defendant undermined traceability, "especially absent any statements plausibly pleading that Plaintiffs' carpets were treated with PFAS products").

3M's involvement extends beyond producing and distributing PFOA. BSB alleges 3M manufactured and distributed PFAS and PFAS-containing materials present in turnout gear, a much more extensive range of products. ¶¶ 10, 19, 98–99, 101, 104, 109–110, 190. And even if 3M's role *were* limited solely to PFOA, evidence that it ceased production of new PFOA in 2002 does not detract from the allegations. All PFAS are resistant to degradation, giving them a remarkably long shelf-life. ¶ 3.[7] The EPA has cautioned that existing stocks of 3M's PFOA may still be in use many years after 3M stopped production of new PFOA.[8] Particularly relevant, PFOA is commonly used as a processing aid in the manufacture of PTFE, which means it is present in turnout gear.[9]

---

[7] 3M acknowledges that it used existing stocks of PFOA in its manufacturing processes until 2008. *See* 3M Br. at 5 n.1 ("3M has acknowledged that … it used PFOA in [manufacturing] until 2008"). *Cf. Peeler*, 2024 WL 4625640, at *4 (emphasizing 3M's admission that even *it* used existing stocks of PFOA until 2008); *Rougeau v. Ahlstrom Rhinelander, LLC*, 785 F. Supp. 3d 438, 451 (W.D. Wis. 2025) (ruling 3M's claimed "phase out" of PFOA did not warrant dismissal of strict-liability claims based on 15-year statute of repose, emphasizing shelf-life of PFOA and 3M's involvement in manufacture of other types of PFAS).

[8] *See Fact Sheet: 2010/2015 PFOA Stewardship Program*, EPA, https://www. epa.gov/assessing-and-managing-chemicals-under-tsca/fact-sheet-20102015-pfoa-stewardship-program#mfg (last visited Nov. 7, 2025) ("The manufacture … of PFOA has also been phased out in [the] United States as part of the PFOA Stewardship program. Existing stocks of PFOA might still be used … ."); *see also Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994) (Court may take judicial notice of "[r]ecords and reports of administrative bodies").

[9] *See Drinking Water Health Advisory for Perfluorooactanic Acid (PFOA)*, EPA, https://www.epa.gov/sites/default/files/2016-05/documents/pfoa_health_advisory_final-plain.pdf at pages 21 and 24 (last visited

Finally, tracing a sale to BSB by *any* member of the PFAS Concealment Enterprise subjects all other members of that enterprise to joint liability. As the Ninth Circuit has explained, "[h]olding RICO conspirators jointly and severally liable for the acts of their co-conspirators reflects the notion that the damage wrought by the conspiracy 'is not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole.'" *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 775 (9th Cir. 2002) (citation omitted).

### 2. 3M's argument that BSB may not assert non-Montana claims is premature.

3M erroneously argues that state-law claims not based on Montana law must be dismissed for lack of standing. *See* 3M Br. at 12-16. 3M cites a 2017 opinion for the proposition that the "'overwhelming majority of courts'" would dismiss BSB's non-Montana claims. *Id.* at 12 (citation omitted). But in recent years, a "growing minority of courts in this circuit have held … that whether a named plaintiff can represent class members whose claims arise under the laws of different states is not a standing question that needs to be decided at the motion to dismiss stage." *Sultanis v. Champion Petfoods USA Inc.*, 2021 WL 3373934, at *5 (N.D. Cal. Aug. 3, 2021) (citing cases).

---

Nov. 12, 2025) (Because "PFOA is a processing aid in the manufacture of PTFE," "legacy use" and "continuing uses" of PFOA that can result in potential human exposure include "Textiles, e.g., Gore-Tex™") *and e.g.,* ¶¶ 67–70, 86–87, 97, 139, 162, 198.

3M fails to metion *Nelson v. Forest River, Inc.*, 2023 WL 2610769, at *8 (D. Mont. Mar. 23, 2023), which denied a motion to dismiss class allegations. This Court held that "striking the class allegations for lack of standing, at this early juncture, would deprive [plaintiff] of the opportunity to 'marshal information about the respective claims, similarities, and variations in the laws of the applicable states, and the potential need for subclasses based on any state law variations.'" *Id*. (quoting plaintiff's brief). This Court stated that it "agrees with other district courts that have determined that 'whether the differences in law are truly material is better suited for resolution at class certification or on a motion for summary judgment, when the Court will have the benefit of a more developed factual record.'" *Id.* (citation omitted).

The defendant in *Nelson* also claimed that the plaintiff "has standing only to bring claims under Montana law, and, as a result, the Court may not apply the law of any other state without a class member whose claims would fall under that state's law." *Id*. at *9. This Court explained that it "will allow Nelson's class to survive for the same reasons that the Court refrains from striking the class allegations due to potential variations in state law." *Id.* In recent years, numerous other courts have

held that whether a plaintiff can represent classes under the laws of States other than the plaintiff's home State is a Rule 23 issue, not an Article III issue.[10]

Moreover, two Supreme Court cases cited by 3M are inapposite. In *Martin v. California Dep't of Veterans Affs*., 560 F.3d 1042, 1050 (9th Cir. 2009), which was not a class action, the Court held that the daughter of a deceased woman lacked standing to bring a § 1983 claim on her mother's behalf. And in *Simon v. E. Ky. Welfare Rts. Org*., 426 U.S. 26, 40 & n.20 (1976), the Court held that the plaintiffs could not represent a class when "they allege no injury to themselves…." Neither decision has any bearing on this case.

