Michael A. Bliven
BLIVEN LAW FIRM, PC
704 S. Main
Kalispell, MT 59901
Telephone: (406) 755-6828
Email:  mike@blivenlawfirm.com

John Heenan
HEENAN & COOK
1631 Zimmerman Trail
Billings, MT 59102
Telephone:  (406) 839-9091
Email:  john@lawmontana.com

Steve W. Berman (*pro hac vice*)
Craig R. Spiegel (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
Email:   steve@hbsslaw.com
            craigs@hbsslaw.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| CITY AND COUNTY OF BUTTE-SILVER BOW,<br><br>               Plaintiff,<br><br>     v.<br><br>3M COMPANY (F/K/A MINNESOTA MINING AND MANUFACTURING COMPANY); DUPONT DE NEMOURS, INC.; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; CORTEVA, INC.; GLOBE MANUFACTURING COMPANY, LLC; W.L. GORE & ASSOCIATES, INC.; and LION GROUP, INC.,<br><br>               Defendants. | Case No. 2:25-cv-00036-BMM |

**PLAINTIFF'S OPPOSITION TO DUPONT DE NEMOURS, INC., THE CHEMOURS COMPANY, THE CHEMOURS COMPANY FC, LLC, AND CORTEVA, INC.'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ....................................................................................1

II.  STANDARD OF REVIEW ....................................................................1

III.  ARGUMENT .........................................................................................2

    A.  BSB has standing to sue the DuPont Defendants. ...............................2

        1.  The DuPont Defendants' traceability argument
            lacks merit. ......................................................................................2

            a.  BSB adequately alleges traceability as to
                DuPont. ....................................................................2

            b.  All Defendants are liable for injuries caused
                by PFAS-infused gear bought by BSB that
                can be traced to any Defendant.........................................8

        2.  DuPont's argument that BSB may not assert non-
            Montana claims is premature. .......................................................8

    B.  The Court has personal jurisdiction over the DuPont
        Defendants. .......................................................................................9

        1.  The Court has personal jurisdiction over Old
            DuPont. .......................................................................................10

            a.  This Court has personal jurisdiction over
                 Old DuPont under Montana's long-arm
                 statute. .....................................................................10

            b.  Personal jurisdiction over Old DuPont
                 comports with due process. ..........................................17

               (1)  Old DuPont purposefully availed
                   itself of the privilege of activity in
                   Montana. ..............................................................18

(2)    BSB's claims arise out of or relate to Old DuPont's Montana activity. ...........................18

(3)    Exercising jurisdiction over Old DuPont would be reasonable. ...............................19

2.    Because the Court has personal jurisdiction over Old DuPont, it also has jurisdiction over the other DuPont Defendants. .................................................21

C.    BSB states a valid RICO claim. ...........................................................23

D.    BSB states valid state-law claims. ........................................................23

IV.    CONCLUSION ..................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
2022 WL 19859215 (D.S.C. Mar. 10, 2022)......................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................1

*Baker v. E.I. DuPont de Nemours & Co.*,
2024 WL 4527101 (N.D.N.Y. Sept. 24, 2024)..................................................5, 6

*Banks v. E.I. DuPont de Nemours & Co.*,
2022 WL 3139087 (D. Del. Aug. 4, 2022).......................................................6, 7

*Bristol-Myers Squibb Co. v. Super. Ct. Cal.*
582 U.S. 255 (2017).....................................................................................14, 15

*Cataraha v. Elemental Prism, LLC*,
2018 WL 3448283 (D. Mont. July 17, 2018) ..................................15, 16, 19, 20

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) .............................................................................21

*Duffy v. Kaman Aero. Corp.*,
590 F. Supp. 3d 1317 (D. Mont. 2022).........................................................10, 18

*In re E.I. DuPont de Nemours & Co. C-8 Pers. Inj. Litig.*,
87 F.4th 315 (6th Cir. 2023) ............................................................................5, 7

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021).............................................................15, 16, 18, 19

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*,
204 F.3d 149 (4th Cir. 2000) ..............................................................................5

*In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*,
2025 WL 553696 (N.D. Ill. Feb. 19, 2025).........................................................6

*Kell v. Freedom Arms Inc.*,
748 F. Supp. 3d 973 (D. Mont. 2024).........................................................10, 17

*King v. Health Care Servs. Corp.*,
   2024 WL 3430602 (D. Mont. July 15, 2024) .................................................1, 2

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ..........................................................................................9

*Longaker v. Bos. Sci. Corp.*,
   872 F. Supp. 2d 816 (D. Minn. 2012), *aff'd*, 715 F.3d 658 (8th Cir.
   2013) ...................................................................................................................9

*Lucey v. Saint-Gobain Performance Plastics Corp.*,
   2018 WL 2926289 (N.D.N.Y. June 11, 2018) .................................................6

*Nelson v. Forest River, Inc.*,
   2023 WL 2610769 (D. Mont. Mar. 23, 2023) ..................................................8

*Oki Semiconductor Co. v. Wells Fargo Bank*,
   298 F.3d 768 (9th Cir. 2002) ............................................................................8

