Michael A. Bliven
BLIVEN LAW FIRM, PC
704 S. Main
Kalispell, MT 59901
Telephone: (406) 755-6828
Email:  mike@blivenlawfirm.com

John Heenan
HEENAN & COOK
1631 Zimmerman Trail
Billings, MT 59102
Telephone:  (406) 839-9091
Email:  john@lawmontana.com

Steve W. Berman (*pro hac vice*)
Craig R. Spiegel (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
Email:   steve@hbsslaw.com
        craigs@hbsslaw.com

# UNITED STATES DISTRICT COURT
# DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| CITY AND COUNTY OF BUTTE-SILVER BOW<br><br>            Plaintiff,<br><br>   v.<br><br>3M COMPANY (F/K/A MINNESOTA MINING AND MANUFACTURING COMPANY); DUPONT DE NEMOURS, INC.; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; CORTEVA, INC.; GLOBE MANUFACTURING COMPANY, LLC; W.L. GORE & ASSOCIATES, INC.; and LION GROUP, INC.,<br><br>            Defendant(s). | Case No. 2:25-cv-00036-BMM |

# PLAINTIFF'S OPPOSITION TO DEFENDANT
# GLOBE MANUFACTURING COMPANY, LLC'S
# <u>MOTION TO DISMISS</u>

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................1

II.   ARGUMENT.......................................................................1

    A.    The Court has personal jurisdiction over Globe. ...................1

        1.    Personal jurisdiction exists under Montana's long-arm statute. ...............................................................1

        2.    Personal jurisdiction comports with due process......................7

            a.    Globe purposefully availed itself of the privilege of activity in Montana. ....................................7

            b.    BSB's claims arise out of and relate to Globe's Montana activity. ................................8

            c.    Exercising jurisdiction over Globe would be reasonable. ...........................................................9

    B.    BSB has standing to sue Globe. ...........................................9

        1.    Because BSB must replace toxic PPE as soon as possible, it has suffered an injury-in-fact................................10

        2.    BSB's injuries are traceable to Globe, which manufactured the contaminated PPE. ......................................14

            a.    BSB adequately traces its injuries to Globe. ..................14

            b.    All Defendants are liable for injuries caused by PFAS-infused gear bought by BSB that can be traced to any Defendant........................15

    C.    The RICO claim is adequately alleged..................................16

    D.    BSB alleges valid claims under Montana law.....................17

    E.    State-law claims under non-Montana laws should not be dismissed. .................................................................20

1. BSB alleges a valid design defect claim against Globe. ....................................................................20

2. The failure to warn claim against Globe is adequately alleged. ................................................................21

3. BSB sufficiently alleges safer alternatives. .............................23

4. The implied breach of warranty claims under Massachusetts law should not be dismissed for lack of pre-suit notice. ...............................................................23

5. BSB states valid claims against Globe under various state law consumer protection statutes. ........................24

    a. Georgia Uniform Deceptive Trade Practices Act. ...................................................................................24

    b. Maryland, Missouri, and Pennsylvania consumer protection laws. ...........................................24

    c. State-law bans on class actions do not apply. ...............25

    d. BSB sufficiently alleges conspiracy claims. ..................27

F. BSB's claims are not barred or limited by any statutes of limitations and repose. ........................................................27

1. BSB adequately alleges fraudulent concealment. .....................28

2. BSB adequately alleges that the discovery rule tolls the statutes of limitations. ...............................................29

G. The first-to-file rule does not bar the Complaint. .............................32

III. CONCLUSION. ..................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adoma v. Univ. of Phoenix, Inc.*,
711 F. Supp. 2d 1142 (E.D. Cal. 2010) ................................................................34

*Agri-Systems v. W Nat'l Assur. Co.*,
2020 WL 6781685 (D. Mont. Nov. 18, 2020) .....................................................32

*Apple Inc. v. Psystar Corp.*,
658 F.3d 1150 (9th Cir. 2011) ..............................................................................32

*Attix v. Carrington Mortg. Servs., LLC*,
2020 WL 9849821 (S.D. Fla. Oct. 13, 2020) .......................................................33

*Barker v. Bank of Am., N.A.*,
2019 WL 4261983 (D. Mont. Aug. 12, 2019) ......................................................30

*Bibeau v. Pac. Nw. Rsch. Found. Inc.*,
188 F.3d 1105 (9th Cir. 1999) ..............................................................................31

*Bristol-Myers Squibb Co. v. Superior Ct.*,
582 U.S. 255 (2017) ................................................................................................6

*Cataraha v. Elemental Prism, LLC*,
2018 WL 3448283 (D. Mont. July 17, 2018) .........................................................8

*Centene Corp. v. Merck & Co.*,
2025 WL 2538858 (D.N.J. Sept. 4, 2025) ............................................................25

*Clean Harbors, Inc. v. CBS Corp.*,
2010 WL 11627433 (D. Kan. Apr. 19, 2010)...................................................34, 35

*Clinger v. Edgewell Pers. Care Brands, LLC*,
2023 WL 2477499 (D. Conn. Mar. 13, 2023) ......................................................11

*In re Crop Prot. Prods. Loyalty Program Antitrust Litig.*,
779 F. Supp. 3d 624 (M.D.N.C. 2025) .................................................................26

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010) ....................................................................3

*DeWitt v. Best Buy Stores, L.P.*,
  2022 WL 17340258 (D. Mont. Nov. 30, 2022) ..........................................9

*Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC*,
  656 F. Supp. 3d 1073 (C.D. Cal. 2023) ..............................................31, 32

*Doe v. GoodRx Holdings, Inc.*,
  2025 WL 2052302 (N.D. Cal. July 22, 2025) ...........................................31

*Donadio v. Hyundai Motor Am.*,
  751 F. Supp. 3d 1013 (C.D. Cal. 2024) ..............................................10, 11

*Duffy v. Kaman Aerospace Corp.*,
  2025 WL 1000989 (D. Mont. Apr. 3, 2025) ..............................................18

*In re E.I. DuPont de Nemours & Co. C-8 Pers. Inj. Litig.*,
  87 F.4th 315 (6th Cir. 2023) ....................................................................15

*Estrada v. Johnson & Johnson*,
  2015 WL 1440466 (E.D. Cal. Mar. 27, 2015) ..........................................12

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
  355 F. Supp. 3d 582 (E.D. Mich. 2018) ...................................................26

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
  592 U.S. 351 (2021) ..................................................................................7

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*,
  204 F.3d 149 (4th Cir. 2000) ...................................................................11

*Grice v. Indep. Bank*,
  147 F.4th 440 (4th Cir. 2025) ..................................................................26

*Harrison v. Medtronic, Inc.*,
  2022 WL 17443711 (5th Cir. Dec. 6, 2022) .............................................22

*Karst v. Shur-Co.*,
  878 N.W.2d 604 (S.D. 2016) ....................................................................22

*Kell v. Freedom Arms Inc.*,
748 F. Supp. 3d 973 (D. Mont. 2024)......................................................................7

*L.Z. v. BigAirBag B.V.*,
691 F. Supp. 3d 451 (D. Conn. 2023)....................................................................21

*Mattel, Inc. v. MGA Ent., Inc.*,
2011 WL 13128608 (C.D. Cal. Jan. 17, 2011)......................................................28

*McGee v. S-L Snacks Nat'l*,
982 F.3d 700 (9th Cir. 2020) ..........................................................................12, 13

*Oki Semiconductor Co. v. Wells Fargo Bank*,
298 F.3d 768 (9th Cir. 2002) ................................................................................16

*In re Packaged Seafood Prods. Antitrust Litig.*,
242 F. Supp. 3d 1033 (S.D. Cal. 2017)..................................................................26