Nor is there any merit to 3M's argument that the non-Montana claims must be dismissed because "a plaintiff may not seek to apply the law of a particular state to 'a transaction with little or no relationship to' that state." 3M Br. at 14 (citation omitted). The cases cited by 3M did not address whether a plaintiff that has standing to bring its own claim can bring valid claims for putative class members from other States. In *Phillips Petroleum Co. v. Shutts*, the "courts applied Kansas contract and Kansas equity law to every claim in this case, notwithstanding that over 99% of the

---

[10] *See, e.g., Murphy v. Olly Pub. Benefit Corp*., 651 F. Supp. 3d 1111, 1134 (N.D. Cal. 2023); *Plotts v. Am. Honda Motor Co*., 2023 WL 4843342, at \*13 (C.D. Cal. June 9, 2023); *Vance v. Church & Dwight Co*., 2023 WL 2696826, at \*6 (E.D. Cal. Mar. 29, 2023); *Bryan v. Apple Inc*., 2023 WL 2333893, at \*2 (N.D. Cal. Mar. 2, 2023); *McKinney v. Corsair Gaming, Inc*., 2022 WL 2820097, at \*11 (N.D. Cal. July 19, 2022).

gas leases and some 97% of the plaintiffs in the case had no apparent connection to the State of Kansas except for this lawsuit." 472 U.S. 797, 816 (1985). Here, BSB alleges that the laws of each State apply only to putative class members who were injured in that State. The other cases cited by 3M are also inapposite, because they merely held that various State laws do not have extraterritorial effect. *See, e.g., Pohl v. Cheatham*, 718 S.W.3d 173, 182 (Tex. 2025) ("This Court has long recognized that Texas statutes are presumed not to have extraterritorial effect."). BSB does not seek extraterritorial application of *any* law.

Finally, 3M cites *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), which was not a class action and which held that the plaintiff had standing to sue under the Lanham Act. *Lexmark* does not address (let alone support) 3M's argument that BSB must have standing to bring its *own* claim under the laws of each State in order to represent putative classes from States other than Montana.

**B.     The Court has personal jurisdiction over 3M.**

**1.     Personal jurisdiction exists under Montana's long-arm statute.**

3M's conduct establishes specific jurisdiction under Montana Rule 4(b)(1)(A) or (B). In denying the motion to transfer, this Court explained that "Defendants, by selling products to Montana customers in Montana, have established contacts with Montana and exposed themselves to being sued in the District of Montana." Dkt. No. 85 at 13. 3M does not provide any basis for the Court to now decide otherwise.

BSB sets forth the standards for assessing personal jurisdiction in its Opposition to the DuPont Defendants' motion to dismiss. Under those standards, the Complaint adequately alleges personal jurisdiction over 3M.

The Complaint alleges that 3M "intentionally manufactured, distributed, marketed and/or sold PFAS" to Globe and Lion for infusion into Plaintiff's turnout gear, despite knowing the dangers posed by PFAS and that it conspired to market and distribute its PFAS products through the use of jointly designed and distributed marketing materials that misrepresented and concealed the dangers of PFAS. ¶¶ 10–12, 112–20, 134-35, 146–47, 205. 3M manufactures both turnout gear and PFAS that was infused into the Globe and Lion turnout gear purchased by BSB. ¶¶ 24, 28, 101, 104, 190. 3M helped direct and control continued marketing and sale of its defective gear to firefighters throughout the country, including Plaintiff. ¶¶ 38, 190, 195. BSB relied on 3M's "material misrepresentations and omissions" regarding the known risks posed by PFAS manufactured or sold by 3M and, as a result of 3M's tortious conduct directed into Montana, overpaid for gear they would not otherwise have purchased, because they "were deprived of the ability to buy PFAS-free turnout gear." ¶¶ 24, 43, 190, 219, 256.

Additional facts support personal jurisdiction over 3M, which is registered to do business in the State of Montana.[11] 3M's website has a search page that allows buyers who are not directly solicited by its agents to find a sales representative or distributor[12] and another providing a search for the nearest distributor of 3M's Fire Service and First Responders products.[13, 14] 3M's website also has a search page that can be used to display a distributor of its products located in Billings, as well as SeaWestern, located in Kirkland, Washington.[15]

BSB's Administrative Specialist, Diane Evankovich, and its Fire Chief, Zach Osborne, received marketing and sales solicitations from 3M's "sales representatives and distributors" in Montana. Dkt. Nos. 46-1 at 2-3; 46-2 at 3. Both declare that SeaWestern directly markets to them in person in Montana, over the phone, via email, and through catalogues, for the purchase of 3M and Lion gear.[16] And Nate

---

[11] *See* https://biz.sosmt.gov/search/business (searching for "3M Company" shows its registration). The Court may take judicial notice of 3M's registration under Federal Rule of Evidence 201(b)(2).

[12] https://www.3m.com/3M/en_US/safety-us/sales-rep-locator/ (last visited Nov. 17, 2025).

[13] https://www.3m.com/3M/en_US/fire-safety-and-first-responders-us/support/#lookup (last visited Nov. 17, 2025).

[14] The Court may take judicial notice of information on 3M's website.

[15] https://www.3m.com/3M/en_US/fire-safety-and-first-responders-us/support/#lookup.

[16] Ms. Evankovich reiterates those facts in the Declaration of Diane Evankovich in Opposition to Defendants' Motions to Dismiss ("Evankovich MTD Decl."), filed simultaneously herewith.