*Peeler v. SRG Glob. Coatings, LLC*,
   2024 WL 4625640 (E.D. Mo. Oct. 30, 2024)...................................................6

*Richmond v. Madison Mgmt. Grp., Inc.*,
   918 F.2d 438 (4th Cir. 1990) ..........................................................................22

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ..........................................................................10

*In re Snowflake, Inc., Data Sec. Breach Litig.*,
   2025 WL 3023007 (D. Mont. Oct. 29, 2025).....................................................3

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)............................................................................................3

*State of New Hampshire v. 3M Co.*,
   No. 216-2019-CV-0045 (Sup. Ct., Merrimack Cnty. July 7, 2021)..................22

*State ex rel. Stein v. E. I. DuPont de Nemours & Co.*,
   879 SE.2d 537 (N.C. 2022)..............................................................................21

*Stewart v. Kodiak Cakes, LLC*,
   537 F. Supp. 3d 1103 (S.D. Cal. 2021)............................................................12

*Thompson v. City of Bozeman*,
  2020 WL 6144808 (D. Mont. Oct. 20, 2020) ........................................................7

*Walden v. Fiore*,
  571 U.S. 277 (2014) ............................................................................................15

*Wash. Envtl. Council v. Bellon*,
  732 F.3d 1131 (9th Cir. 2013) ....................................................................*passim*

## OTHER AUTHORITIES

Fed. R. Evid. 201 ........................................................................................................21

Mont. R. Civ. P. 4(b)(1) ..........................................................................9, 10, 14, 17

## I.   INTRODUCTION

All of the grounds underlying DuPont's motion are flawed.[1,2]  First, Butte-Silver Bow ("BSB") unwittingly purchased contaminated gear and can "fairly trace" its injury to DuPont as required by case law. Second, the Court has personal jurisdiction over DuPont, because this Court has already found that "Defendants, by selling products to Montana customers in Montana, have established contacts with Montana and exposed themselves to being sued in the District of Montana." Dkt. No. 85 at 13. Third, BSB has been proximately injured by the PFAS Concealment Enterprise, and all of the elements of a RICO claim are readily satisfied. Fourth, BSB states valid claims under Montana law and at this stage has standing to assert claims based on the laws of other states.

## II.   STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Plausibility arises when the complaint pleads facts that the Court can draw reasonable inferences from that would prove the defendant liable." *King v. Health Care Servs. Corp.*, 2024 WL

---

[1] *See* DuPont Defendants' brief in support of motion to dismiss ("DuPont Br."), Dkt. No. 106. In this brief, "DuPont" refers to all of the DuPont Defendants unless otherwise noted.

[2] Complaint And Demand For Jury Trial ("Complaint), Dkt. No. 1, ¶¶ 112–132. References herein to "¶" are to paragraphs in the Complaint unless otherwise noted.

3430602, at *1 (D. Mont. July 15, 2024). A court "must take allegations of material fact as true and construe the facts in the light most favorable to the nonmoving party." *Id.* Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable theory. *Id.*

Standards of review for motions to dismiss for lack of personal jurisdiction are set forth in Section III(B)(1), below.

## III.    ARGUMENT

### A.    BSB has standing to sue the DuPont Defendants.

#### 1.    The DuPont Defendants' traceability argument lacks merit.

##### a.    BSB adequately alleges traceability as to DuPont.

As a dominant supplier of PFAS chemicals and materials, DuPont participated in a decades-long conspiracy to sell toxic equipment to fire departments while concealing the danger to firefighters. *See* ¶¶ 97–111. DuPont now gestures towards a handful of "and/or" statements in the Complaint ("3M and/or DuPont") to claim that none of BSB's injuries are traceable to DuPont. The Court should reject this attempt to misconstrue the pleadings for three reasons. First, DuPont ignores allegations specific to DuPont, specifically that DuPont itself sold PFAS chemicals and materials to be used in turnout gear. *See, e.g,* ¶¶ 101, 104. Second, traceability does not require that DuPont be the "sole source of injury," *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1142 (9th Cir. 2013), so allegations about other suppliers do not dilute the contamination's traceability to DuPont. Third, at the motion to dismiss

stage, the Court cannot find facts or draw inferences in DuPont's favor. Thus, the Court cannot credit the suggestion that PFAS could have come from "unnamed, nonparty suppliers." DuPont Br. at 5. Because BSB alleges that DuPont *itself* sold PFAS to gear manufacturers, the poisonous trail leads back to DuPont. *See, e.g.,* ¶¶ 101, 104.

BSB establishes Article III standing, because its injuries are "fairly traceable to the challenged conduct of the defendant." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 330 (2016). At the pleadings stage, the burden to allege traceability is "relatively modest." *Bennett v. Spear*, 520 U.S. 154, 171 (1997). This Court has observed that the "burden for sufficiently pleading causation as an element of standing does not require parties to show proximate causation or but-for causation." *In re Snowflake, Inc., Data Sec. Breach Litig.*, 2025 WL 3023007, at *5 (D. Mont. Oct. 29, 2025) (internal quotations omitted). Instead, traceability requires only that the "line of causation between the defendant's action and the plaintiff's harm" be "more than attenuated." *Wash. Envtl. Council*, 732 F.3d at 1141.