*Parris v. 3M Co.*,
595 F. Supp. 3d 1288 (N.D. Ga. 2022)..................................................................15

*Rodoni v. Royal Outdoor Prods., Inc.*,
2019 WL 2300400 (D. Mont. May 30, 2019) ........................................................3

*Rose v. Ferrari N. Am., Inc.*,
2024 WL 1209185 (D.N.J. Mar. 20, 2024) ...........................................................26

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010).............................................................................................26

*Smith v. Robertshaw Controls Co.*,
410 F.3d 29 (1st Cir. 2005)...................................................................................24

*In re Snowflake, Inc. Data Sec. Breach Litig.*,
2025 WL 3023007 (D. Mont. Oct. 29, 2025).........................................................18

*Solis v. Coty, Inc.*,
2023 WL 2394640 (S.D. Cal. Mar. 7, 2023)......................................................12, 13

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)...........................................................................................10, 14

*Staley v. Gilead Scis., Inc.*,
589 F. Supp. 3d 1132 (N.D. Cal. 2022).................................................................25

*Stewart v. Kodiak Cakes, LLC*,
537 F. Supp. 3d 1103 (S.D. Cal. 2021)..................................................................3

*Streich v. Hilton-Davis, Div. of Sterling Drug*,
692 P.2d 440 (Mont. 1984)...................................................................................19

*Tackett v. Duncan*,
334 P.3d 920 (Mont. 2014)....................................................................................8

*TwoRivers v. Lewis*,
174 F.3d 987 (9th Cir. 1999) ...............................................................................27

*Uniformed Pro. Fire Fighters Ass'n of Conn., et al. v. 3M Co, et al.*,
No. 3:24CV01101 (D. Conn. May 5, 2025) .........................................................33

*United Food & Com. Workers v. Walgreen Co.*,
719 F.3d 849 (7th Cir. 2013) ...............................................................................16

*United States v. King Cnty., Wash.*,
122 F.4th 740 (9th Cir. 2024) ..............................................................................14

*Widjaja v. YUM! Brands, Inc.*,
2009 WL 10673334 (C.D. Cal. June 8, 2009).....................................................33

*Winans v. Ornua Foods N. Am. Inc.*,
731 F. Supp. 3d 422 (E.D.N.Y. 2024)..................................................................11

*Wysocki v. Zoom Techs. Inc.*,
2024 WL 1139094 (W.D. Wash. Mar. 15, 2024)..................................................24

*Yumul v. Smart Balance, Inc.*,
733 F. Supp. 2d 1117 (C.D. Cal. 2010)................................................................28

## STATUTES

73 Pa. Stat. Ann. § 201-2(2) .................................................................................25

73 Pa. Stat. Ann. § 201-9.2(a)...............................................................................25

Mont. Code Ann. § 27-2-102(2) ...........................................................................29

Mont. Code Ann. § 30-14-133(1) ...............................................................18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 4(b)(1)..............................................................2, 6, 7

Fed. R. Civ. P. 9(b) ...................................................................13, 28

Fed. R. Evid. 201(b)(2) .................................................................3

## I.  INTRODUCTION

Defendant Globe's motion to dismiss should be denied in its entirety.[1] All grounds underlying Globe's motion are flawed. First, plaintiff Butte-Silver Bow ("BSB") unwittingly purchased contaminated gear and can trace its injury to Globe. Second, the Court has personal jurisdiction over Globe, which knowingly marketed its PFAS products in Montana, including to BSB. Third, BSB has been proximately injured by the PFAS Concealment Enterprise, and all of the elements of a RICO claim are satisfied. Fourth, BSB easily states valid claims under Montana law and the laws of other states.

## II.  ARGUMENT

**A.  The Court has personal jurisdiction over Globe.**

**1.  Personal jurisdiction exists under Montana's long-arm statute.**

In denying Defendants' motion to transfer, this Court found that "Defendants, by selling products to Montana customers in Montana, have established contacts with Montana and exposed themselves to being sued in the District of Montana." Dkt. No. 85 at 13. Globe does not now provide any basis for the Court to now decide otherwise. In its Opposition to DuPont's motion to dismiss, BSB sets forth in detail

---

[1] *See* Globe Manufacturing Company, LLC's Brief in Support of Motion to Dismiss ("Globe Br."), Dkt. No. 108. Globe seeks dismissal of the Complaint And Demand For Jury Trial ("Complaint), Dkt. No. 1, ¶¶ 112–53. References to "¶" are to paragraphs in the Complaint unless otherwise noted.

the standards of review. Under those standards, the Complaint adequately alleges personal jurisdiction over Globe.

Globe's conduct establishes specific jurisdiction under Rule 4(b)(1)(A) or (B). Globe bought PFAS from 3M and/or DuPont, which it used to manufacture BSB's turnout gear despite its knowledge of the unreasonable dangers posed by PFAS chemicals and, through its participation in the RICO Enterprise, conspired to market and distribute its defective PFAS products through jointly designed and distributed marketing materials that misrepresented and concealed the dangers known by Globe of its PFAS-laden turnout gear. ¶¶ 9–12, 34, 101, 150, 156, 193, 205, 210, 221. Globe participated in directing and controlling the continued sale of its defective turnout gear to firefighters throughout the country, including BSB. ¶¶ 38, 193, 195. BSB relied on Globe's "material misrepresentations and omissions," or those Globe caused to occur, regarding the known risks posed by PFAS-infused products manufactured or sold by Globe, and, as a causal result of Globe's tortious conduct directed into Montana, BSB overpaid for gear they would not otherwise have purchased and "were deprived of the ability to buy PFAS-free turnout gear." ¶¶ 24, 43, 193, 214, 219, 256.

Further facts support personal jurisdiction. Globe was bought by MSA Safety Incorporated in 2017[2] and is "now part of MSA."[3, 4] Another subsidiary, MSA Safety Sales, LLC, is registered to do business in Montana.[5] This is because MSA wants to ensure that it is easy for Montana citizens to purchase Globe turnout gear.[6] As stated by BSB's Administrative Specialist, Diane Evankovich, and Fire Chief, Zach Osborne, MSA's website ensures that Montana citizens who are not directly solicited by its agents are able to find a sales representative to help them purchase Globe

---

[2] https://news.msasafety.com/2017-07-31-MSA-Completes-Acquisition-of-Globe-Manufacturing,1 (last visited Nov. 19, 2025).

[3] https://us.msasafety.com/globe?locale=en (last visited Nov. 19, 2025).

[4] The Court may take judicial notice of information on MSA's website under Fed. R. Evid. 201(b)(2). *See Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103 (S.D. Cal. 2021) (judicial notice proper "over websites").

[5] The Court may take judicial notice of MSA Safety Sales, LLC's registration to do business within the State of Montana pursuant to Fed R. Evid. 201(b)(2). *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (taking judicial notice of information on publicly-available website of government entity).