Mathews, a SeaWestern representative living in Billings, contacts BSB "regularly" regarding 3M products. Dkt. Nos. 46-1 at 3; 46-2 at 4. Viewing the "Quick Shop" link for any of 3M's products advertised on SeaWestern's website indicates that the product "Ships from the Manufacturer."[17]

3M also markets its PFAS brands at firefighter-targeted events in Montana. On August 13-14, 2021, 3M held the "3M Scott Firefighter Combat Challenge" in Big Sky, where 3M products were promoted and marketed. Eankovich MTD Decl., ¶ 5. Butte Silver Bow Fire Department ("BSBFD") personnel knew about that event at the time. *Id.*, ¶ 6. On October 8-12, 2025, BSBFD's Fire Chief, Assistant Chief, two Battalion Chiefs, and a few Volunteer Chiefs attended the 2025 Montana Fire Chiefs' Association Fire Service Convention that was held at the Copper King Hotel in Butte. *Id.*, ¶ 7. At the convention, SeaWestern represented 3M and Lion Group products, and LN Curtis represented Globe products, along with approximately 50 to 60 other vendors. *Id.*

These facts establish personal jurisdiction over 3M, which erroneously argues that the acts of authorized agents like SeaWestern cannot be considered. *See* 3M Br. at 28 (citing *Walden v. Fiore*, 571 U.S. 277 (2014), and *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255 (2017)). In *Cataraha v. Elemental Prism, LLC*, 2018 WL

---

[17] https://seawestern.com/collections/3m-scott (last visited Nov. 17, 2025).

3448283, at *4 (D. Mont. July 17, 2018), this Court explained that "[p]hysical entry into the state – either by the defendant in person or through an agent, goods, mail, or some other means – qualifies as a relevant contact. *Walden*, 571 U.S. at 285 (citation omitted)." This Court found that the defendant's "products did not happen to enter Montana through the streams of commerce." *Id*.[18]

3M's reliance on *Bristol-Myers* is also misplaced. The Supreme Court stated that the "relevant plaintiffs are not California residents and do not claim to have suffered harm in that State." 582 U.S. at 265. The plaintiffs asserted that defendant "BMS's 'decision to contract with a California company [McKesson] to distribute [Plavix] nationally' provides a sufficient basis for personal jurisdiction." *Id*. at 268. The Court disagreed, holding that jurisdiction over nonresident plaintiffs who were not injured in California and who had no contacts with California could not be based on the "bare fact that [the defendant] contracted with a California distributor…." *Id*.

Here, in contrast, 3M purposefully marketed its PFAS products into Montana, where those products were shipped and used. Further, BSB discovered the defect in Montana and were harmed in Montana. Indeed, the Supreme Court stated in *Bristol-Myers* that "the plaintiffs who are residents of a particular State—for example, the

---

[18] To the extent the Court finds that SeaWestern's role is essential to the analysis, BSB seeks jurisdictional discovery regarding the relationship between SeaWestern (and LN Curtis) and Defendants.

92 plaintiffs from Texas and the 71 from Ohio—could probably sue together in their home States." *Id.*[19]

### 2.   Personal jurisdiction comports with due process.

#### a.   3M purposefully availed itself of the privilege of activity in Montana.

3M purposefully directs marketing of its products, including turnout gear infused with its PFAS into Montana on its own or as part of its conspiracy with co-Defendants to market this gear into Montana.

#### b.   Plaintiff's claims arise out of or relate to 3M's Montana activity.

Plaintiff's claims arise out of 3M's conduct directly marketing its products into Montana. This case is distinguishable from *Tackett v. Duncan*, 334 P.3d 920, 929 (Mont. 2014), cited by 3M, in which the defendants had "no connection with this state, other than the connection that [plaintiff] himself has created."

#### c.   Exercising jurisdiction over 3M would be reasonable.

In denying Defendants' motion to transfer, this Court has found that: "the inconvenience to witnesses will be severely burdened by a trial held in Montana," "Defendant have not shown immovable evidence would be at issue in this case,"

---

[19] This case is unlike *SW. Distrib. Co. v. Mont. Nineteenth Jud. Dist. Ct.*, 562 P.3d 199, 208-210 (Mont. 2024), in which third-party defendant "Southwest did not sell North Idaho Insulation the product at issue, nor did North Idaho Insulation purchase the product from a third-party distributor within Montana."

"Defendants have not met their burden in showing that litigation would be less expensive in Delaware," and "Defendants have not established Delaware's interest in the controversy outweighs Montana's interest," which is a "strong interest in protecting its citizens." Dkt. No. 85 at 12, 15-18. *See DeWitt v. Best Buy Stores, L.P.*, 2022 WL 17340258, at *5 (D. Mont. Nov. 30, 2022) (finding exercise of jurisdiction reasonable in similar circumstances).

## C.  BSB alleges valid RICO claims.

### 1.  The indirect-purchaser rule does not bar the RICO claims.

3M erroneously argues that the indirect purchaser rule ("IPR") applicable to antitrust cases bars RICO claims. *See* 3M Br. at 24. 3M's argument should be rejected for two reasons: (1) this Court should defer ruling on 3M's argument pending the Ninth Circuit's resolution of an interlocutory appeal as to whether the IPR applies in RICO cases; and (2) 3M's argument is incorrect.