Allegations specific to DuPont establish traceability. DuPont sold PFAS and PFAS-laden materials to Defendants Lion and Globe, who use them in turnout gear. *See, e.g.,* ¶¶ 97–99, 101 ("Globe has continued to … sell turnout gear containing PFAS, using PFAS-containing materials supplied by Defendants 3M, *Dupont*, [and] Gore") (emphasis added); ¶ 104 ("Defendant Lion has continued to … sell turnout

gear containing PFAS, using PFAS-containing materials *supplied by Defendants DuPont and Gore*") (emphasis added). DuPont anticipated that its chemicals and materials would be incorporated, unaltered, into firefighter protective equipment. ¶¶ 109–110. DuPont specifically "advertises that turnout gear manufactured with DuPont's materials 'work hard to help keep your professionals safe, inside and out,' [and] 'help protect professionals even when the fire is out,' and 'are helping keep first responders safe." ¶ 148.[3] And DuPont, working closely with 3M, knowingly concealed the dangers of PFAS for decades. ¶¶ 121–132. While the Complaint contains several "and/or" statements about PFAS-supplying Defendants, when read as a whole, BSB alleges that *DuPont* sold both PFAS and PFAS-containing materials to the manufacturers of BSB's turnout gear. Thus, BSB's injuries are traceable to DuPont. *Wash. Env't Council*, 732 F.3d at 1141–42 ("A causal chain does not fail simply because it has several links.").

Second, the existence of another PFAS-supplying Defendant, namely 3M, does not undermine traceability to DuPont, because traceability does not require that a defendant be the "sole source of injury." *Id.* at 1142. While DuPont and 3M may point the finger at each other at trial, BSB has shown traceability by alleging that

---

[3] DuPont's website boasts that it is "proud to partner … manufacturers" of first responder gear and lists Defendants Globe and Lion as manufacturers that use its materials. *See* https://www.dupont.com/personal-protection/firefighter-fabrics-man-ufacturers.html (last visited Nov. 18, 2025).

*both* supplied PFAS (or PFAS-containing materials) to turnout gear manufacturers and that both participated in an enterprise to conceal the dangers of PFAS-laden gear. At the present stage, traceability between corporations does not require "pinpointing the origins of particular molecules." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000) ("[i]f scientific certainty were the standard [of traceability], then plaintiffs would be required to supply costly, strict proof of causation to meet a threshold jurisdictional requirement").

DuPont erroneously relies heavily on the Sixth Circuit's decision in *Hardwick* to argue that multiple supplier defendants of PFAS cannot coexist in the same case. *See* DuPont Br. at 5; *see also In re E.I. DuPont de Nemours & Co. C-8 Pers. Inj. Litig.*, 87 F.4th 315 (6th Cir. 2023) ("*Hardwick*"). In *Hardwick*, the plaintiff named ten producers of PFAS and alleged they were responsible for five PFAS compounds found in his blood. 87 F.4th at 318. The Sixth Circuit dismissed on traceability grounds because "nowhere in his complaint … did Hardwick allege that any of these defendants, much less every one of them, manufactured any of those five compounds. Nor did he allege any plausible pathway by which any of these defendants could have delivered any of these five PFAS to his bloodstream." *Id.* at 321. *Hardwick* is an extreme case that courts have readily distinguished when the plaintiff plausibly alleges a pathway between PFAS-manufacturing defendants and the plaintiff's injury. *See Baker v. E.I. DuPont de Nemours & Co.*, 2024 WL

4527101, at *15 (N.D.N.Y. Sept. 24, 2024) (distinguishing *Hardwick*); *In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*, 2025 WL 553696, at *4 (N.D. Ill. Feb. 19, 2025) (same, because "[p]laintiffs … sufficiently tied their injuries to … each … [d]efendant").

Contrary to DuPont's argument that 3M's presence renders PFAS claims untraceable, courts around the country have allowed cases against DuPont and 3M to proceed where plaintiffs plausibly allege that both companies "caused" PFAS-related injuries. *See Banks v. E.I. DuPont de Nemours & Co.*, 2022 WL 3139087, at *7 (D. Del. Aug. 4, 2022), *report and recommendation adopted*, 2022 WL 3577111 (D. Del. Aug. 19, 2022) (allowing negligence claims against 3M and DuPont where both are "manufacturer defendants"); *Lucey v. Saint-Gobain Performance Plastics Corp.*, 2018 WL 2926289, at *8 (N.D.N.Y. June 11, 2018) ("[p]laintiff has sufficiently alleged … that her injury was caused by PFOA manufactured by 3M and DuPont"); *Peeler v. SRG Glob. Coatings, LLC*, 2024 WL 4625640, at *3 (E.D. Mo. Oct. 30, 2024) (PFAS contamination traceable to multiple defendants, including 3M).