[6] To the extent Globe argues that its parent company's conduct in advertising Globe products is distinct, BSB requests the Court grant leave to amend the Complaint to name MSA and allege that Globe is an alter ego of MSA or engaged in a joint venture for the sale of Globe gear into Montana. Alternatively, BSB requests jurisdictional discovery regarding the relationship between Globe and MSA and LN Curtis, as the specifics of their relations is entirely within their control and could establish jurisdiction. *See Rodoni v. Royal Outdoor Prods., Inc.*, 2019 WL 2300400, at *5 (D. Mont. May 30, 2019) (granting jurisdictional discovery into defendant's relations with distributor).

products in Montana through online searches[7] for either a sales manager covering Montana, or through LN Curtis ("Curtis"), which is identified as a distributor.[8] *See* Dkt. Nos. 46-1 at 3; 46-2 at 3. On October 8-12, the Fire Chief, Assistant Chief, two Battalion Chiefs, and some Volunteer Chiefs from the Butte Silver Bow Fire Department ("BSBFD") attended the 2025 Montana Fire Chiefs' Association Fire Service Convention at the Copper King Hotel in Butte.[9] At the Convention, Curtis represented Globe products.[10] An MSA press release shows that it partnered with Curtis (after acquiring Globe, with which Curtis had a "longstanding relationship") to sell Globe gear, and the partnership "effectively doubles our sales coverage in key geographic region[s] for MSA," including "rural markets" with the intent to "capture even greater market share in the U.S. fire service."[11]

---

[7] https://us.msasafety.com/products/turnout-gear (last visited Nov. 19, 2025); https://us.msasafety.com/where-to-buy/fire-service (last visited Nov. 19, 2025); https://us.msasafety.com/locateSalesRep (last visited Nov. 19, 2025).

[8] MSA products are also available from Big Sky Fire Equipment in Lewistown, Montana.  *See* https://us.msasafety.com/where-to-buy/fire-service (last visited Nov. 19, 2025).

[9] *See* Declaration of Diane Evankovich in Opposition to Defendants' Motions to Dismiss ("Evankovich MTD Decl."), filed simultaneously herewith, at ¶ 7.

[10] *Id.*

[11] https://news.msasafety.com/2017-09-07-MSA-Expands-Coverage-and-Growth-Opportunities-with-New-Fire-Service-Partnership,1 (last visited Nov. 19, 2025).

Mrs. Evankovich and Mr. Osborne have received marketing and sales solicitations in Montana from Globe's "sales representatives and distributors," including Curtis. Dkt. Nos. 46-1 at 2-3; 46-2 at 3.[12] Both of them have been contacted by Curtis regarding the purchase of Globe gear, and Mrs. Evankovich adds that Sean McGuffin, a Curtis representative, travels to Montana to solicit sales and that she interacts with him on a regular basis in person and on the phone. Dkt. Nos. 46-1 at 3-4; 46-2 at 4. BSBFD has purchased turnout gear manufactured by Globe, and that gear was delivered to BSBFD in Butte.[13] When BSBFD bought Globe turnout gear from Curtis, the packing slip showed that the turnout gear was shipped directly from Globe to BSBFD in Butte.[14]

BSBFD is a member of the Montana State Volunteer Firefighters Association, which is the state member organization of the National Volunteer Fire Council.[15] Ms. Evankovich has seen the DuPont/Globe Gear Giveaway in Montana and that Montana volunteer fire departments have received gear from DuPont/Globe in Montana as part of this giveaway, including the East Glacier Park Volunteer Fire Department in 2024.[16]

---

[12] *See also* Evankovich MTD Decl., ¶¶ 4, 9, 11.

[13] *Id*. at ¶ 14.

[14] *Id*. at ¶ 15.

[15] *Id*. at ¶ 16.

[16] *Id*.

These facts establish personal jurisdiction under Rule 4(b)(1)(A) as Globe has personally, or through its agents, directed the marketing of its turnout gear into Montana for the purpose of capturing a "greater market share" in the state. Contrary to Globe's assertion, BSB's purchase of its turnout gear in Montana is not a "random, fortuitous, or attenuated" contact (Globe Br. at 22), it is the intentional result of Globe's attempt to capture a "greater market share" for its products in Montana.

Globe cites *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 268 (2017), for the erroneous proposition that BSB's contact with out-of-state distributor Curtis is an inadequate basis for jurisdiction. The Supreme Court stated in *Bristol-Myers* that the "relevant plaintiffs are not California residents and do not claim to have suffered harm in that State." 582 U.S. at 265. The plaintiffs asserted that defendant "BMS's 'decision to contract with a California company [McKesson] to distribute [Plavix] nationally' provides a sufficient basis for personal jurisdiction." *Id*. at 268. The Court disagreed, holding that jurisdiction over nonresident plaintiffs who were not injured in California and who had no contacts with California could not be based on the "bare fact that [the defendant] contracted with a California distributor…." *Id*. Here, BSB alleges that Globe has conspired to market its products into Montana and established that Globe is using Curtis as a sales agent to capture a Montana market for its products which resulted in BSB purchasing Globe's products

in Montana for use in Montana, where the defective nature of Globe's product was discovered and injured BSB.

Globe is also subject to personal jurisdiction under Rule 4(b)(1)(B). BSB received Globe's marketing in Montana, bought Globe's defective PFAS products for shipment into Montana for BSB's use in Montana, and discovered the defect in Montana, where it suffered injury.[17] *See Kell v. Freedom Arms Inc.*, 748 F. Supp. 3d 973, 981 (D. Mont. 2024) (finding personal jurisdiction over product defect defendant with preferred dealers in Montana when product sold elsewhere but defect discovered in state); *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021) (affirming personal jurisdiction over product defect defendant with extensive contacts to facilitate business in Montana despite subject product's sale elsewhere).

### 2. Personal jurisdiction comports with due process.

### a. Globe purposefully availed itself of the privilege of activity in Montana.

Globe purposefully directs the marketing of its products, including turnout gear infused with PFAS into Montana on its own or as part of its conspiracy with co-Defendants to market this gear into Montana. Globe does so via its own website,[18]

---

[17] *See* Evankovich MTD Decl., ¶ 17 ("BSBFD first learned of the dangers posed by PFAS in its turnout gear in Montana.").

[18] On information and belief, MSA's website *is* Globe's website. *See* https://us.msasafety.com/globe?locale=en (last visited Nov. 19, 2025) *and* https://us.msasafety.com/products/turnout-gear (last visited Nov. 19, 2025).

which identifies distributors of its products serving Montana as well as sales managers covering the forum. Globe ensures that its products are being marketed into Montana via in-person sales agents regularly visiting or calling to solicit business from persons in Montana including BSB, as well as by directing email and catalogue advertisements into the state and to BSB in particular. Globe's contacts are not random or fortuitous but rather are the direct result of Globe's purposeful availment of a Montana market for its products.

### b. BSB's claims arise out of and relate to Globe's Montana activity.

BSB's claims relate to and arise out of Globe's acts directly marketing its products into Montana. In *Cataraha v. Elemental Prism, LLC*, 2018 WL 3448283 (D. Mont. July 17, 2018), the plaintiff estate sued for the death of a woman who ingested a product sold by the defendant to her in Montana. This Court stated that "[p]hysical entry into the state - either by the defendant in person or through an agent, goods, mail, or some other means - qualifies as a relevant contact." *Id*. at *4. And this Court found that the defendant's "products did not happen to enter Montana through the streams of commerce." *Id*. Thus, the estate's "claims directly arise out of or relate to [defendant's] business activities in Montana." *Id*. at *5. Similarly, BSB's injuries in Montana, caused by a product sold to it in Montana, establishes personal jurisdiction.  This case is distinguishable from *Tackett v. Duncan*, 334 P.3d 920, 929 (Mont. 2014), cited by Globe (Globe Br. at 21), where the Court declined

personal jurisdiction when the defendants had "no connection with this state, other than the connection that [plaintiff] himself has created." BSB's claims relate to and arise out of Globe's actions intended to create a market for its products in Montana.