### a.  The Court should await a decision by the Ninth Circuit before ruling on the IPR issue.

In the *Biederman* litigation, the district court certified an interlocutory appeal under 28 U.S.C. § 1292(b) "as to whether *Illinois Brick* applies to claims brought under 18 U.S.C. § 1964(c)." *Biederman v. FCA US LLC*, 2025 WL 1266907, at *3

(N.D. Cal. May 1, 2025). On June 18, 2025, the Ninth Circuit granted permission to appeal.[20] Briefing on appeal is complete except for the reply brief.[21]

3M's argument that the IPR undoubtedly applies in RICO cases is at odds with the Ninth Circuit's decision in *Biederman* that there are substantial grounds for difference of opinion as to that question. To certify an order under § 1292(b), the district court must find that that are "substantial grounds for difference of opinion" as to the question at issue. *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (citation omitted). "The merits panel then must agree that the requirements of § 1292(b) are met." *Id*. 1131. Therefore, by granting permission to appeal in *Biederman*, the Ninth Circuit has determined that there are substantial grounds for difference of opinion as to whether the IPR applies to RICO.

This Court can defer the IPR question pending the Ninth Circuit's decision, by denying 3M's motion without prejudice. *See United States v. Westlands Water Dist*., 134 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001) ("Finding that the *Firebaugh Canal Co*. appeal would impact the water-users' unjust enrichment theory, their cross-motion for summary judgment was denied without prejudice, pending the

---

[20] *Biederman v. FCA US, LLC, et al*., Case No. 25-3063 (9th Cir.), Dkt. No. 9.1.

[21] The Appellants' opening brief was filed on September 3, 2025. *See id*., Dkt. No. 10.1.

Ninth Circuit's decision in *Firebaugh Canal Co*."). Plaintiffs respectfully submit that deferring a ruling on the IPR is the most efficient means of proceeding.

### b.      The IPR does not apply to RICO claims.

3M's IPR argument should be rejected if the Court addresses it now. Cases brought under the Clayton Act almost invariably involve an overcharge injury to an immediate purchaser. *See Apple Inc. v. Pepper*, 587 U.S. 273, 276 (2019) (a "claim that a monopolistic retailer (here, Apple) has used its monopoly to overcharge consumers is a classic antitrust claim"). The Court adopted the indirect purchaser rule in antitrust actions because "multiple parties at different levels of a distribution chain are trying to all recover the same passed-through overcharge initially levied by the manufacturer at the top of the chain." *Id*. at 287. In contrast, RICO is a far broader statute that combats "fraud," "corruption," and "other forms of social exploitation" infiltrating "legitimate business[s]." Organized Crime Control Act, Pub. L. No. 91-452, § 1 (1970). Unlike the Clayton Act, RICO also addresses a wide spectrum of harms.

In the half-century since RICO's enactment, the Supreme Court has declined numerous efforts to apply antitrust rules in civil RICO actions. The first is *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985). The Second Circuit held that a RICO plaintiff must allege a "racketeering injury," by "[a]nalogizing to the Clayton Act, which had been the model for § 1964(c)." *Id*. at 485. The Supreme Court

reversed, explaining that it is "significant that a previous proposal to add RICO-like provisions to the Sherman Act had come to grief in part precisely because it could create inappropriate and unnecessary obstacles in the way of ... a private litigant [who] would have to contend with a body of precedent—appropriate in a purely antitrust context—setting strict requirements on questions such as standing to sue and proximate cause." *Id*. at 498 (citation and internal quotations omitted). Further, "[i]n borrowing its 'racketeering injury' requirement from antitrust standing principles, the court below created exactly the problems Congress sought to avoid." *Id*. at 498-99.

Similarly, the Supreme Court recently held that the "phrase 'injured in his business or property' does not preclude recovery for all economic harms that result from personal injuries" in a RICO action. *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 614 (2025). The Court explained that "[p]erhaps realizing that our civil RICO precedent is not on their side, Medical Marijuana and the principal dissent largely ignore it, insisting instead that our antitrust precedent settles the issue…. But their reliance on antitrust law is misplaced." *Id*. at 606 (footnote omitted). As the Court stated, "to the extent our modern antitrust precedent forecloses recovery for certain economic harms, it does so because of a requirement that we have expressly declined to extend to civil RICO." *Id*. at 607. The Court stated that "we … reiterate today that

the Clayton Act and § 1964(c) are not 'interchangeable.'" *Id.* at 608 (quoting *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 352 (2016)).

Similarly, the IPR should not be imported into RICO cases, which do not involve "multiple parties at different levels of a distribution chain … trying to all recover the same passed-through overcharge initially levied by the manufacturer at the top of the chain." *Apple*, 587 U.S. at 287. Here, BSB doesn't allege that 3M overcharged for PFAS or that middlemen passed costs through to BSB. Instead, BSB seeks "damages in the form of money to replace turnout gear." ¶ 21. *See also* ¶ 20 ("The presence of PFAS in turnout gear requires that the PFAS-impregnated gear be replaced as soon as possible. The cost of turnout gear (excluding respirators) is approximately $3,000 per suit, with many departments providing two suits for each firefighter."). It is the *presence* of dangerous PFAS in the gear—not the price that 3M charged for PFAS—that injured BSB. Moreover, 3M did not defraud Globe or Lion, which already knew about the harmful effects of PFAS. Instead, the only party defrauded was BSB. It's not just that Globe or Lion wouldn't sue 3M, it's that they participated in the RICO enterprise, were not defrauded, and did not suffer *any* injury or pass through any damages.