Traceability does not require a defendant to be the "sole source of injury," *Wash. Envtl. Council*, 732 F.3d at 1142. Because BSB alleges that *both* DuPont and 3M supplied PFAS, its injuries are traceable to both. Traceability fails only "where the causal chain involves numerous third parties whose independent decisions

collectively have a significant effect on plaintiffs' injuries." *Id.* Here, BSB alleges that a small group of chemical and materials companies (DuPont, 3M, and Gore) supplied PFAS to be used by gear manufacturers (Lion and Globe). Within this limited ecosystem, BSB has identified a "plausible pathway by which" DuPont's PFAS ended up in firefighter equipment. *Hardwick*, 87 F.4th at 321.

Third, at the pleading stage, the Court cannot construe facts or draw inferences in DuPont's favor. *See Thompson v. City of Bozeman*, 2020 WL 6144808, at *3 (D. Mont. Oct. 20, 2020) ("this Court presumes as true all well-pleaded allegations, resolves all reasonable doubts and inferences in the pleader's favor, and views the pleading in the light most favorable to the non-moving party"). DuPont argues that BSB's allegations "leave open the possibility" that PFAS in turnout gear could be made by "unnamed, nonparty suppliers." DuPont Br. at 5. DuPont asks the Court to infer that PFAS in turnout gear could have come from anywhere. But BSB *alleges* it came from DuPont, 3M, and Gore. Nothing more is required. *Banks*, 2022 WL 3139087 at *9 (plaintiffs plausibly alleged causation against several supplier-defendants; "[o]nly time will tell" "[w]hether Plaintiffs will ultimately be able to prove that a particular … [s]upplier sold a PFC-product").

**b.** **All Defendants are liable for injuries caused by PFAS-infused gear bought by BSB that can be traced to any Defendant.**

Tracing a sale to BSB by *any* member of the PFAS Concealment Enterprise subjects all other members of that enterprise to joint liability. As the Ninth Circuit has explained, "[h]olding RICO conspirators jointly and severally liable for the acts of their co-conspirators reflects the notion that the damage wrought by the conspiracy 'is not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole.'" *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 775 (9th Cir. 2002) (citation omitted).

**2.** **DuPont's argument that BSB may not assert non-Montana claims is premature.**

DuPont erroneously argues that all state-law claims not based on Montana law must be dismissed for lack of standing. *See* DuPont Br. at 6. BSB discusses that argument at length in its Opposition to 3M's motion to dismiss and incorporates that discussion here. DuPont ignores that this Court rejected that argument in *Nelson v. Forest River, Inc.*, 2023 WL 2610769, at *9 (D. Mont. Mar. 23, 2023) (rejecting defendant's argument that the plaintiff "has standing only to bring claims under Montana law, and, as a result, the Court may not apply the law of any other state without a class member whose claims would fall under that state's law"). Instead of acknowledging *Nelson* (and the many other cases cited by BSB in its Opposition to 3M's motion to dismiss that agree with *Nelson*) DuPont cites a single case from a

California district court that, of course, is not binding on this Court. *See* DuPont Br. at 6 (citing *Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028 (S.D. Cal. 2020)).

DuPont also makes the irrelevant argument that BSB cannot state its *own* claim under the laws of any State other than Montana. DuPont Br. at 6. For that argument, DuPont cites *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), which was not a class action. The Supreme Court merely held that the plaintiff had standing to sue for false advertising under the Lanham Act. *Lexmark* does not address (let alone support) DuPont's argument that BSB must have standing to bring its *own* claim under the laws of each State at issue in order to represent putative classes from States other than Montana. The other case cited by DuPont is inapposite for the same reason. *See Longaker v. Bos. Sci. Corp.*, 872 F. Supp. 2d 816, 820 (D. Minn. 2012) (in a non-class action, plaintiff could not bring his own claim under California law), *aff'd*, 715 F.3d 658 (8th Cir. 2013).

**B.     The Court has personal jurisdiction over the DuPont Defendants.**

DuPont's conduct establishes specific jurisdiction under Rule 4(b)(1)(A) or (B). In denying Defendants' motion to transfer, this Court found that "Defendants, by selling products to Montana customers in Montana, have established contacts with Montana and exposed themselves to being sued in the District of Montana." Dkt. No. 85 at 13. DuPont does not provide any basis for the Court to now decide otherwise.

**1.    The Court has personal jurisdiction over Old DuPont.**

"The Court must construe the complaint in the light most favorable to the plaintiff when analyzing a motion to dismiss for lack of personal jurisdiction" and "accept as true the allegations in the complaint." *Duffy v. Kaman Aero. Corp.*, 590 F. Supp. 3d 1317, 1322 (D. Mont. 2022) (citation omitted). When a "motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts" centering the analysis on whether the "pleadings and affidavits make a prima facie showing of personal jurisdiction" with conflicts "over statements contained in affidavits must be resolved in the plaintiff's favor."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citations omitted). "In Montana, courts apply a two-step test to determine whether they have personal jurisdiction over a nonresident defendant." *Kell v. Freedom Arms Inc.*, 748 F. Supp. 3d 973, 980 (D. Mont. 2024). The analysis begins with Montana's long-arm statute before proceeding to whether the exercise of personal jurisdiction complies with due process.  *Id.*

**a.    This Court has personal jurisdiction over Old DuPont under Montana's long-arm statute.**

Montana's long-arm statute subjects parties to specific jurisdiction "as to any claim for relief arising from the doing personally, or through an employee or agent" of "(A) the transaction of any business in Montana; [or] (B) the commission of any act resulting in accrual within Montana of a tort action."  Mont. R. Civ. P. 4(b)(1).