### c.    Exercising jurisdiction over Globe would be reasonable.

In denying Defendants' motion to transfer, this Court has found that: "the inconvenience to witnesses will be severely burdened by a trial held in Montana," "Defendants have not shown immovable evidence would be at issue in this case," "Defendants have not met their burden in showing that litigation would be less expensive in Delaware," and "Defendants have not established Delaware's interest in the controversy outweighs Montana's interest," which is a "strong interest in protecting its citizens." Dkt. No. 85 at 12, 15-18. *See DeWitt v. Best Buy Stores, L.P.*, 2022 WL 17340258, at *5 (D. Mont. Nov. 30, 2022) (finding exercise of jurisdiction reasonable in similar circumstances).

## B.    BSB has standing to sue Globe.

BSB purchased Globe personal protective equipment ("PPE"), every layer of which was contaminated with PFAS in such high concentrations that one researcher likened wearing the equipment to "swimming in a sea of [PFAS]." ¶¶ 83–91. Nonetheless, Globe argues that (1) BSB has suffered no injury, and (2) any injury is untraceable to Globe. Globe Br. at 11. The Court should reject these arguments. BSB has suffered an injury because Globe's gear must be replaced as soon as possible, at

a cost to the city's taxpayers. ¶ 20. That injury is traceable to Globe because Globe manufactured the gear. ¶ 28.

### 1. Because BSB must replace toxic PPE as soon as possible, it has suffered an injury-in-fact.

"The presence of PFAS in turnout gear requires that the PFAS-impregnated gear be replaced as soon as possible." ¶ 20. Globe argues that BSB has suffered no injury, however, because it "does not plausibly allege" that toxic gear "needs to be replaced." Globe Br. at 12. But BSB explains how researchers tested Globe's products and found off-the-chart concentrations of PFAS "in every layer" and in both new and used turnout gear. *See* ¶¶ 75–91. And regulators have found that there are no safe levels of some PFAS chemicals and set strict "maximum contaminant levels" for others. *See* ¶¶ 62–74. BSB also quotes scientific literature that has found dermal absorption through turnout gear to be "a key component" of elevated blood levels of PFAS in firefighters. ¶ 92. These allegations establish that BSB must imminently replace Globe's equipment or its firefighters will be further exposed to carcinogenic toxins. Thus, BSB has suffered an "injury-in-fact." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ("injury-in-fact" must be "actual or imminent").

Instead, Globe's objection seems to be that BSB has not come forward with its *own* PFAS test results. *See* Globe Br. at 12 ("Plaintiff does not allege that any [BSB] firefighter tested positive for elevated PFAS blood levels"). Globe's argument misstates the plaintiff's burden at the pleading stage. *See Donadio v. Hyundai Motor*

*Am.*, 751 F. Supp. 3d 1013, 1019 (C.D. Cal. 2024) (a "facial attack" on jurisdiction is resolved by "accepting the plaintiff's allegations as true"). In toxic exposure cases, courts overwhelmingly hold that scientific testing is not required for standing. *See Winans v. Ornua Foods N. Am. Inc.*, 731 F. Supp. 3d 422, 428 (E.D.N.Y. 2024) (declining to impose "a rule that would require plaintiffs to provide laboratory testing results . . . to satisfy standing"); *see also Clinger v. Edgewell Pers. Care Brands, LLC*, 2023 WL 2477499, at *3 (D. Conn. Mar. 13, 2023) ("the fact that the plaintiffs did not actually test the products that they purchased does not mean that they lack standing"); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000) ("[i]f scientific certainty were the standard, then plaintiffs would be required to supply costly, strict proof of causation to meet a threshold jurisdictional requirement"). BSB does not need to have its own testing evidence at this stage, especially when it cites peer-reviewed research by scientists who have *themselves* tested Globe's products. ¶¶ 83–91.

Globe erroneously argues that BSB cannot claim an "injury-in-fact" because it has received the "benefit of the bargain," namely, that turnout gear functions as expected during a fire. Globe Br. at 12-18. The Complaint does *not* allege that its turnout gear functions as expected in a fire. Globe's suits are saturated with a toxin that, "when exposed to heat, can off-gas, break down, and degrade into highly mobile and toxic particles and dust, increasing the risk of PFAS exposure via dermal

absorption." *See* ¶ 53. Further, one of the primary purposes of turnout gear is to protect firefighters from exposure to chemicals. ¶ 80. Globe cannot claim that fire fighters achieve the complete benefit of that objective if their turnout gear causes the wearer to absorb a carcinogenic toxin through their skin. ¶ 92. This suffices to allege an injury, both under a "benefit of the bargain" theory or under an "overpayment" theory, both of which have been recognized by the Ninth Circuit. *See McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 705 (9th Cir. 2020); *see also* ¶ 83 ("Plaintiff and Class members *overpaid* for turnout gear . . . .").

Globe cites inapposite cases in which consumers' amorphous expectations of "safety" were insufficient to claim a "benefit of the bargain" injury. *See, e.g.*, *Estrada v. Johnson & Johnson*, 2015 WL 1440466, at *3 (E.D. Cal. Mar. 27, 2015) (baby powder performed "as promised" despite claims talc rendered it "not safe"); *Solis v. Coty, Inc.*, 2023 WL 2394640, at *6 (S.D. Cal. Mar. 7, 2023) (skincare products, same). A major difference between turnout gear and skincare products is that safety is the sole purpose of turnout gear—it is the benefit that BSB bargained for. Turnout gear that poisons firefighters, therefore, deprives BSB of what it paid for.

Globe argues that benefit-of-the-bargain standing requires BSB to plead "a specific misrepresentation such that the product was not as advertised." Globe Br. at

12.[19] But the cases Globe cites do not support that conclusion. The Ninth Circuit in *McGee* recognized that benefit-of-the-bargain or overpayment injuries can be based on "actionable non-disclosures," *McGee*, 982 F.3d at 707, and remarked in dicta that its prior decisions could "arguably" be read to support that "in the context of a hidden defect, economic injury can be established on an overpayment theory absent misrepresentations." *Id.* But the Ninth Circuit in *McGee* did not reach this question because the hazardous substance *was* disclosed on a warning label. *Id.*; *see also Solis*, 2023 WL 2394640, at *10 (declining to address "hidden defect" theory because a warning label discloses the presence of a PFAS chemical). Here, Globe did not disclose the presence of any PFAS in a warning label. ¶¶ 155–156. Globe's failure is exactly the type of "actionable non-disclosure" that shows overpayment or benefit-of-the-bargain injury.

---

[19] Globe also argues that any "misrepresentation" must be pled with the particularity required for fraud claims under Fed. R. Civ. P. 9(b). However, the cases it cites treat the requirements of Rule 9(b) as applicable only to the question of whether Plaintiff states a claim, not to whether the Plaintiff has standing. *See Solis*, 2023 WL 2394640, at *3 (discussing 9(b) arguments as relevant to a Rule 12(b)(6) motion, not an accompanying 12(b)(1) motion). BSB can find no support for the argument that elements of standing must be plead with particularity under Rule 9(b).

**2.    BSB's injuries are traceable to Globe, which manufactured the contaminated PPE.**

### a.    BSB adequately traces its injuries to Globe.

Globe also argues that BSB's injury is not traceable to Globe. Globe is the fourth defendant to contest traceability and is in by far the worst position to do so. As upstream PFAS and PFAS-containing material suppliers, DuPont, 3M, and Gore can at least claim to be one step removed from the final assembly of turnout gear. This is not enough, because traceability exists where a plaintiff alleges "multiple links in the chain" of causation (*e.g.*, DuPont sold chemicals or materials to Globe, Globe put those chemicals into its turnout gear). *United States v. King Cnty., Wash.*, 122 F.4th 740, 751 (9th Cir. 2024). But Globe is a direct manufacturer of products purchased by BSB, which alleges that it "currently uses turnout gear manufactured by . . . Globe" and that it "purchased turnout gear sold by Globe and Lion, with purchases being made from 2008 through 2024." ¶¶ 24, 28. It strains credulity for Globe to contest traceability when it manufactured the defective gear at issue in this litigation.