The type of injury alleged by BSB here has no analog in antitrust cases. BSB alleges it must replace turnout gear that poses a danger to firefighters. Similarly, in *Medical Marijuana*, the Supreme Court stated that, "[a]s the principal dissent itself

observes: 'Few antitrust violations are likely to inflict personal injury' because 'anticompetitive acts break laws, not legs.' Post, at 959 (opinion of KAVANAUGH, J.). Well put—and all the more reason to wonder why antitrust law is particularly helpful here.'" 604 U.S. at 606 n.6.

3M cites an inapposite Ninth Circuit decision. In *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1168–69 (9th Cir. 2002), the Ninth Circuit held that "plaintiffs who have suffered 'passed-on' injury—that is, injury derived from a third party's direct injury—lack statutory [RICO] standing." BSB does *not* seek damages for passed-on injuries. The other cases cited by 3M involved passed-on injuries and were resolved by applying RICO standards for proximate cause, not black-letter standards.[22] *See*

---

[22] *See Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 615 (6th Cir. 2004) (holding that the indirect purchaser rule didn't apply in RICO action because "we cannot agree that plaintiffs' alleged injury is exclusively derivative"); *Fenner v. Gen. Motors, LLC*, 113 F.4th 585, 604 n.6 (6th Cir. 2024) (following what it understood to be binding Circuit precedent from *Trollinger* but criticizing IPR as "unsupported by sensible principles" and likely to "immunize[] major manufacturers from RICO liability"); *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 855 (3d Cir. 1996) (clients of attorneys who bought photocopies at inflated prices were indirect purchasers who only alleged passed-on overcharges); *Carter v. Berger*, 777 F.2d 1173, 1176 (7th Cir. 1985) (tax-avoidance scheme directly injured only the county, not other taxpayers who claimed their taxes increased because of the fraud); *In re Oral Phenylephrine Mktg. & Sales Prac. Litig.*, 755 F. Supp. 3d 208, 219 (E.D.N.Y. 2024) ("'[I]ndirect purchasers lack standing under RICO and the antitrust laws to sue for overcharges passed on to them by middlemen.'") (quoting *Trollinger*, 370 F.3d at 616); *United Healthcare Servs., Inc. v. United Therapeutics Corp.*, 2024 WL 1256266, at *11, *12 (D. Md. Mar. 25, 2024) (plaintiff alleged the "overcharged pharmacies … in turn passed that increased cost along to patients and to" plaintiff); *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 546 F. Supp. 3d 1216, 1223 (S.D. Fla.

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008) (proximate cause in RICO action is "a flexible concept that does not lend itself to a black-letter rule that will dictate the result in every case") (citation and internal quotation marks omitted).

### 2.      BSB adequately alleges the existence of an enterprise.

3M erroneously argues that the Complaint fails to allege a RICO enterprise. 3M Br. at 27-31. A RICO enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). This "expansive definition is 'not very demanding.'" *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2016) (quoting *Odom v. Microsoft Corp.*, 486 F.3d 541, 548 (9th Cir. 2007) (en banc)). An associated-in-fact enterprise is "a group of persons associated together for a common purpose," proof of which requires "evidence of an ongoing organization, formal or informal" and "evidence that the various associates function as a continuing unit." *Odom*, 486 F.3d at 549.

The Supreme Court has explained that "an association-in-fact enterprise must have a structure." *Boyle v. United States*, 556 U.S. 938, 945 (2009). But the Court stressed that "it is incorrect" to argue that "the existence of an enterprise may never

---

2021) ("'indirect purchasers lack standing under RICO and the antitrust laws to sue for overcharges passed on to them by middlemen'") (citation omitted).

be inferred from the evidence showing that persons associated with the enterprise engaged in a pattern of racketeering activity." *Id*. at 947. Instead, "the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise 'may in particular cases coalesce.'" *Id.* (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). The Court noted that the defendant "concedes that an association-in-fact enterprise may be an informal group and that not much structure is needed" but argued that it "must have at least some additional structural attributes…." *Id*. at 948 (cleaned up).

The Court rejected that argument, because there is "no basis in the language of RICO for the structural requirements that petitioner asks us to recognize." *Id*. The Court explained that "an association-in-fact enterprise is simply a continuing unit that functions with a common purpose. Such a group need not have a hierarchical structure or a 'chain of command'; decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc." *Id.* Moreover, the "group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence." *Id.* "Nor is the statute limited to groups whose crimes are sophisticated, diverse, complex, or

unique; for example, a group that does nothing but engage in extortion through old-fashioned, unsophisticated, and brutal means may fall squarely within the statute's reach." *Id.* And the Supreme Court held that "the trial judge did not err in instructing the jury that 'the existence of an association-in-fact is oftentimes more readily proven by what is [sic] does, rather than by abstract analysis of its structure.' … This instruction properly conveyed the point we made in *Turkette* that proof of a pattern of racketeering activity may be sufficient in a particular case to permit a jury to infer the existence of an association-in-fact enterprise." *Id*. at 951.

3M incorrectly argues that the Complaint "alleged nothing more than routine business relationships among Defendants and has not plausibly alleged any elements of an associated-in-fact enterprise." 3M Br. at 27. In support of that argument, 3M cherry-picks allegations and ignores the detailed description in the Complaint of fraudulent acts by 3M and the other Defendants.