Old DuPont built the town of Ramsay, Montana, and misrepresented and concealed the known dangers of its PFAS for decades from regulators and the public while conspiring with co-Defendants to ensure that turnout gear infused with its PFAS was marketed and sold into Montana. Indeed, Old DuPont flooded the global marketplace with products that it knew contained toxic chemical compounds, including those in the PFAS family at issue, while simultaneously marketing these products as "safe," purposefully misrepresenting and concealing the dangers it knew were posed by the presence of its PFAS. ¶¶ 11–16, 97–99, 121–132, 137–138, 147–148, 191.

By participating in the alleged RICO enterprise, Old DuPont "intentionally manufactured, distributed, marketed and/or sold PFAS" to Globe and Lion for infusion into BSB's turnout gear, despite its knowledge of the dangers posed by that PFAS and further conspired to market and distribute its defective products through the use of jointly designed and distributed marketing materials that misrepresented and concealed the dangers of PFAS known to DuPont. ¶¶ 10–15, 97–101, 104–110, 121–132, 137–138, 147–148, 189, 191, 205. Old DuPont directed and controlled the continued marketing and sale of its defective gear to firefighters throughout the country, including BSB. ¶¶ 38, 191, 195. BSB relied on DuPont's "material misrepresentations and omissions," or those it caused to occur, regarding the known risks posed by PFAS manufactured or sold by DuPont, and, as a causal result of Old

DuPont's tortious conduct directed into Montana, overpaid for gear they would not otherwise have purchased and "were deprived of the ability to buy PFAS-free turnout gear." ¶¶ 24, 43, 190, 219, 256.

Old DuPont, has been registered to do business in Montana since 1915. It has directed marketing and activities into Montana ever since it founded the town of Ramsay, Montana in 1916.[4] BSB alleges that DuPont has jointly conspired to market turnout gear infused with its PFAS directly into Montana with co-Defendants Globe and Lion. This allegation is buttressed by the fact that DuPont's own website directs would-be-customers to the websites of MSA/Globe and Lion,[5, 6] whose websites, in turn, provide search features connecting interested firefighters to their sales agents targeting Montana.[7, 8] As set forth in the declarations of BSB's Administrative Specialist, Diane Evankovich, and Fire Chief, Zach Osborne (Dkt. Nos. 46-1; 46-2),

---

[4] The Court can take judicial notice of DuPont's founding of Ramsay as the same is accurately and readily determined by recourse to the Montana Historical Society's online records. https://mths.mt.gov/education/WWI/24SB0288_NR.pdf (last visited Nov. 18, 2025).

[5] The Court may take judicial notice of information on Defendants' websites as a "source[] whose accuracy cannot reasonably be questioned." *See Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1119 (S.D. Cal. 2021).

[6] https://www.dupont.com/personal-protection/firefighter-apparel-manufacturers.html (last visited Nov. 18, 2025).

[7] https://www.lionprotects.com/find-a-sales-rep (last visited Nov. 18, 2025).

[8] https://us.msasafety.com/where-to-buy/fire-service (last visited Nov. 18, 2025); https://us.msasafety.com/locateSalesRep (last visited Nov. 18, 2025).

and as discussed in BSB's briefing in opposition to the motions to dismiss of 3M and Globe, which BSB incorporates by reference, BSB was directly contacted for the sale of turnout gear infused with DuPont's PFAS.[9]

DuPont's intention that turnout gear infused with its PFAS reach Montana is further evidenced by DuPont's partnership with MSA/Globe and the National Volunteer Fire Council to annually donate 52 sets of Globe turnout gear through the "MSA & DuPont's Globe Gear Giveaway" held annually, going back to 2012.[10] Five Montana fire departments have received the DuPont/Globe gear giveaway: Gold Creek Fire District of Gold Creek, Montana in 2012, East Glacier Park Volunteer Fire Department of East Glacier Park, Montana in 2013 and 2024, Glacier County Rural Fire Department of Cut Bank, Montana in 2016, and Fuego Volunteer Fire Company of Billings, Montana in 2019.[11]  Each recipient is given four sets of turnout gear and encouraged to publicize the charity of DuPont and Globe with

---

[9] With the Oppositions to the Defendants' motions to dismiss, BSB is submitting a new declaration of Ms. Evankovich, entitled Declaration of Diane Evankovich in Opposition to Defendants' Motions to Dismiss ("Evankovich MTD Decl.").

[10] https://www.nvfc.org/programs/globe-gear-giveaway (last visited Nov. 18, 2025); https://blog.msafire.com/globe-announcing-winners-in-msas-2025-globe-gear-giveaway/ (last visited Nov. 18, 2025).