Globe's additional arguments also fail. First, it states that "Plaintiff does not allege Globe specifically had knowledge of the alleged health effects of exposure to PFAS in turnout gear." Globe Br. at 15. But Article III standing has no *scienter* requirement. *See Spokeo*, 578 U.S. at 338 (injury, traceability, and redressability are the elements of standing). Finally, Globe argues that because PFAS has made its way

into Montana's water and a wide range of commercial products, the ubiquity of PFAS renders the PFAS in firefighters' blood inherently untraceable.[20] *See* Globe Br. at 16-17. This argument requires the Court to find facts that contradict BSB's allegations. BSB alleges that fire fighters have elevated levels of PFAS compared to the general public, and that "dermal absorption" of PFAS in turnout gear is a "key exposure route." ¶ 92. Globe nonetheless asks this Court to assume BSB cannot meet its burden of proof. Second, and more fundamentally, the fact that PFAS is widespread does allow Defendants to cover up their share of the related public health crisis. *See Parris v. 3M Co.*, 595 F. Supp. 3d 1288, 1311 (N.D. Ga. 2022) ("The fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance") (quoting *Spokeo*, 578 U.S. at 339). The bottom line is that BSB purchased a toxic product made by Globe, so its injuries are not merely *traceable* to Globe but directly tied to it. BSB has standing.

### b. All Defendants are liable for injuries caused by PFAS-infused gear bought by BSB that can be traced to any Defendant.

Tracing a sale to BSB by *any* member of the PFAS Concealment Enterprise subjects all other members of that enterprise to joint liability. As the Ninth Circuit

---

[20] Globe badly misstates the holding of *Hardwick* by saying that the Sixth Circuit "opined [] PFAS in the bloodstream is speculative and not sufficient to state Article III standing." Globe Br. at 12. *Hardwick* says nothing of the sort. Instead, the Court held that the plaintiff did not allege a "plausible pathway" by which any of the ten defendants "delivered … PFAS to his bloodstream." *In re E.I. DuPont de Nemours & Co. C-8 Pers. Inj. Litig.*, 87 F.4th 315, 321 (6th Cir. 2023) ("*Hardwick*").

has explained, "[h]olding RICO conspirators jointly and severally liable for the acts of their co-conspirators reflects the notion that the damage wrought by the conspiracy 'is not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole.'" *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 775 (9th Cir. 2002) (citation omitted).

**C.      The RICO claim is adequately alleged.**

Globe relies on 3M's arguments as to RICO. Globe Br. at 17. BSB explains in its Opposition to 3M's motion to dismiss why 3M's arguments are incorrect. Globe states that "each defendant advances its own self-interest when manufacturing or supplying a product, as opposed to conducting affairs for an enterprise." *Id.* Globe ignores that, as explained in the 3M Opposition, Defendants could not have sold their PFAS products unless *all* Enterprise members uniformly hid the truth. As a result, Defendants "could not have achieved their goals … without cooperation that fell outside the bounds of the parties' normal commercial relationships." *United Food & Com. Workers v. Walgreen Co.*, 719 F.3d 849, 856 (7th Cir. 2013).

Globe also erroneously contends that BSB fails to allege that it "participated in concealing those alleged dangers." Globe Br. at 18. In fact, BSB alleges that "[s]ince 1966, Globe has continued to manufacture, market, and sell turnout gear containing PFAS, using PFAS-containing materials supplied by Defendants 3M, DuPont, Gore, and PFAS manufactured by Defendants 3M and/or DuPont." ¶ 101.

And Globe has never revealed its use of PFAS or that PFAS is dangerous. Paragraph 156 of the Complaint shows "photos typical of warning labels for turnout gear designed, manufactured, marketed, sold, and distributed by Globe, Honeywell, and Lion." The photos' labels "do not disclose that the turnout gear contains PFAS or PFAS-containing materials, and contain no warning that handling, wearing, or using the turnout gear as it was intended to be handled, worn, or used can result in exposure to PFAS and adverse effects to human health." *Id*. Globe's failure to disclose its use of PFAS and the dangers of PFAS adequately supports the RICO claim.

**D.    BSB alleges valid claims under Montana law.**

Each of Globe's four arguments against BSB's Montana claims fail. First, contrary to Globe's claim, BSB has not "admitted in related litigation that there is no support" for its contention that dermal exposure to PFAS causes adverse health effects. Globe Br. at 30. Globe's basis for this assertion appears to be the statement that "[l]imited data exists on health effects associated with inhalation or dermal exposure to PFAS" taken from BSB's MDL Complaint in a separate action. *Id*. at 16 (quoting Dkt. No. 109-1, ¶ 34). Stating that limited data exists is a far cry from admitting that there is "no support" for the causal links pled in this case. Dermal exposure is not the only causal vector pled (*see, e.g.,* ¶¶ 52–60) but, even if it were, BSB has done more than make an unsupported causal allegation (¶¶ 82–96).

Second, BSB has alleged actual injury that Globe proximately caused. As outlined above, BSB alleges that Globe used PFAS in the manufacture of BSB's turnout gear despite its knowledge of the unreasonable danger posed by PFAS and conspired to market and distribute its defective product through marketing materials misrepresenting and omitting the known danger of PFAS. BSB alleges that it relied upon Globe's material misrepresentations and omissions in purchasing the defective Globe turnout gear and now must replace that gear as a causal result of Globe's manufacture and failure to warn of an unreasonably dangerous product. ¶¶ 9–12, 24, 34, 38, 43, 101, 147, 150, 156, 193, 195, 205, 210, 219, 221, 256. These allegations provide causation for actual injury and satisfy the "ascertainable loss" and causation elements under Mont. Code Ann. § 30-14-133(1). *See In re Snowflake, Inc. Data Sec. Breach Litig.*, 2025 WL 3023007, at *13-14, 24-26, 32-34 (D. Mont. Oct. 29, 2025) (discussing causation and finding analogous losses sufficient to establish economic injury under the MCPA); *Duffy v. Kaman Aerospace Corp.*, 2025 WL 1000989, at *2 (D. Mont. Apr. 3, 2025) (Montana Supreme Court has "answered in the affirmative the issue of whether strict product liability applies to scenarios where only the product sustained damage").

Third, Globe's cited support only requires allegation of reliance upon an unfair or deceptive act, which BSB has adequately pled. Globe Br. at 30-31. Again, Globe participated in and helped control the design and distribution of "marketing

materials that misrepresented and concealed the truth about the dangers of PFAS in PFAS-infused turnout gear." ¶ 193. BSB relied on those material misrepresentations and omissions, including their failures to alert BSB to the known dangers of PFAS in their products, which have ultimately caused it injury. ¶¶ 10–12, 150, 214, 255–60.

Finally, BSB has alleged that the unreasonably dangerous exposure to PFAS posed by Globe's turnout gear requires it to be replaced as soon as possible, rendering it unfit for the purpose for which it was sold as required to state a claim for breach of implied warranty of merchantability. ¶¶ 10-12, 20, 241–49; *Streich v. Hilton-Davis, Div. of Sterling Drug*, 692 P.2d 440, 448 (Mont. 1984) ("Surely goods are not merchantable, if in their ordinary use, the goods cause damage to the property to which they are applied or harm to the person using them."). Moreover, BSB has not alleged a date of discovery of the dangers of PFAS concealed by Globe—let alone that BSB continued to buy Globe gear for "years" after discovery. BSB has similarly not alleged facts regarding notice. As such, even if Globe's bald assertion that no notice occurred is true (Globe Br. at 31), the timeliness and adequacy of any notice could not be determined on the current record under Rule 12(d).