One key example from the Complaint suffices to show that 3M and DuPont did not engage in only routine business relationships. 3M and DuPont have known since the 1950s about the dangers of PFAS. *See* ¶¶ 112–120 (3M's knowledge); ¶¶ 121–132 (DuPont's knowledge). But instead of revealing those dangers, 3M and DuPont actively hid them *for decades*.

Specifically, 3M sent *only* DuPont a Material Safety Data Sheet ("MSDS") in 1997 that warned of PFAS's cancer dangers. ¶ 14. The chemical referred to in that

document is PFOA, which is a particularly harmful PFAS and which 3M and DuPont knew—*based on their joint studies*—could cause cancer. ¶ 15. Instead of complying with their duties to disclose the truth about the dangers of PFAS, 3M and DuPont suppressed the 1997 MSDS. And as a former Minnesota Attorney General testified before a United States House Committee, "3M removed the label that same year and for decades sold PFAS products without warning the public of its dangers." ¶ 16. Now, 3M ignores those allegations despite its obligation to assess *all* allegations in seeking dismissal.[23]

Instead of acknowledging those allegations, 3M falsely asserts that "this Complaint contains only stray allegations that 3M and DuPont—companies that are competitors—jointly conducted or shared the results of a few studies related to PFAS years before Plaintiff allegedly purchased turnout gear from other Defendants." 3M Br. at 28. Thus, 3M simply ignores its suppression of the damning MSDS, which would have revealed the dangers of PFAS. And 3M cannot rationally argue that its affirmative suppression of the MSDS in 1997 is irrelevant, when it and the DuPont Defendants have continually suppressed the dangers ever since. Indeed, when it

---

[23] *See Kerley v. Nat'l R.R. Passenger Corp.*, 2023 WL 8618242, at *1 (D. Mont. Dec. 13, 2023) (in assessing a motion to dismiss for failure to state a claim, the district "court must consider all allegations of material fact as true and construed in a light most favorable to the plaintiff").

announced in 2022 that it intended to stop using PFAS by 2025, 3M falsely stated that its PFAS products "are safe for their intended uses." ¶ 120.

BSB also adequately alleges in great detail that all of the other Defendants are part of the enterprise. They have known at all relevant times that the PFAS in turnout gear is dangerous but nonetheless, along with 3M and DuPont, have continuously marketed the gear (and the PFAS contained in the gear) as safe. *See* ¶¶ 133–154. But 3M ignores those detailed allegations. *See, e.g.,* ¶ 142 ("In 2019, Defendant Gore issued a public statement, asserting that 'the potential exposures and associated risks of cancer effects from PFOA alternatives and non-polymeric perfluoroalkyl substances in Gore Components [turnout gear] are insignificant.'").

The foregoing allegations (and more) in the Complaint adequately allege an enterprise under *Boyle*, which 3M does not even cite. All Defendants knew that the sales of PFAS and PFAS-laden turnout gear would stop if *any one of them* told the truth about the dangers of PFAS and turnout gear. Defendants' two decades of failing to disclose the truth about PFAS products—and affirmatively lying about their dangers—allows a jury to infer the existence of the enterprise "from the evidence showing that persons associated with the enterprise engaged in a pattern of racketeering activity." *Boyle*, 556 U.S. at 947. The alleged enterprise meets the three prongs of proof of an enterprise: (1) all Defendants have the common purpose of concealing the emissions dangers of PFAS-infused products to allow their continued

sales, *see* ¶ 196; (2) the Enterprise was ongoing under *Boyle*, as discussed above; and (3) the Enterprise acted continuously for at least a decade, *see* ¶ 28 (Plaintiff purchased turnout gear from 2008 through 2024).

3M myopically cites only those allegations that it believe support its motion and cites inapposite cases based on its inaccurate portrayal of the Complaint. One example will demonstrate the fatal shortcomings in 3M's argument. As discussed above, 3M ignores its suppression of the MSDS, which would have disclosed the dangers of PFAS in 1997. Instead, it blithely asserts that "merely sharing information is 'insufficient to prove an association-in-fact RICO enterprise.'" 3M Br. at 30-31 (quoting *Gentle Wind Project v. Garvey*, 407 F. Supp. 2d 282, 288 (D. Me. 2006)). But 3M and DuPont did *not* merely share information. They suppressed the truth for decades, just as the other Defendants have done as part of an enterprise to facilitate their sales of dangerous PFAS products by means of misrepresentations and material omissions that were necessary for them to continue selling PFAS and PFAS-laden turnout gear.

3. **BSB sufficiently alleges that 3M conducted or participated in the conduct of an enterprise.**

3M also incorrectly asserts that the Complaint fails to allege that it conducted or participated in the conduct of an enterprise. 3M Br. at 24-26. To be found liable, it "'is sufficient that the defendant know the general nature of the enterprise and know that the enterprise extends beyond his individual role.'" *Christensten*, 828 F.3d

at 780 (citation omitted). Likewise, a RICO conspiracy under § 1962(d) requires only that the defendant was "'aware of the essential nature and scope of the enterprise and intended to participate in it.'" *Id.* (citation omitted). Indeed, "'[t]he RICO net is woven tightly to trap even the smallest fish, those peripherally involved with the enterprise.'" *Id*. at 781 (citation omitted).

3M erroneously argues that the Defendants here acted separately or engaged in parallel conduct. *See* 3M Br. at 24-26. To the contrary, they committed fraud every time they sold PFAS products without disclosing the truth about PFAS dangers and every time they mispresented the supposed safety of PFAS products. Crucially, that scheme required that *all* Defendants commit fraud because sales would have stopped if any of them told the truth.