[11] https://www.nvfc.org/programs/globe-gear-giveaway (last visited Nov. 18, 2025).

template social media announcements[12] tagging DuPont and Globe or a pre-drafted press release[13] highlighting the generosity of DuPont and Globe.[14]

These facts establish specific jurisdiction under Rule 4(b)(1)(A) or (B). Rule 4(b)(1)(A) provides specific jurisdiction over a claim arising out of DuPont's doing personally, or through an agent, of business within Montana. While the full extent of DuPont's combined efforts to ensure turnout gear infused with its PFAS is sold into Montana is within the control of Defendants, BSB has made a prima facie case based on the foregoing evidence.

DuPont erroneously argues that "Globe or Lion's 'decision to contract with a [Montana] company to distribute [turnout gear] nationally' is insufficient to establish personal jurisdiction over Globe or Lion, let alone Moving Defendants who are several steps removed from these distributors." DuPont Br. at 10 (citing *Bristol-Myers Squibb Co. v. Super. Ct. Cal.* 582 U.S. 255, 262 (2017)). DuPont misleadingly manipulates the language in *Bristol-Myers*, in which the "relevant plaintiffs are not California residents and do not claim to have suffered harm in that State." 582 U.S. at 265. The non-California plaintiffs asserted that defendant "BMS's 'decision to

---

[12] https://www.nvfc.org/wp-content/uploads/2025/01/2025-Globe-Social-Media-Sample-Posts.pdf (last visited Nov. 18, 2025).

[13] https://www.nvfc.org/wp-content/uploads/2025/01/2025-Globe-Department-Customizable-Press-Release.pdf (last visited Nov. 18, 2025).

[14] https://www.nvfc.org/programs/globe-gear-giveaway (last visited Nov. 18, 2025). *See also* Evankovich MTD Decl., ¶ 16.

contract with a California company [McKesson] to distribute [Plavix] nationally' provides a sufficient basis for personal jurisdiction." *Id*. at 268. The Supreme Court disagreed, holding that jurisdiction over nonresident plaintiffs who were not injured in California and who had no other contacts with California could not be based on the "bare fact that [the defendant] contracted with a California distributor…." *Id.*

Here, in contrast, BSB is a resident of Montana and seeks to recover for harms it suffered in Montana from its purchase of turnout gear that Defendants knew (and intended) would be sold and delivered to them in Montana. DuPont ignores that in *Bristol-Myers*, the Supreme Court stated that "the plaintiffs who are residents of a particular State—for example, the 92 plaintiffs from Texas and the 71 from Ohio— could probably sue together in their home States." *Id*. DuPont's mischaracterization of *Bristol-Myers* shows it has no colorable objection to personal jurisdiction here.[15]

Nor is DuPont's argument supported by citing *Walden v. Fiore*, 571 U.S. 277 (2014). *See* DuPont Br. at 10. *Walden* held that a "defendant's contacts with the state cannot be based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the state." *Cataraha v. Elemental*

---

[15] *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct*., 592 U.S. 351, 369 (2021) ("We found jurisdiction improper in *Bristol-Myers* because the forum State, and the defendant's activities there, lacked any connection to the plaintiffs' claims…. The plaintiffs, the Court explained, were not residents of California. They had not been prescribed Plavix in California. They had not ingested Plavix in California.").

*Prism, LLC*, 2018 WL 3448283, at \*4 (D. Mont. July 17, 2018). In *Cataraha*, this Court explained that defendant "equates the case at hand with *Walden*" but stated that the "Court disagrees." *Id*. This Court explained that "[p]hysical entry into the state - either by the defendant in person or through an agent, goods, mail, or some other means - qualifies as a relevant contact. *Walden*, 571 U.S. at 285 (citation omitted). [Defendant] Elemental Prism's products did not happen to enter Montana through the streams of commerce." *Id*.[16] Similarly, Old DuPont's PFAS products did not merely happen to enter Montana through streams of commerce.[17]

*Cataraha* also undermines DuPont's argument that "Plaintiff is left to rely on a pure stream-of-commerce personal jurisdictional analysis…." DuPont Br. at 10. As in *Cataraha*, BSB does not rely on a "pure stream-of-commerce" analysis. As discussed above, Old DuPont targeted Montana through more than its conspiracy with co-Defendants to market turnout gear in Montana via LN Curtis or SeaWestern. Old DuPont partnered to donate firefighter turnout gear shipped into Montana with

---

[16] To the extent DuPont disputes SeaWestern's agency and the Court finds that SeaWestern's role is essential to the analysis, BSB seeks jurisdictional discovery regarding the relationship between SeaWestern (and LN Curtis) and Defendants.

[17] *See Ford*, 592 U.S. at 370-71 ("In *Walden*, only the plaintiffs had any contacts with the State of Nevada; the defendant-officer had never taken any act to 'form[ ] a contact' of his own. 571 U.S., at 290. The officer had 'never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada.' *Id*., at 289. So to use the language of our doctrinal test: He had not 'purposefully avail[ed himself] of the privilege of conducting activities' in the forum State.").

an expectation that the recipient would publicize its charity in Montana. Its contacts with Montana are not random, fortuitous, or attenuated, and they are not based on the unilateral conduct of a third party. Instead, they are designed and implemented to ensure that PFAS-infused turnout gear reached the Montana market.