**E.     State-law claims under non-Montana laws should not be dismissed.**

**1.     BSB alleges a valid design defect claim against Globe.**

Globe erroneously argues that BSB does not allege "how Globe turnout gear is defective under each state's laws" for purposes of design defect claims. *See* Globe Br. at 21. Globe ignores the Complaint's allegations of how the turnout gear is defective. *See, e.g.,* Count IV, ¶¶ 222–232 (alleging design defect claim under Montana law). Globe's one-sentence, unsupported argument must be rejected.

Globe also incorrectly claims that "Plaintiff does not allege how Globe turnout gear is 'unreasonably dangerous' when it also alleges that PFAS are pervasive in the environment, water, and commercial products, and that there is limited data to support its allegation that dermal exposure to PFAS is harmful." Globe Br. at 21. Globe does not explain why it is immunized from liability merely because there are other sources of PFAS. And stating that limited data exists is a far cry from admitting that there is "no support" for the causal links pled in this case. Moreover, Globe ignores that BSB alleges that "[l]ead researcher Graham Peaslee commented that fire fighter turnout gear is composed of 'the most highly fluorinated textiles [he had] ever seen' and that the level of PFAS in the turnout gear means that fire fighters are

'swimming in a sea of [PFAS]. Those numbers for scientists are scarily high[.]'"

¶ 91 (footnote omitted).

### 2. The failure to warn claim against Globe is adequately alleged.

Globe erroneously argues that "Plaintiff cannot proceed on a failure to warn theory unless it identifies the warning Globe provided, along with deficiencies in that warning." Globe Br. at 21. BSB did precisely that by alleging that Globe's labels for turnout gear "do not disclose that the turnout gear contains PFAS or PFAS-containing materials, and contain no warning that handling, wearing, or using the turnout gear as it was intended to be handled, worn, or used can result in exposure to PFAS and adverse effects to human health." ¶ 156. And BSB alleges throughout the Complaint that Globe and the other Defendants *never* warned of those dangers.

The cases cited by Globe are inapposite. In *L.Z. v. BigAirBag B.V.*, 691 F. Supp. 3d 451, 465 (D. Conn. 2023), the plaintiff merely alleged "that 'the warnings and instructions which were given and which accompanied [the] airbag were inadequate and failed to provide sufficient notice to [Plaintiff] of the dangerous propensities of the said product.'" The court held that "this conclusory and vague allegation is not enough to plausibly state a failure to warn claim." *Id.* Here in contrast, BSB identifies the deficiency in Globe's labels, which do not warn of the dangers of PFAS, just as Globe never warned BSB of those dangers.

In light of those allegations, the other cases cited by Globe are also inapposite. One case was decided on summary judgment. *Karst v. Shur-Co.*, 878 N.W.2d 604 (S.D. 2016). The court explained that at the summary judgment stage, "the plaintiff must 'identify specific, affirmative evidence indicating that the ... warnings were *inadequate*.'" *Id*. at 616 (citation omitted; emphasis in original). The court explained that "instead of opining that the placement of the warning label was inadequate, [plaintiff's expert] went no further than to express an opinion that an additional warning may have been 'appropriate.'" *Id*. And in the last case cited by Globe, the court explained that the "complaint mostly parrots the legal elements of a marketing defect claim, without identifying which of Medtronic's warnings were allegedly defective." *Harrison v. Medtronic, Inc*., 2022 WL 17443711, at *3 (5th Cir. Dec. 6, 2022). BSB explicitly identifies Globe labels that failure to warn of PFAS dangers and alleges that Globe never warned BSB otherwise.

Finally, Globe argues that "Plaintiff identifies in its Complaint only a 'typical' Globe product label that plainly notifies users the garment complied with NFPA 1971, 2018 Edition standards, which the IAFF contends required the use of PFAS. (Doc. 1 ¶ 156); *see supra* Background at 4." Globe Br. at 22. Globe cannot avoid litigating the duty to warn claim by contending that a party to different litigation *claims* that manufacturers of turnout gear had to use PFAS. And even if that were true, that doesn't allow Globe to hide the fact that turnout gear contains PFAS from

BSB and other purchasers when Globe could have designed alternative, safe designs long ago if it had told the truth.

### 3.    BSB sufficiently alleges safer alternatives.

Globe erroneously asks this Court to resolve complex factual disputes at the pleading stage. Specifically, Globe argues that "Plaintiff does not allege how turnout gear without added PFAS would be safer for firefighters than turnout gear with PFAS in light of BSB's acknowledgement of the critical functions of the layers in which PFAS has been used." Globe Br. at 23. BSB alleges in detail that a reasonable alternative design exists (namely, PFAS-free PPE), which could have been available at a much earlier date than it was if Globe and the other Defendants had not concealed the risks and engaged in a disinformation campaign that PFAS-laden turnout gear is safe. *See* ¶¶ 162, 228. Globe does not and cannot cite any precedent that requires more than those allegations.

### 4.    The implied breach of warranty claims under Massachusetts law should not be dismissed for lack of pre-suit notice.

Globe incorrectly argues that the claims for implied breach of warranty under Massachusetts law must be dismissed for lack of pre-suit notice. *See* Globe Br. at 23-24 (citing Mass. Gen. L. 106 § 2-607). Globe ignores that it must prove that it was prejudiced by any lack of notice. The First Circuit has explained that "[u]nder Massachusetts law, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any

remedy.'" *Smith v. Robertshaw Controls Co*., 410 F.3d 29, 35 (1st Cir. 2005) (quoting § 2-607(3)(a)). The Court explained that "late notice and prejudice are separate requirements, and both must be present in order for the defense to succeed." *Id*. at 36. Thus, "when the notice is unreasonably late *and* the defendant is prejudiced thereby, the claim is barred." *Id.* (emphasis in original). Globe does not even address prejudice.

**5.    BSB states valid claims against Globe under various state law consumer protection statutes.**

**a.    Georgia Uniform Deceptive Trade Practices Act.**

Globe erroneously argues that "an omission is not violative of GUDTPA." Globe Br. at 25. The only case it cites merely held that the omission alleged by the plaintiff did not fall under GUDTPA's provisions as to "'standard,' 'quality,' 'style,' 'characteristics,' 'ingredients,' 'uses,' or 'benefits.'" *Wysocki v. Zoom Techs. Inc*., 2024 WL 1139094, at *13 (W.D. Wash. Mar. 15, 2024). In contrast, the omissions claimed by BSB relate directly to those matters. Globe does not cite any case holding that omissions can never violate GUDTPA.

**b.    Maryland, Missouri, and Pennsylvania consumer protection laws.**

Globe erroneously argues that claims under the Maryland, Missouri, and Pennsylvania's consumer protection statutes must be dismissed because those laws "apply only to goods for personal, family, or household purposes." *See* Globe Br. at 25. Globe ignores that BSB bought the gear for personal use by firefighters. *See* ¶

76 ("Turnout gear is the *personal* protective equipment (PPE) used by fire fighters, depicted below.") (emphasis added). For example, Pennsylvania allows "*[a]ny* person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property" to bring suit and does not require that the "person" uses the product for its own personal purposes. 73 Pa. Stat. Ann. § 201-9.2(a).[21] *See Staley v. Gilead Scis., Inc.*, 589 F. Supp. 3d 1132, 1143 (N.D. Cal. 2022) ("Given the functional relationship between an insurer and its insured in which the insurer in effect stands in for the insured to pay for the pharmaceutical, [United Health Care Services] has standing to bring a claim under the [Pennsylvania] CPL because it has paid for drugs on behalf of its insureds and functions as their proxy.").[22] Because Globe fails to discuss this issue in its opening brief, these claims should not be dismissed.

    c.    **State-law bans on class actions do not apply.**

Globe erroneously argues that the consumer protection laws of Georgia, Iowa, and South Carolina require dismissal of BSB's class action claims under those laws.