3M relies on *United Food & Com. Workers v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013), which does not support its argument. 3M Br. at 24-26. In that case, an employee benefit plan alleged that a pharmacy fraudulently overcharged it by filling prescriptions for drugs with a dosage form that was more expensive than the form prescribed to customers. But the court held that the complaint did "not indicate how the cooperation in this case exceeded that inherent in every commercial transaction between a drug manufacturer and pharmacy…." *Id.* at 856.

In contrast, Defendants here could not have implemented their scheme unless they *all* hid the truth about PFAS. So, this case is like *In re Ins. Brokerage Antitrust*

*Litig.*, 618 F.3d 300 (3d Cir. 2010), which *United Food* distinguished and which held that "'if defendants band together to commit [violations] they cannot accomplish alone ... then they cumulatively are conducting the association-in-fact enterprise's affairs, and not [simply] their own affairs.'" *Id*. at 378 (citation omitted). The court in *United Food* explained that the *Insurance Brokerage* defendants "could not have achieved their goals—namely, fixing a competitive bidding process in order to win insurance contracts at inflated prices—without cooperation that fell outside the bounds of the parties' normal commercial relationships." 719 F.3d at 856. But in contrast, the conduct in *United Food* was "entirely consistent with Walgreens and Par each going about its own business…." *Id*. at 854-55.

Unlike in *United Food*, Defendants here were not "each going about its own business." *Id.* at 855. They could not have sold their PFAS products unless *all* enterprise members hid the truth. BSB adequately alleges that Defendants "could not have achieved their goals … without cooperation that fell outside the bounds of the parties' normal commercial relationships." *Id*. at 856.

Finally, BSB alleges that Defendants are liable not only under RICO section 1962(c) but also under section 1962(d), which makes it unlawful for "any person to conspire to violate" section 1962(c). *See* ¶ 186. In *Basic Energy Servs., LP v. Pierce*, 2013 WL 1390382, at *5 (D. Mont. Apr. 4, 2013), the court held that a defendant "need not have personally committed two or more predicate acts to be liable for a §

1962(d) RICO conspiracy." Because 3M does not even address the claim under section 1962(d), that claim survives.

### 4. BSB adequately alleges that the Enterprise proximately caused its RICO injuries.

3M erroneously argues that the Complaint does not adequately allege RICO proximate cause. *See* 3M Br. at 31-34. The Ninth Circuit has stated that it is "guided by three practical considerations" in assessing proximate causation under RICO: (1) the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the RICO violation, as distinct from other, independent, factors; (2) directly injured victims can generally be counted on to vindicate the law, rendering unnecessary recognition of a cause of action for those only indirectly injured; and (3) allowing recovery by indirectly injured plaintiffs would result in complicated rules apportioning damages among plaintiffs removed at different levels of injury to obviate the risk of multiple recoveries. *Club One Casino, Inc. v. Perry*, 837 F. App'x 459, 460–61 (9th Cir. 2020).[24]

Under these standards, BSB adequately alleges proximate cause. First, there is no need to apportion between damages, because no independent factors exist. Second, there is no more directly injured party who can deter Defendants. Third,

---

[24] *Accord*, *Cameron v. Cross Harbor Cap. Partners, LLC*, 2025 WL 2880053, at *3 (D. Mont. Oct. 9, 2025).

there is no risk of duplicative recovery, because only BSB can seek replacement damages.

This case is similar to *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008), which held that the plaintiff adequately alleged RICO proximate cause. The plaintiffs were bidders at a tax lien auction. To ensure fair distribution of tax liens at the auctions, the county enacted a rule requiring each "tax [lien] buying entity" to bid in its own name. *Id*. at 643. The plaintiffs alleged that the defendants violated that rule by using agents to submit bids on the defendants' behalf and directing those agents to file false attestations that they complied with the rules. *Id*. at 643-44. As a result, the plaintiffs allegedly did not obtain their fair share of liens. *Id*. at 644.

The *Bridge* defendants argued that the harm was speculative because they allegedly made misrepresentations to the county, not the plaintiffs. *Id*. at 648. The Supreme Court disagreed, explaining that "the plaintiff's loss must be a foreseeable result of *someone's* reliance on the misrepresentation." *Id*. at 656 (footnote omitted; emphasis in original). The Court held that the plaintiffs' "alleged injury—the loss of valuable liens—is the direct result of [the defendants'] fraud. It was a foreseeable and natural consequence of [the defendants'] scheme to obtain more liens for themselves…." *Id*. at 658.

BSB's injuries are also a foreseeable and natural consequence of Defendants' scheme. As in *Bridge*, what matters is not whether there was a direct relationship

between the parties but rather whether there is a "sufficiently direct relationship between the defendant's *wrongful conduct* and the plaintiff's injury...." *Id*. at 657 (emphasis added). There is a direct relationship between Defendants' fraud and the foreseeable and natural consequence—indeed, the *intended* consequence—that BSB purchase dangerous turnout gear that needs to be replaced.

3M further erroneously contends that "Plaintiff's theory of causation also fails because it extends significantly beyond the first step in the causal chain and rests on intervening acts of third parties." 3M Br. at 32 (citing *Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co*., 884 F.3d 489, 494-95 (4th Cir. 2018) (internal quotation marks omitted)). That argument ignores the holding in *Bridge* that a RICO plaintiff need not have a direct relationship with the defendant so long as the injury "was a foreseeable and natural consequence of" the scheme. 553 U.S. at 658.