Further, Old DuPont's conduct caused a tort in Montana such that jurisdiction is appropriate under Rule 4(b)(1)(B). BSB received marketing in Montana for turnout gear infused with DuPont's PFAS, purchased these defective products for shipment into Montana for use in Montana, and discovered the defect in Montana, where BSB suffered injury. Old DuPont's participation in directing marketing for its defective products into Montana where its defective product was shipped and used, and where the defect was discovered and caused harm provides personal jurisdiction in this case. *See Kell*, 748 F. Supp. 3d at 981 (exercising personal jurisdiction over product-defect defendant with preferred dealers in Montana when the product was sold elsewhere but the defect was discovered in Montana).

### b. Personal jurisdiction over Old DuPont comports with due process.

"Due process 'depends on the defendant's having such contacts with the forum State that the maintenance of the suit is reasonable, in the context of our federal system of government, and does not offend traditional notions of fair play and substantial justice.'" *Kell*, 748 F. Supp. 3d at 980-81 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)). "To establish specific

jurisdiction over a nonresident defendant: (1) the defendant must purposefully …

avail himself of the forum; (2) the claim must arise out of or relate to the defendant's

forum-related activities; and (3) the exercise of jurisdiction must be reasonable."

*Duffy*, 590 F. Supp. 3d at 1325 (omissions).

> **(1)    Old DuPont purposefully availed itself of the privilege of activity in Montana.**

A defendant "must take 'some act by which [it] purposefully avails itself of

the privilege of conducting activities within the forum State." *Ford*, 592 U.S. at 359

(citation omitted). Those contacts "must be the defendant's own choice and not

'random, isolated, or fortuitous.'" *Id*. (citation omitted). And they "must show that

the defendant deliberately 'reached out beyond' its home—by, for example,

'exploi[ting] a market' in the forum State or entering a contractual relationship

centered there." *Id*. (citation omitted). The facts show that Old DuPont exploited the

Montana market, as explained above.

> **(2)    BSB's claims arise out of or relate to Old DuPont's Montana activity.**

The plaintiff's claims "'must arise out of or relate to the defendant's contacts'

with the forum." *Ford*, 592 U.S. at 359. "Or put just a bit differently, 'there must be

"an affiliation between the forum and the underlying controversy, principally, [an]

activity or an occurrence that takes place in the forum State and is therefore subject

to the State's regulation."'" *Id*. at 359-60 (quoting *Bristol-Myers*, 582 U.S. at 262).

The Supreme Court's "most common formulation of the rule demands that the suit 'arise out of *or relate to* the defendant's contacts with the forum.' … The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Id*. at 362 (citation omitted).

BSB's claims relate to Old DuPont's conduct in directly marketing its PFAS products into Montana and also arise out of that conduct. As in *Cataraha*, "there was contact expressly aimed at the forum state that cannot be dismissed as random, fortuitous, or attenuated." 2018 WL 3448283, at *4. And as the Supreme Court has explained, "specific jurisdiction attaches in cases identical to the ones here—when a company like Ford serves a market for a product in the forum State and the product malfunctions there." *Ford*, 592 U.S. at 363. Thus, if a car manufacturer's "business deliberately extended into Oklahoma (among other States), then Oklahoma's courts could hold the companies accountable for a car's catching fire there—even though the vehicle had been designed and made overseas and sold in New York." *Id*. BSB's claims satisfy those standards.

### (3)    Exercising jurisdiction over Old DuPont would be reasonable.

There are "seven nonexclusive factors to be considered when examining the reasonableness of jurisdiction[.]" *Cataraha*, 2018 WL 3448283, at *5. These factors are: (1) the extent of the defendant's purposeful interjection into Montana; (2) the

burden on defendant of defending in Montana; (3) the extent of the conflict with the sovereignty of another possible forum; (4) Montana's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of Montana to plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Id.* The "burden falls on the defendant to overcome a presumption of reasonableness by presenting a compelling case that jurisdiction would be unreasonable." *Id.*

Here, DuPont cannot present a compelling case on these elements, let alone one that would overcome the presumption of reasonableness when gauged against DuPont's purposeful availment of the privilege of conducting activity in Montana and BSB's tort claims arising from and relating to DuPont's Montana activity. Regarding the first factor, DuPont has injected itself into Montana as shown through its contacts described above. This Court addressed the other factors when it denied the motion to transfer, finding: "the inconvenience to witnesses will be severely burdened by a trial held in Montana," "Defendants have not shown immovable evidence would be at issue in this case," "Defendants have not met their burden in showing that litigation would be less expensive in Delaware," "Defendants have not established Delaware's interest in the controversy outweighs Montana's interest" which is a "strong interest in protecting its citizen's." Dkt. No. 85 at 12, 15-18.