---

[21] "'Person' means natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entities." *Id*. § 201-2(2).

[22] *See also Centene Corp. v. Merck & Co.*, 2025 WL 2538858, at \*18 (D.N.J. Sept. 4, 2025) ("Plaintiffs' Zetia and/or Vytorin purchases were made for and on behalf of their members, who are natural persons making personal, familial, and household use of them.").

Globe Br. at 26. Globe ignores that courts disagree with the only decision it cites. For example, it overlooks *Grice v. Indep. Bank*, 147 F.4th 440, 448 (4th Cir. 2025), in which the Court recently held that "Rule 23 leaves no room because it 'permits all class actions that meet its requirements [to proceed], and a State cannot limit that permission' by 'impos[ing] additional requirements'—as [South Carolina's] Door Closing Statute does."[23]

Moreover, Globe does not cite, let alone analyze, the effect of *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), in which the Supreme Court held that a New York state law prohibiting class actions in certain circumstances did not preclude a federal class action. (*Grice* discussed *Shady Grove* in depth.) As one court recently held, "[g]iven the parties' limited treatment of this issue and the relative uncertainty as to the appropriate test to apply under *Shady Grove* in this circuit, the court concludes that it is premature to preclude the challenged class action claims at this stage." *In re Crop Prot. Prods. Loyalty Program Antitrust Litig.*, 779 F. Supp. 3d 624, 654 (M.D.N.C. 2025) (denying

---

[23] *See also Rose v. Ferrari N. Am., Inc.*, 2024 WL 1209185, at *7 (D.N.J. Mar. 20, 2024) (denying motion to dismiss class action claim under Georgia law); *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582, 600 (E.D. Mich. 2018) (denying motion to dismiss class claims under Iowa law); *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1086 (S.D. Cal. 2017) (South Carolina's ban "is a procedural rather than substantive rule" that is not enforceable in federal court).

motion to dismiss class claims under South Carolina law). In short, Globe has not provided sufficient analysis to support its argument.

### d.    BSB sufficiently alleges conspiracy claims.

Globe states that it "adopts 3M's discussion of Plaintiff's conspiracy claims, including that conspiracy is not a standalone cause of action and must be dismissed as there are no valid underlying tort claims." Globe Br. at 27. Globe's argument fails, as explained in BSB's Opposition to 3M's motion to dismiss, filed simultaneously herewith.

**F.    BSB's claims are not barred or limited by any statutes of limitations and repose.**

BSB alleges that Globe began manufacturing turnout gear containing PFAS in 1966. ¶ 100. Despite a decades-long effort by Globe and other Defendants to conceal the presence of PFAS chemicals in turnout gear, Globe urges the Court to apply statutes of limitations and repose under various state laws to "bar or limit" BSB's claims. *See* Def.'s App. A, Dkt. No. 109-4. To be sure, none of BSB claims are "barred"— BSB alleges that it "purchased turnout gear sold by Globe . . . through 2024." ¶ 28. At most, therefore, statutes of limitations place time restrictions on the class period. As explained below, however, BSB adequately alleges tolling due to fraudulent concealment and the discovery rule. Thus, even partial dismissal of BSB's claims is inappropriate. *See, e.g., TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) ("Dismissal on statute of limitations grounds can be granted . . . only if

the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.") (internal quotation marks omitted).

### 1.    BSB adequately alleges fraudulent concealment.

"The doctrine of fraudulent concealment equitably estops a defendant who conceals its wrongdoing from arguing that the plaintiff's claim is time-barred." *Mattel, Inc. v. MGA Ent., Inc.*, 2011 WL 13128608, at *1 (C.D. Cal. Jan. 17, 2011). "The prototypical example of fraudulent concealment is one in which the defendant misrepresents or conceals facts necessary to support the plaintiff's claim." *Id.* (internal quotation marks omitted).

Here, BSB alleges a decades-long conspiracy by all Defendants, including Globe, to conceal material information, namely the risks of PFAS chemicals and PFAS-containing turnout gear, from regulators, the public, and class members. These allegations plead fraudulent concealment with the particularity required under Rule 9(b). *See Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1132 (C.D. Cal. 2010) (the Ninth Circuit has held that a claim that the fraudulent concealment tolls an applicable statute of limitations must be pled with particularity under Rule 9(b), meaning the plaintiff must plead "the who, what, when, where, and how of the alleged fraudulent concealment"). Specifically, the Complaint establishes that Globe was aware of the existence of PFAS in its turnout gear products and the risks involved but intentionally concealed and suppressed that information from BSB and

the general public. *See, e.g.*, ¶¶ 10–12, 101, 111, 150, 155–156, 180–182, 193, 202, 212–214, 254–259. The Complaint establishes that Globe had a duty to disclose the concealed information and that, *at the very least*, the concealed information should have accompanied the turnout gear products that BSB purchased in the form of a label or warning. ¶¶ 155–156, 259. Moreover, the Complaint establishes that BSB was unaware of the concealed facts, would have acted differently if it had known about them, and sustained damage as a result of all Defendants' (including Globe's) fraudulent concealment. *See, e.g., id.* ¶¶ 20, 254–257.

> **2.    BSB adequately alleges that the discovery rule tolls the statutes of limitations.**

Because scientific understanding of PFAS in turnout gear and dermal absorption has only come to light in the 2020s, owing in part to Defendants' concealment efforts, described above, the discovery rule tolls BSB's claims. *See, e.g.*, ¶ 92 (citing a 2024 study that describes dermal absorption from turnout gear as a "key [PFAS] exposure route").

As a general rule, "the period of limitation begins when the claim or cause of action accrues." Mont. Code Ann. § 27-2-102(2). But the "discovery rule" provides that "if the facts constituting the claim are concealed or self-concealing in nature, or if the defendant has acted to prevent the injured party from discovering those facts, the period of limitations does not begin to run until the injured party has discovered, or in the exercise of due diligence should have discovered, both the injury and its

cause." *Barker v. Bank of Am., N.A.*, 2019 WL 4261983, at *8 (D. Mont. Aug. 12, 2019), *report and recommendation adopted*, 2019 WL 4257363 (D. Mont. Sept. 9, 2019).

While Defendants have known about the dangers of PFAS for six decades, ¶¶ 112-154, scientific understanding and public awareness of the dangers of PFAS have evolved dramatically in the last ten years. ¶¶ 83–92, 114. The Complaint cites several studies in the 2020s, and as late as 2024, about the presence of PFAs chemicals in turnout gear. ¶¶ 83–91 (2020 study identifying PFAS in turnout gear); ¶ 54 (2021 study about PFAS degradation in heat) ¶ 92 (2024 study that identifies dermal exposure as "a key exposure route"). The validity of several of these studies has been attacked or disputed by the Defendants in this action. *See* ¶¶ 143–154. BSB's allegations demonstrate (1) that the risks of PFAS in turnout gear have remained hidden until the mid-2020s, and 2024 at the latest, and (2) that Defendants have attempted to conceal these risks. Thus, the discovery rule applies, and BSB's claims should not be dismissed.[2]

Globe takes the position that the dangers of PFAS were "publicly knowable by 2017." Globe Br. at 32. Globe does not elaborate on why 2017 is the correct date, and for good reason, because the 2017 episode is a poignant illustration of the Defendants' concealment efforts. In 2017, The Columbus Dispatch published a news article tentatively titled "Lawyer: Firefighters' gear *may* be hazardous." ¶ 139

(emphasis added). In response, Globe's co-Defendant Lion sent a letter demanding the newspaper *retract* the story, claiming that "trace amounts" of PFAS chemicals in turnout gear "would not have posed any health risks to firefighters." *Id.* Globe's position that this local news story should have alerted fire departments nationwide to the dangers of PFAS in turnout gear is absurd, given Defendants' own ruthlessness in attempting to suppress it. Additionally, "public awareness of a problem through media coverage alone does not create constructive suspicion for purposes of discovery." *Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *10 (N.D. Cal. July 22, 2025) (California Law) (internal citations and quotations omitted).