3M misunderstands *Slay's*. In a later decision, the Fourth Circuit stated that *Slay's* found "no proximate causation because the subcontractor's alleged RICO injury—not being fully paid for its work in repairing flood damage—was derivative of the property owner's own loss from being underpaid by its insurer, which illegally undervalued the owner's claim." *Albert v. Glob. Tel*Link Corp.*, 68 F.4th 906, 911 (4th Cir. 2023). The court held that the plaintiffs in *Albert* adequately alleged RICO proximate cause because their "injuries aren't derivative of those suffered by the

governments." *Id.* at 913. BSB's injuries are not derivative of harm suffered by anyone else.

**D.     The state-law claims should not be dismissed.**

**1.     BSB adequately alleges its Montana claims.**

**a.     Causation.**

3M incorrectly contends that the Complaint doesn't state valid claims under Montana law. *See* 3M Br. at 34-37. BSB alleges that it purchased PFAS-laden products in reliance on 3M's misrepresentations and omissions, spending taxpayer funds on gear that was not safe and now must be replaced and remediated. It further alleges that 3M manufactured and sold PFAS knowing the risks it posed, that 3M's PFAS was ultimately infused into Plaintiff's turnout gear rendering it unreasonably dangerous, and that 3M failed to warn Plaintiff of the known risks posed by its product. The Complaint also alleges that 3M's conduct caused it injury as Plaintiff must now purchase replacement turnout gear. ¶¶ 10–12, 24, 28, 38, 43, 101, 104, 112–20, 134–35, 146–47, 190, 195, 205, 219, 256.

Thus, the Complaint adequately alleges causation of actual injury, as well as the "ascertainable loss" requirement under Mont. Code Ann. § 30-14-133(1). *See In re Snowflake, Inc. Data Sec. Breach Litig.*, 2025 WL 3012889, at *11 (D. Mont. Oct. 28, 2025) (plaintiffs adequately alleged causation and ascertainable loss under MCPA by alleging "they would have purchased tickets elsewhere, or not at all, if they had been aware that Ticketmaster would not have adequately protected their

personal information"). Plaintiff's expenditures for replacing contaminated gear are direct, quantifiable losses caused by 3M's conduct of manufacturing a defective product and failing to warn.

### b.    Reliance.

The Complaint adequately alleges reliance, because BSB relied on Defendants' "material misrepresentations and omissions," including their failure to alert Plaintiff to the known dangers of PFAS, which ultimately caused it injury. ¶¶ 112–20, 135–36, 147, 214, 255–59.

### c.    The MCPA Applies to Municipal and Institutional Plaintiffs.

3M's suggestion that a governmental entity cannot sue under the MCPA is contrary to the statute's plain language. Mont. Code Ann. § 30-14-102(6) defines "person" to include "any … association, corporation, or any other legal entity." Further, "consumer" "means a person who purchases or leases goods, services, real property, or information primarily for personal, family, or household purposes." *Id*. § 30-14-102(1). That definition does not require that a person who buys a product must buy the product for its *own* "personal" use. The Complaint explains that BSB bought the turnout gear for firefighters' "personal" use. ¶ 76 ("Turnout gear is the personal protective equipment (PPE) used by fire fighters, depicted below."). 3M does not cite any case that bars such a claim under the MCPA.

**2.     Because BSB alleges valid individual claims, the class claims should not be dismissed.**

Because the Montana law claims should proceed on their merits, there is no basis for the dismissal of Plaintiff's class claims. *See* 3M Br. at 37.

### III.   CONCLUSION

3M's motion to dismiss should be denied in its entirety.

DATED: November 20, 2025              Respectfully submitted,


By: /s/ *John Heenan*
        John Heenan
HEENAN & COOK
1631 Zimmerman Trail
Billings, MT 59102
Telephone:  (406) 839-9091
Email:  john@lawmontana.com

By: /s/ *Michael A. Bliven*
        Michael A. Bliven
BLIVEN LAW FIRM, PC
704 S. Main
Kalispell, MT 59901
Telephone: (406) 755-6828
Email:  mike@blivenlawfirm.com

By: /s/ *Steve W. Berman*
     Steve W. Berman (*pro hac vice*)
By: /s/ *Craig R. Spiegel*
     Craig R. Spiegel (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
Email:  steve@hbsslaw.com
     craigs@hbsslaw.com

By: /s/ *Ian W. Sloss*
     Ian W. Sloss (*pro hac vice*)
Jennifer Sclar (*pro hac vice* forthcoming)
SILVER GOLUB & TEITELL LLP
One Landmark Square, 15th Floor
Stamford, CT 06901
Telephone: (203) 325-4491
Email:  jsclar@sgtlaw.com
     isloss@sgtlaw.com

By: /s/ *Kyle J. McGee*
Kyle J. McGee (*pro hac vice* forthcoming)
GRANT & EISENHOFFER P.A.
123 S. Justison Street
Wilmington, DE 19801
Telephone: (302) 622-7000
Email:  kmcgee@gelaw.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(d), I certify that the above brief is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced, and the word count, calculated by Microsoft Office Word, is 8,422 words, excluding the caption, certificate of compliance, table of contents and authorities, and certificate of service.

*/s/ John Heenan*
John Heenan

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Montana using the CM/ECF system, causing it to be electronically served on all attorneys of record.

*/s/ John Heenan*
John Heenan