**2.      Because the Court has personal jurisdiction over Old DuPont, it also has jurisdiction over the other DuPont Defendants.**

If this Court finds that it has personal jurisdiction over Old DuPont, it also has personal jurisdiction over the other DuPont Defendants, which assumed the liabilities of Old DuPont. When Old DuPont's conduct was exposed, it engaged in a series of spinoffs, mergers, and divestitures designed to separate its PFAS-related liabilities from the substantial assets available to satisfy them, financially crippling Old DuPont and transferring its assets to Corteva and DuPont de Nemours, Inc. ("New DuPont"), while saddling underfunded Chemours with its liabilities. ¶¶ 30–33. For this reason, reference to "DuPont" is to the inter-connected corporations designed to insulate one another from liability and provide a basis for one of DuPont's many manifestations intended to disclaim liability for conduct performed by its sister companies. ¶¶ 131–132.

Courts have exercised personal jurisdiction over defendants New DuPont, The Chemours Company, The Chemours Company, FC, LLC, and Corteva, Inc., based on their assumption of Old DuPont's legacy PFAS liabilities.[18] *See State ex rel. Stein v. E. I. DuPont de Nemours & Co.*, 879 SE.2d 537, 543, 549 (N.C. 2022) (finding Corteva and New DuPont assumed Old DuPont's PFAS liabilities, together with

---

[18] New DuPont, both Chemours defendants, and Corteva are registered to do business in the State of Montana. The Court may take judicial notice of registration in Montana. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010); Fed. R. Evid. 201.

Chemours, and following the "'great weight of persuasive authority'" in exercising personal jurisdiction based upon the assumption of predecessor's liabilities even if successor has no contact with the forum) (citation omitted); *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 19859215, at \*8 (D.S.C. Mar. 10, 2022) ("[T]he pleadings and record evidence are sufficient to make a prima facie demonstration that exercising Florida jurisdiction over New DuPont and Corteva, on the basis of Old DuPont's PFOA contacts with the forum that Plaintiff has sufficiently alleged were only fraudulently transferred to Chemours, comports with the Florida long-arm statute and the constitution."). *State of New Hampshire v. 3M Co.*, No. 216-2019-CV-0045 (Sup. Ct., Merrimack Cnty. July 7, 2021) (unpublished) (establishing successor jurisdiction based on prima facie showing of assumption of Old DuPont's PFAS liabilities by New DuPont, Chemours, and Corteva).[19] As noted by the Fourth Circuit, successor jurisdiction "is apparent on its face" given that any "corporation who puts out a lousy product" could otherwise "avoid all consequences of it by just reforming in some other jurisdiction and avoiding any accountability." *Richmond v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 454-55 (4th Cir. 1990).

For the same reasons, this Court has personal jurisdiction over those DuPont Defendants. If this Court decides it needs more information as to the assumption of

---

[19] The New Hampshire Superior Court's decision is attached hereto as Exhibit 1.

liability by those Defendants, BSB seeks leave to conduct jurisdictional discovery into the issue.

### C.      BSB states a valid RICO claim.

DuPont merely incorporates 3M's arguments regarding RICO liability. *See* DuPont Br. at 12-13. For the reasons set forth in BSB's Opposition to 3M's motion to dismiss, DuPont's RICO argument should be rejected.

### D.      BSB states valid state-law claims.

DuPont also merely incorporates 3M's arguments regarding the viability of BSB's  state-law claims. *See* DuPont Br. at 13. For the reasons discussed in BSB's Opposition to 3M's motion to dismiss, DuPont's argument should be rejected.

### IV.    CONCLUSION

DuPont's motion to dismiss should be rejected in its entirety.

DATED: November 20, 2025          Respectfully submitted,


By: /s/ *John Heenan*
       John Heenan
HEENAN & COOK
1631 Zimmerman Trail
Billings, MT 59102
Telephone:  (406) 839-9091
Email:  john@lawmontana.com

By: /s/ *Michael A. Bliven*
     Michael A. Bliven
BLIVEN LAW FIRM, PC
704 S. Main
Kalispell, MT 59901
Telephone: (406) 755-6828
Email:  mike@blivenlawfirm.com

By: /s/ *Steve W. Berman*
     Steve W. Berman (*pro hac vice*)
By: /s/ *Craig R. Spiegel*
     Craig R. Spiegel (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
Email:  steve@hbsslaw.com
     craigs@hbsslaw.com

By: /s/ *Ian W. Sloss*
     Ian W. Sloss (*pro hac vice*)
Jennifer Sclar (*pro hac vice* forthcoming)
SILVER GOLUB & TEITELL LLP
One Landmark Square, 15th Floor
Stamford, CT 06901
Telephone: (203) 325-4491
Email:  jsclar@sgtlaw.com
     isloss@sgtlaw.com

By: /s/ *Kyle J. McGee*
Kyle J. McGee (*pro hac vice* forthcoming)
GRANT & EISENHOFFER P.A.
123 S. Justison Street
Wilmington, DE 19801
Telephone: (302) 622-7000
Email:  kmcgee@gelaw.com

*Attorneys for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(d), I certify that the above brief is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced, and the word count, calculated by Microsoft Office Word, is 5,435 words, excluding the caption, certificate of compliance, table of contents and authorities, and certificate of service.

*/s/ John Heenan*
John Heenan

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Montana using the CM/ECF system, causing it to be electronically served on all attorneys of record.

*/s/ John Heenan*
John Heenan