Globe makes light of the evolving science of dermal exposure to criticize BSB's action as premature. Globe Br. at 5 (emphasizing assertion in another lawsuit that, at present, "limited data exist on health effects associated with . . . dermal exposure to PFAS"). Globe cannot have it both ways by (1) maintaining that there is not yet scientific proof of injury by dermal exposure in 2025, and (2) claiming that class members could have filed claims as early as 2017. Because BSB discovered its injuries only recently, the discovery rule applies to toll claims.

Finally, "[w]hat a plaintiff knew and when [they] knew it are questions of fact." *Bibeau v. Pac. Nw. Rsch. Found. Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999) (citation modified). Courts will deny even summary judgment on statute of limitations grounds where "triable issue of fact under the discovery rule." *Diamond*

*Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC*, 656 F. Supp. 3d 1073, 1087 (C.D. Cal. 2023). As scientific evidence and public awareness evolves, the determination of when BSB should have "discovered" the injury is not appropriate for the pleadings stage. Thus, the Court should find that discovery tolling applies and save the question of its scope for later proceedings.

## G.    The first-to-file rule does not bar the Complaint.

Globe argues, in the alternative, that the Court should stay this action under the first-to-file rule pending a ruling on class certification in a "substantially similar [putative] class action" proceeding in the District of Connecticut. *See* Globe Br. at 43. In the event the Court declines to impose a stay of BSB's entire action under the first-to-file rule, Globe "requests a narrower stay of the claims brought on behalf of non-Montana fire departments[.]" *See id.* at 45.

The first-to-file rule is a "generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1161 (9th Cir. 2011). Generally, in determining whether to apply the first-to-file rule, the Ninth Circuit considers three factors: (1) the chronology of the lawsuits, (2) the similarity of the parties, and (3) the similarity of the issues. *See Agri-Systems v. W Nat'l Assur. Co.*, 2020 WL 6781685, at *2 (D. Mont. Nov. 18, 2020). However, "[o]ne of the most fundamental

aspects of the first-to-file rule is that it is discretionary." *Widjaja v. YUM! Brands, Inc.*, 2009 WL 10673334, at \*4 (C.D. Cal. June 8, 2009). This means that the Court "can for reasons of fairness and equity choose not to apply the first-to-file rule even if the three factors are met." *See id.*; *see also Attix v. Carrington Mortg. Servs., LLC*, 2020 WL 9849821, at \*3 (S.D. Fla. Oct. 13, 2020) ("The first to file rule is not meant to be rigid or inflexible but should be applied in a manner that best serves the interests of justice.").

Here, the second and third factors weigh against application of the first-to-file rule. While Globe claims that the parties are "nearly identical," *see* Globe Br. at 44, the named plaintiffs and proposed classes differ, and neither case has reached class certification. *See* Plaintiffs' Corrected Second Amended Complaint, Dkt. No. 215, ¶¶ 9–43, 383, *Uniformed Pro. Fire Fighters Ass'n of Conn., et al. v. 3M Co., et al.*, No. 3:24CV01101 (D. Conn. May 5, 2025) ("UPFFA Action"). The Connecticut action also includes many more defendants. *See id.* ¶¶ 44–67.

Furthermore, this case is factually and legally distinct from the Connecticut action. The gravamen of BSB's action is the economic harm Defendants' RICO enterprise and corresponding violations of state consumer protection laws caused when BSB bought PFAS-contaminated turnout gear, while the Connecticut action is in large part focused on Connecticut fire fighters' and their unions' claims for medical monitoring and intention to represent a medical monitoring class. *See, e.g.,*

*id.* ¶¶ 383, 490–506. The Connecticut action also involves allegations related to fire fighter "station wear," as well as "fire proximity suits" used in Aircraft and Rescue Fire Fighting, in addition to fire fighter turnout gear. *See, e.g., id.* ¶¶ 187–194. Moreover, the Connecticut action is focused on claims under Connecticut statutory and common law and does not include any claims under the Racketeer Influenced and Corrupt Organizations Act. *See id.* ¶¶ 403–506; *see also Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1150 (E.D. Cal. 2010) (ruling that first-to-file rule should not be applied where defendants were identical but second-filed action asserted additional theories of recovery); *Clean Harbors, Inc. v. CBS Corp.*, 2010 WL 11627433, at *3 (D. Kan. Apr. 19, 2010) (first-to-file rule inapplicable where additional claims were asserted in later-filed case and resolution of common issue would leave portion of later-filed case unresolved).

In any event, the Court should decline both of Globe's requested stays on the basis that counsel for the plaintiffs in the two actions have coordinated efforts, are now overlapping, and will continue to coordinate efforts. *See* Dkt. Nos. 117, 120, 124 (in the instant case) *and* Dkt. Nos. 333–338, UPFFA Action. Coordination among plaintiffs' counsel is favorable to a stay, which would needlessly prejudice BSB. *Cf. Adoma*, 711 F. Supp. 2d at 1149–50 (explaining that stay pending certification of first-filed action would harm plaintiff); *Clean Harbors*, 2010 WL

11627433, at *4 (in contamination case, plaintiff's allegations established "fair possibility" that requested stay would prejudice plaintiff).

### III.   CONCLUSION

Globe's motion to dismiss should be denied in its entirety.

DATED: November 20, 2025          Respectfully submitted,

By: /s/ *John Heenan*
    John Heenan
HEENAN & COOK
1631 Zimmerman Trail
Billings, MT 59102
Telephone:  (406) 839-9091
Email:  john@lawmontana.com

By: /s/ *Michael A. Bliven*
    Michael A. Bliven
BLIVEN LAW FIRM, PC
704 S. Main
Kalispell, MT 59901
Telephone: (406) 755-6828
Email:  mike@blivenlawfirm.com

By: /s/ *Steve W. Berman*
    Steve W. Berman (*pro hac vice*)
By: /s/ *Craig R. Spiegel*
    Craig R. Spiegel (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
Email:  steve@hbsslaw.com
        craigs@hbsslaw.com

By: /s/ *Ian W. Sloss*
    Ian W. Sloss (*pro hac vice*)
Jennifer Sclar (*pro hac vice* forthcoming)
SILVER GOLUB & TEITELL LLP
One Landmark Square, 15th Floor
Stamford, CT 06901
Telephone: (203) 325-4491
Email:  jsclar@sgtlaw.com
       isloss@sgtlaw.com

By: /s/ *Kyle J. McGee*
Kyle J. McGee (*pro hac vice* forthcoming)
GRANT & EISENHOFFER P.A.
123 S. Justison Street
Wilmington, DE 19801
Telephone: (302) 622-7000
Email:  kmcgee@gelaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d), I certify that the above brief is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced, and the word count, calculated by Microsoft Office Word, is 8,418 words, excluding the caption, certificate of compliance, table of contents and authorities, and certificate of service.

/s/ John Heenan
John Heenan

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Montana using the CM/ECF system, causing it to be electronically served on all attorneys of record.

/s/ John Heenan
John Heenan