James Stengel (*pro hac vice*)
Paige Pavone (*pro hac vice*)
ORRICK, HERRINGTON &
SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Phone (212) 506-5000
Fax (212) 506-5151
jstengel@orrick.com
ppavone@orrick.com

Lowell J. Chandler
Hillary Dang (*pro hac vice*)
ORRICK, HERRINGTON &
SUTCLIFFE LLP
2100 Pennsylvania Ave NW
Washington, DC 20037
Phone (202) 339-8400
Fax (202) 339-8500

Nicholas J. Lofing
Emma L. Mediak
GARLINGTON, LOHN &
ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT  59807-7909
Phone (406) 523-2500
Fax (406) 523-2595
njlofing@garlington.com
elmediak@garlington.com

*Attorneys for Globe Manufacturing Company, LLC*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| CITY AND COUNTY OF BUTTE-SILVER BOW, et al.<br><br>*Plaintiffs*,<br><br>v.<br><br>3M COMPANY, et al.,<br><br>*Defendants*. | CV 25-36-BU-BMM<br><br>**GLOBE MANUFACTURING COMPANY, LLC'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |

**TABLE OF CONTENTS**

Page(s)

INTRODUCTION……………………………………………………….. 1

BACKGROUND………………………………………………………. 2

LEGAL STANDARD………………………………………………….. 3

ARGUMENT……………………………………………………… 4

I.    CONNECTICUT REMAINS THE FIRST-FILED ACTION, AND
ITS PLAINTIFFS' CLAIMS FAIL ON THE PAPERS HERE …………  4

II.    ALL NON-MONTANA STATE LAW CLAIMS FAIL FOR LACK
OF STANDING AND PERSONAL JURISDICTION ……………….……10

    A.    Standing is Lacking for Non-Forum Plaintiffs Where They
Have Not Pleaded Injury-in-Fact…………………………………… 10

    B.    Non-Forum Plaintiffs Do Not Have Standing to Bring Claims
Under the Laws of Other States…………………………………..13

    C.    This Court Does Not Have Personal Jurisdiction Over
Non-Montana Claims Brought By Non-Montana Residents……….  15

III.    NON-PURCHASER PLAINTIFFS' CLAIMS FAIL BECAUSE
THEY DO NOT ALLEGE PURCHASING GLOBE TURNOUT
GEAR.......................................................................................15

    A.    This Court Lacks Personal Jurisdiction Over Non-Purchaser's
Claims Against Globe…………………………………………… 15

    B.    Non-Purchaser Plaintiffs Do Not Have Article III Standing
to Assert Claims Against Globe………………………………… 16

i

## TABLE OF CONTENTS - CONT'D

**Page(s)**

IV.　NEWLY ADDED PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW……………………………………………………………… 18

　　A.　Connecticut Plaintiffs' Claims Fail as a Matter of Law……………..18

　　　　1.　The CPLA Subsumes Claims For Personal Injury…………... 18

　　　　2.　Connecticut Plaintiffs' Breach of Implied Warranty Claims Fail……………………………………………….. 20

　　B.　Maryland Plaintiffs', Santa Monica's, and St. Louis's Claims Fail as a Matter of Law……………………………….. 21

　　C.　Connecticut Plaintiffs', Maryland Plaintiffs', and St. Louis's Claims are Time-Barred…………………………………… 23

　　V.　PLAINTIFFS' RICO AND CONSPIRACY CLAIMS FAIL…………. 26

CONCLUSION………………………………………………………….. 28

CERTIFICATE OF COMPLIANCE……………………………………. 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alan Neuman Prods., Inc. v. Albright*,
  862 F.2d 1388 (9th Cir. 1989) ................................................................ 26-27

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
  946 F.2d 622 (9th Cir. 1991) ......................................................................5

*Aquilina v. Certain Underwriters at Lloyd's Syndicate #2003*,
  406 F. Supp. 3d 884 (D. Haw. 2019) ...................................................... 11-12

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
  874 F.3d 1064 (9th Cir. 2017) ................................................................ 15-16

*Baatz v. Columbia Gas Transmission, LLC*,
  814 F.3d 785 (6th Cir. 2016) ......................................................................5

*Cahen v. Toyota Motor Corp.*,
  147 F. Supp. 3d 955 (N.D. Cal. 2015) .........................................................11

*Carpenter v. PetSmart, Inc.*,
  441 F. Supp. 3d 1028 (S.D. Cal. 2020) ........................................................14

*Contreras v. Johnson & Johnson Consumer Companies, Inc.*,
  No. CV 12-7099-GW SHX, 2012 WL 12096581
  (C.D. Cal. Nov. 29, 2012) ...........................................................................16

*Dapeer v. Neutrogena Corp.*,
  95 F. Supp. 3d 1366 (S.D. Fla. 2015) ...................................................... 16-17

*Dichello Distributors, Inc. v. Anheuser-Busch, LLC*,
  715 F. Supp. 3d 220 (D. Conn. 2024) ..........................................................24

*E. Point Sys., Inc. v. Steven Maxim, S2k, Inc.*,
  133 F. Supp. 3d 430 (D. Conn. 2015) ..................................................20 n.5

*Edwards v. Marin Park, Inc.*,
  356 F.3d 1058 (9th Cir. 2004) ....................................................................27

# TABLE OF AUTHORITIES - CONT'D

**Page(s)**

**Cases**

*Estrada v. Johnson & Johnson*,
No. 2:14-cv-01051-TLN-EFB, 2015 WL1440466
(E.D. Cal. Mar. 27, 2015) ...............................................................................12

*Ford Motor Co. v. Gen. Acc. Ins. Co.*,
365 Md. 321 (2001) ..................................................................... 22-23

*In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*,
No. 1:21-CV-269, 2022 WL 10197651 (E.D. Va. Oct. 17, 2022) ............... 11-13

*Gerrity v. R.J. Reynolds Tobacco Co.*,
263 Conn. 120 (2003) ................................................................... 18-19

*Halliday v. Sturm, Ruger & Co.*,
368 Md. 186 (2002) ....................................................................21

*Hunte v. Abbott Lab'ys, Inc.*,
556 F. Supp. 3d 70 (D. Conn. 2021)..................................................19

*Indep. Ins. Serv. Corp. v. Hartford Life Ins. Co.*,
472 F. Supp. 2d 183 (D. Conn. 2007)................................................24

*In re Insulin Pricing Litig.*,
No. 3:17-CV-0699-BRM-LHG, 2019 WL 643709
(D.N.J. Feb. 15, 2019) ..................................................................14

*Joshlin v. Gannett River States Pub. Corp.*,
152 F.R.D. 577 (E.D. Ark. 1993) ......................................................4

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
940 F.2d 397 (9th Cir. 1991) ..........................................................26

*Lumsden v. Design Tech Builders, Inc.*,
358 Md. 435 (2000) ......................................................................24

*Marshall v. Goguen*,
604 F. Supp. 3d 980 (D. Mont. 2022)................................................26

# TABLE OF AUTHORITIES - CONT'D

**Page(s)**

**Cases**

*Martin v. Cal. VA*
  560 F.3d 1042 (9th Cir. 2009) ...............................................................14

*Maryland v. Exxon Mobil Corp.*,
  406 F. Supp. 3d 420 (D. Md. 2019)........................................................21

*Miller v. Ghirardelli Chocolate Co.*,
  912 F. Supp. 2d 861 (N.D. Cal. 2012)....................................................17

*Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir.1989) ........................................................... 27-28

*Neale v. Volvo Cars of N. Am., LLC*,
  794 F.3d 353 (3d Cir. 2015) ..................................................................14

*Nolan v. Dillon*,
  261 Md. 516 (1971) ...............................................................................22

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
  678 F.2d 93 (9th Cir. 1982) .....................................................................5

*Papasan v. Dometic Corp.*,
  No. 16-cv-02117-HSG, 2017 WL 4865602
  (N.D. Cal. Oct. 27, 2017)........................................................................11

*Pirozzi v. Apple Inc.*,
  913 F. Supp. 2d 840 (N.D. Cal. 2012)............................................. 11-12

*Power Probe Grp., Inc. v. Innova Elecs. Corp.*,
  670 F. Supp. 3d 1143 (D. Nev. 2023)................................................... 3-4

*Ramirez v. Cnty. of San Bernardino*,
  806 F.3d 1002 (9th Cir. 2015) .................................................................3

*Renn v. Otay Lakes Brewery, LLC*,
  No. 23CV1139-GPC(BLM), 2023 WL 6050582
  (S.D. Cal. Sept. 14, 2023)......................................................................17

# TABLE OF AUTHORITIES - CONT'D

**Page(s)**

**Cases**

*Simpson v. Standard Container Co.*,
 72 Md. App. 199 (1987) ...................................................................22

*Solis v. Coty, Inc.*,
 No. 22-cv-0400-BAS-NLS, 2023 WL 2394640
 (S.D. Cal. Mar. 7, 2023) ..................................................................12

*Stanley v. Cent. Garden & Pet Corp.*,
 891 F. Supp. 2d 757 (D. Md. 2012)...................................................22

*Swartz v. KPMG LLP*,
 476 F.3d 756 (9th Cir. 2007) ...........................................................27

*Sylvan R. Shemitz Designs, Inc. v. Newark Corp.*,
 291 Conn. 224 (2009) ......................................................................19

*Townsend Farms v. Goknur Gida Madderleri Enerji Imalat Ithalat
 Ihracat Ticaret Ve Sanayi A.S.*,
 No. SA CV 15–0837–DOC (JCGX), 2016 WL 10570248
 (C.D. Cal. Aug. 17, 2016)............................................................... 3-4

*Virtual Physical Ctr. Rockville, LLC v. Phillips Med. Sys. N. Am.,
 Inc.*,
 478 F. Supp. 2d 840 (D. Md. 2007)...................................................25

*Watson as Tr. of George T. & Mary E. Watson Tr. Dated Nov. 18,
 1997 v. Menard, Inc.*,
 No. ED 109525, 2021 WL 5456885 (Mo. Ct. App. Nov. 23, 2021)..................25

*Yamashita v. LG Chem, Ltd.*,
 62 F.4th 496 (9th Cir. 2023) ............................................................16

*Yandell v. Kanakuk Heritage, Inc.*,
 No. SD 38892, 2026 WL 279028 (Mo. Ct. App. Feb. 3, 2026)........................25

*Ziegler v. Kawasaki Heavy Indus., Ltd.*,
 74 Md. App. 613 (1988) ...................................................................21

# TABLE OF AUTHORITIES - CONT'D

**Page(s)**

**Cases**

*Zito v. United Techs. Corp.*,
No. 3:15-CV-744 (AWT), 2016 WL 2946157
(D. Conn. Mar. 11, 2016)...................................................................20

**Statutes**

18 U.S.C. § 1961 ..................................................................................8

Conn. Gen. Stat. § 42-110g(f)............................................................25

Conn. Gen. Stat. § 42a-2-314(2)(c) ...................................................20

Conn. Gen. Stat. § 42a-2-725(1).........................................................25

Conn. Gen. Stat. § 42a-2-725(2).........................................................24

Conn. Gen. Stat. § 52-572m................................................................25

Conn. Gen. Stat. § 52-572n(a) ...........................................................18

Conn. Gen. Stat. § 52-577a.................................................................25

CPLA...............................................................................*passim*

CUTPA..............................................................................*passim*

Md. Code, Com. Law § 2-314 ............................................................22

Md. Code, Cts. & Jud. Proc. § 5–101 ................................................25

Mo. Stat. § 400.2-725.........................................................................25

Mo. Stat. § 516.100.............................................................................25

Mo. Stat. § 516.120.............................................................................25

RICO ................................................................................*passim*

# TABLE OF AUTHORITIES - CONT'D

**Page(s)**

**Other Authorities**

Rule 9(b)........................................................................................*passim*

Rule 12(b).................................................................................................3

Rule 41(d).........................................................................................5, 9 n.4

**Suspects**

Article III.................................................................................. 12, 14, 16-17

## INTRODUCTION

Following a series of manipulations, what began as a Montana-based action, filed by a Montana named Plaintiff, has changed dramatically.  Six additional named Plaintiffs from four additional states now purport to represent not only a nationwide class, but also subclasses for 35 states.

Troublingly, two of those "new" Plaintiffs—City of Stamford and Old Mystic Fire District ("Connecticut Plaintiffs")—originally filed these same claims against these same Defendants in the Connecticut Action nearly two years ago.  The Connecticut Plaintiffs dismissed those claims last month and, shortly thereafter, refiled them here.  This is textbook forum-shopping and precisely the kind of gamesmanship that the first-to-file rule should prevent.  Connecticut Plaintiffs' claims should be dismissed and the entire case should be transferred to the District of Connecticut, where the undisputedly first-filed action remains pending.

Additionally, as outlined in Sections II through IV below, all of Plaintiffs' claims rest upon a speculative injury for which they cannot recover, are sparsely pleaded against Globe, and should be dismissed.  Plaintiffs do not allege that the turnout gear is defective because it failed to protect its firefighters against flame, heat, and other hazards inherent to their work.  Rather, Plaintiffs assert that the mere presence in turnout gear of PFAS—substances that Plaintiffs acknowledge are "use[d] in a wide range of commercial products and industries" because of their

1

performance characteristics—renders their turnout gear defective. (Doc. 190 ¶ 79.) Plaintiffs do not allege that Globe engaged in any specific conduct or made specific misrepresentations causing Plaintiffs' alleged injury. In fact, only half the named Plaintiffs even allege to have purchased Globe turnout gear. Plaintiffs' claims should be dismissed.

## BACKGROUND

Globe moved to dismiss Plaintiff City and County of Butte-Silver Bow's ("BSB") original Complaint ("Globe's MTD"),[1] which was denied on January 6, 2026. (Doc. 159.) On March 13, 2026, BSB amended its complaint to add, *inter alia*, six new Plaintiffs[2] from California (Santa Monica), Connecticut (City of Stamford and Old Mystic Fire district), Maryland (City Council of Baltimore and Charles County), and Missouri (City of St. Louis); three new Defendants (EIDP, Inc., Fire-Dex LLP, and Morning Pride Manufacturing LLC), which allegedly participated in the RICO enterprise and conspiracy with original defendants; over a dozen new non-Montana state law claims; and 35 state law subclasses. *See generally* (Doc. 190).

---

[1]  Globe incorporates by reference and reasserts all facts and arguments set forth in Globe's MTD. (Doc. 107), (Doc. 108).

[2]  Herein referred to collectively as "Non-Forum Plaintiffs."

Despite these amendments, the First Amended Complaint ("FAC") remains devoid of allegations specific to Globe, a cut-and-stitch assembler of turnout gear composed of technical fabrics sourced from specialty textile manufacturers. (Doc. 190 ¶¶ 115, 134-35.) **Globe is not a chemical manufacturer and does not manufacture, distribute, market, or sell PFAS.** *See, c.f., Id.* ¶ 10. The FAC lacks factual allegations that Globe misrepresented its turnout gear or that Plaintiffs relied on such misrepresentations. The FAC also fails to allege that Plaintiffs purchased turnout gear directly from Globe, let alone in Montana.[3] In fact, the FAC alleges that only four of the seven Plaintiffs purchased Globe gear at all. **Santa Monica, St. Louis, and Baltimore (together, "Non-Purchaser Plaintiffs") do not allege to have purchased or used Globe turnout gear.** (Doc. 190 ¶¶ 32, 46, 58).

## LEGAL STANDARD

Globe incorporates the Legal Standard from Globe's MTD. (Doc. 107), (Doc. 108). Additionally, an "amended complaint supersedes the original [complaint]." *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) (internal quote and citation omitted). A defendant who has already answered the original complaint may bring Rule 12(b) motions for "new claims" raised in the amendment.

---

[3] The January 6, 2026 Order stated that BSB allegedly purchased turnout gear "directly from Globe," Doc. 159 at 19, but BSB attested that it purchased Globe turnout gear from a third-party distributor, not from Globe directly. (Doc. 108 at 10-11) (citing Docs. 46-1 and 46-2).

*See, e.g.*, *Power Probe Grp., Inc. v. Innova Elecs. Corp.*, 670 F. Supp. 3d 1143, 1147 (D. Nev. 2023); *Townsend Farms v. Goknur Gida Madderleri Enerji Imalat Ithalat Ihracat Ticaret Ve Sanayi A.S.*, No. SA CV 15–0837–DOC (JCGx), 2016 WL 10570248, at *6 (C.D. Cal. Aug. 17, 2016).  Courts treat new plaintiffs' claims in an amended complaint as "new claims" which defendants may move to dismiss.  *See, e.g.*, *Joshlin v. Gannett River States Pub. Corp.*, 152 F.R.D. 577, 579 (E.D. Ark. 1993) (noting that defendants "are free to" renew prior responsive pleadings, including motions to dismiss, against new parties added in amended complaints who assert identical legal and factual issues as those raised in original complaint).

## ARGUMENT

I. **CONNECTICUT REMAINS THE FIRST-FILED ACTION, AND ITS PLAINTIFFS' CLAIMS FAIL ON THE PAPERS HERE**

The circumstances favoring transfer to the District of Connecticut under the first-to-file rule are even more apparent now than when Globe first raised the argument.  In February, after nearly two years of litigation in their first-filed putative nationwide class action in Connecticut, Connecticut Plaintiffs voluntarily dismissed their claims to join this action in Montana.  The Court previously acknowledged that two of the three first-to-file factors—chronology and similarity of parties—weighed in favor of applying the rule to BSB's claims.  *See* (Doc. 159 at 5-12).  Developments since the January 6, 2026, Order—specifically, Connecticut Plaintiffs' voluntary dismissal of their claims from the District of Connecticut and refiling of those same

claims here—further compel transfer to prevent Plaintiffs from exploiting the Court's Order as a license to forum-shop.   Connecticut Plaintiffs (who are represented by the same counsel as Plaintiffs here) abandoned the Connecticut Action, the forum *they* chose and even previously opposed transfer from, once they concluded that this forum offered a more favorable path—a textbook example of the gamesmanship the first-to-file rule is designed to prevent.   Globe's concurrently filed Motion for Fees, Costs, and a Stay of Proceedings Under Rule 41(d) ("Rule 41(d) Mot.") further addresses Plaintiffs' tactics and their impacts.

Notwithstanding the three factors this Court previously considered in evaluating the first-to-file rule ("(1) the chronology of the lawsuits; (2) the similarity of the parties; and (3) the similarity of the issues," Doc. 159 at 5, courts may exercise discretion and depart from the rule's three-pronged test for reasons of equity, to address bad faith filings, and forum-shopping.  *See Alltrade, Inc. v. Uniweld Prods.*, 946 F.2d 622, 628 (9th Cir. 1991); *see also Pacesetter Sys. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982) ("[T]his 'first to file' rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration").  **"[D]eclining to apply the first-to-file rule should be done rarely."**  *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 793 (6th Cir. 2016).

The three factors of the first-to-file rule and equitable considerations weigh in favor of restoring Connecticut Plaintiffs' claims to the District of Connecticut, as well as transferring *Butte* so that the substantively identical putative class actions proceed in the first-filed forum.

*Chronology*.  "The plaintiffs in the Connecticut Action filed before this action in the District of Montana," Doc. 159 at 6-7, on July 25, 2024—nearly two years before refiling here.  The Connecticut Action indisputably predates *Butte*.

*Similarity of Parties*.  Prior to dismissing their claims from the District of Connecticut, Connecticut Plaintiffs sought to represent a nationwide class of turnout gear purchasers, as Plaintiffs do here.  *See* (Doc. 159 at 8) ("The Connecticut Action appears to represent at least some of the same proposed classes," finding that this factor weighs in favor of first-to-file).  Although Connecticut Plaintiffs are no longer in the Connecticut Action, any differences in parties between this case and the Connecticut Action are contrived.  Remaining plaintiffs in the Connecticut Action are proceeding with the same claims as Connecticut Plaintiffs here.  For example, in the FAC, City of Stamford brings a CPLA claim against Defendants.  In the Connecticut Action, proceeding with the *same* CPLA claim against those *same* Defendants, are the Stamford Professional Fire Fighters Association, a labor organization representing "the uniformed members of the Stamford Fire Department in Stamford, Connecticut… comprised of the 247 professional firefighters that work

for the Stamford Fire Department," as well as a Stamford Fire Department firefighter.  2d Am. Compl. ¶¶ 17, 33 (Dkt. 206), *Conn. Action*, (D. Conn. Apr. 21, 2025) (No. 3:24-cv-01101-AWT) ("CT Action").  The proposed class includes "[a]ll firefighters in the state of Connecticut" who have worn Defendants' turnout gear, which would include all firefighters residing within and serving City of Stamford and Old Mystic Fire District.  (Dkt. 206 at ¶ 383) (CT Action Apr. 21, 2025).  Plaintiffs' severance of City of Stamford's claims from the claims of its firefighters' union and firefighters about the *exact same* turnout gear worn by the exact same firefighters and union members, allegedly purchased by Plaintiffs here to be worn by plaintiffs in the Connecticut Action—highlights the bad faith forum-shopping at play.  **Plaintiffs cannot be permitted to defeat the first-to-file rule by strategically splitting their own ranks across forums—keeping one set of related plaintiffs in Connecticut while transplanting another to Montana, all while litigating over *the exact same turnout gear*.**  "For the similarity of parties, numerous courts have held that the parties do not need to be the exact same. . . .  The first-to-file rule requires only 'substantial similarity' of the parties in the concurrent actions."  (Doc. 159 at 7) (internal citations omitted).  City of Stamford (turnout gear purchaser) and Stamford firefighters (turnout gear users) are certainly substantially similar.  This factor continues to weigh in favor of applying the first-to-file rule.

7

*Similarity of Issues*.   The issues between this action and the Connecticut Action remain substantially similar and weigh in favor of transfer.   "The issues between the concurrent cases need not be identical, only substantially similar under the first-to-file rule."  (Doc. 159 at 8) (internal quotes and citation omitted).  "Both actions seek to address and understand the harms caused, both medically and economically, by the alleged inclusion of PFAS in firefighter turnout gear.  The necessary discovery in both actions would be similar to reach the answer to a central issue." *Id.* at 9.  **More than that, since Connecticut Plaintiffs refiled their claims in *Butte*, both actions involve precisely the same exact sets of turnout gear**, purchased by Connecticut Plaintiffs and provided to firefighter plaintiffs in the Connecticut Action.

Additionally, now that Connecticut Plaintiffs have joined *Butte*, the Court's prior concern that BSB's "new legal claims and remedies"—specifically, RICO claims under 18 U.S.C. § 1961 *et seq*., that were absent from the Connecticut Action—would "leave portions of Plaintiff's case unresolved" no longer applies. *See* (Doc. 159 at 10).  Transfer of *Butte* to the District of Connecticut—the rightful first-filed forum—would ensure that all Plaintiffs' claims are heard there.

*Application of the first-to-file rule can remedy Plaintiffs' forum-shopping.* The first-to-file rule exists to "maximize economy, consistency, and comity" and to prevent the "waste [of] judicial resources and [the] undermin[ing] [of] judicial

efficiency" that results from simultaneous adjudication of overlapping matters. (Doc. 159 at 5.) If Plaintiffs could defeat the rule merely by dismissing claims from the first-filed action and refiling them in a second forum, the rule would be meaningless. Plaintiffs dissatisfied with a judicial assignment (as Connecticut Plaintiffs apparently were in the Connecticut Action[4]), court orders, or pace of proceedings, could simply coordinate with counsel in a second-filed copycat case to dismiss their claims and refile in the preferred forum. Allowing Plaintiffs to benefit from this tactic—in which the same counsel proceeds with overlapping proposed class actions, running parallel litigation as a hedge until electing to dismiss one in favor of another—would endorse precisely the bad faith maneuvering and abuse of judicial resources that the first-to-file rule should prevent.

Critically, if *Butte* Plaintiffs and Connecticut Plaintiffs (and their shared counsel) believe their claims should be heard in a single court—and their coordinated conduct of dismissing and refiling claims strongly suggests that they do—then that court should be the District of Connecticut, where the action was first filed. If consolidation is warranted, it is the later-filed action that should join the first-filed action, not the other way around.

*Equitable Considerations.* First, the District of Connecticut has a heightened interest over the District of Montana in hearing claims originated by Connecticut

---

[4] *See generally* Rule 41(d) Mot.

Plaintiffs that allege injury in Connecticut. **As Connecticut Plaintiffs themselves wrote in two federal court filings, they "made the deliberate decision to bring Connecticut claims in the District of Connecticut" because their "action belong[ed]" there.** *See* (Dkt. 43) (CT Action Sept. 6, 2024).

Second, Plaintiffs' FAC—adding claims, substantive allegations, and parties—has reopened motion to dismiss briefing in this case, both from previously-named Defendants and from newly-added Defendants, whom Plaintiffs have not even served yet. In contrast, in Connecticut, motion to dismiss briefing is complete and jurisdictional discovery has commenced—notwithstanding delays of Plaintiffs' own making, including two complaint amendments, Plaintiffs' motion to recuse the magistrate judge, and a dispute over the appointment of lead Plaintiffs' counsel. *See* (Dkt. 9, 201, 215, 323, 358) (CT Action July 25, 2024, Apr. 18, 2025, May 5, 2025, Oct. 15, 2025, Feb. 17, 2026).

There is only one equitable way to address Plaintiffs' forum-shopping here and ensure that their gamesmanship is not rewarded: restore Connecticut Plaintiffs' claims to the District of Connecticut and transfer remaining Plaintiffs' claims there pursuant to the first-to-file rule.

## II.  ALL NON-MONTANA STATE LAW CLAIMS FAIL FOR LACK OF STANDING AND PERSONAL JURISDICTION

### A.  Standing is Lacking for Non-Forum Plaintiffs Where They Have Not Pleaded Injury-in-Fact

10

Non-Forum Plaintiffs have not pleaded injury-in-fact. They do not allege that they tested and detected dangerous levels of PFAS in their gear, nor do they make particularized allegations that firefighters sustained the alleged adverse health effects they claim PFAS can cause, or even that any particular firefighter tested positive for elevated PFAS levels. Instead they allege they *believe* their gear contains PFAS and would not have purchased or paid for it if they knew that it contained PFAS. *See, e.g.*, (Doc. 190 ¶¶ 261, 325-26, 394, 519-22, 594-97). Accordingly, Non-Forum Plaintiffs' alleged underlying injury is speculative and cannot establish injury-in-fact. *See, e.g.*, *Papasan v. Dometic Corp.*, No. 16-cv-02117-HSG, 2017 WL 4865602, at *6-7 (N.D. Cal. Oct. 27, 2017) (no injury-in-fact where plaintiff pled injury that "rest[ed] only upon a speculative risk of future harm"); *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 970 (N.D. Cal. 2015), aff'd, 717 F. App'x 720 (9th Cir. 2017) ("an economic injury that rests on the risk presented by an underlying product defect fails to establish injury in fact if the underlying risk is itself speculative").

Moreover, to assert injury under a benefit-of-the-bargain or overpayment theory based on allegedly fraudulent conduct, plaintiff must allege, with Rule 9(b) particularity, what specific misrepresentations plaintiff relied on, such that the injury-causing product was not as advertised or failed to perform as intended. *See Aquilina v. Certain Underwriters at Lloyd's Syndicate #2003*, 406 F. Supp. 3d 884,

11

901 (D. Haw. 2019); *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 849 (N.D. Cal. 2012); *see also In re Gerber Prods. Co. Heavy Metals Baby Food Litig.,* No. 1:21-cv-269 (MSN/JFA), 2022 WL 10197651, at *5 (E.D. Va. Oct. 17, 2022).  Non-Forum Plaintiffs have not done that.  They do not allege they saw or relied on any specific representation by Globe.  They point only to a single website statement regarding Globe's commitment to firefighter health and safety generally, which they do not claim to have relied on in purchasing Globe gear (if they purchased any at all).  *See* (Doc. 190 ¶ 188); *Estrada v. Johnson & Johnson*, No. 2:14-cv-01051-TLN-EFB, 2015 WL1440466, at *4 (E.D. Cal. Mar. 27, 2015) (dismissing claims because plaintiff "fail[ed] to allege specifically which statements she found material to her decision to purchase to provide an injury for Article III standing") (internal quote and citation omitted).  Moreover, "general safety statements" are not sufficiently specific to support an actionable claim of injury.  *See Solis v. Coty, Inc.*, No. 22-cv-0400-BAS-NLS, 2023 WL 2394640, at *7 (S.D. Cal. Mar. 7, 2023).  Nor have Non-Forum Plaintiffs alleged that Globe gear failed to perform its intended purpose of protecting firefighters when fighting fires.  *See* (Doc. 159 at 42) (describing primary purpose of turnout gear as providing "safety . . . while fighting fires").  They allege only that Globe failed to disclose that its turnout gear contained PFAS.

Accordingly, Non-Forum Plaintiffs' benefit-of-the-bargain and overpayment theory of injury allegations do not amount to injury-in-fact.  *See, e.g.*, *In re Gerber*,

12

2022 WL 10197651, at *7-8 (finding no injury-in-fact where plaintiffs did not allege that "unsafe" baby food at issue did not provide nourishment or otherwise perform); *see also* (Doc. 108 at 23-25).

**B.    Non-Forum Plaintiffs Do Not Have Standing to Bring Claims Under the Laws of Other States**

Even assuming Non-Forum Plaintiffs could proceed with their claims against Globe, they do not have standing to assert violations of laws of any other state than where their alleged injuries occurred.    Although this Court previously denied as premature Defendants' motion to dismiss BSB's non-Montana state law claims, Doc. 159 at 20, the circumstances under which the Court ruled have changed.    This Court declined to dismiss non-Montana state law claims of the *Montana* named Plaintiff because BSB "seeks to include other potential class members from various other states" and dismissal would "deprive [plaintiff] of the opportunity to marshal information about the respective claims, similarities, and variations in the laws of the applicable states, and the potential need for subclasses based on any state law variations."    (Doc 159 at 20-21) (internal quotes and citations omitted).    But BSB has now amended its complaint, adding six Non-Forum Plaintiffs.    Nonetheless, Plaintiffs still assert claims under 35 state laws and now purport to represent subclasses under 35 state laws, despite themselves alleging conduct by Defendants in only five states.

13

"The threshold standing determination may not be postponed to class certification, rather, 'class representatives must meet Article III standing requirements the moment a complaint is filed.'" *In re Insulin Pricing Litig.*, No. 3:17-cv-0699-BRM-LHG, 2019 WL 643709, at *16 (D.N.J. Feb. 15, 2019) (quoting *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 367 (3d Cir. 2015)). "**[N]amed plaintiffs in a class action lack standing to bring claims on behalf of putative classes under the laws of states where no named plaintiff is located and where no named plaintiff purchased the product at issue**." *Id.* (internal quote and citation omitted). For example, in *In re Insulin*, the district court held that the seventeen counts against defendants for violations of seventeen various state laws, states "in which no named plaintiff resides . . . nor is there any allegation of injury in such state . . . . runs afoul of the Supreme Court's holding in *DaimlerChrysler*." *Id.* at *17; *see also Martin v. Cal. VA*, 560 F.3d 1042, 1050 (9th Cir. 2009) ("As a general rule, a third party does not hav[e] standing to bring a claim asserting a violation of someone else's rights."); *Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1038-39 (S.D. Cal. 2020). Allowing Plaintiffs to proceed under the laws of 35 states, 30 in which no Plaintiff resides, would be unconstitutional. Accordingly, Plaintiffs' claims under the laws of any state other than those in which they reside should be dismissed.

14

**C.** **This Court Does Not Have Personal Jurisdiction Over Non-Montana Claims Brought By Non-Montana Residents**

Globe joins 3M's and Gore's Motions to Dismiss for lack of personal jurisdiction. *See* 3M Mot. Dismiss 1st Am. Compl., Apr. 10, 2026 ("3M MTD FAC"); Gore Mot. Dismiss 1st Am. Compl. § I, Apr. 10, 2026 ("Gore MTD FAC"). This Court "lacks general jurisdiction" over Globe. (Doc. 159 at 21). Nor does it have personal jurisdiction over Plaintiffs' claims against Globe under RICO, or in the absence of factual allegations tying Plaintiffs' claims to conduct by Globe in Montana to support personal jurisdiction there. *See* 3M Mot. § I; Gore Mot. § I.A-B. Pendant personal jurisdiction does not exist either. *See* 3M MTD FAC § I; Gore MTD FAC § I.

**III.   NON-PURCHASER PLAINTIFFS' CLAIMS FAIL BECAUSE THEY DO NOT ALLEGE PURCHASING GLOBE TURNOUT GEAR**

Non-Purchaser Plaintiffs' claims against Globe fail because they do not allege ever purchasing Globe turnout gear. *See* (Doc. 190 ¶¶ 32, 46, 58) (alleging purchasing other brands of gear). Without this core allegation, these claims cannot proceed against Globe for lack of personal jurisdiction, lack of standing, and failure to state a claim.

**A.** **This Court Lacks Personal Jurisdiction Over Non-Purchaser's Claims Against Globe**

This Court cannot exercise specific personal jurisdiction over Non-Purchaser Plaintiffs' claims that do not allege purchasing Globe turnout gear. Specific personal

15

jurisdiction requires a link between Defendant's activities in the forum to Plaintiff's claims. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc*., 874 F.3d 1064, 1068 (9th Cir. 2017) ("for a court to exercise specific jurisdiction over a nonresident defendant, . . . the claim must be one which arises out of or relates to the defendant's forum-related activities") (internal quote and citation omitted); (Doc. 159 at 21-22) ("The plaintiff's claim also must arise out of or relate to" an "intentional act . . . expressly aimed at the forum state") (internal quote and citations omitted).

Non-Purchaser Plaintiffs' claims do not relate to any alleged conduct by Globe *at all*, let alone in Montana. Non-Purchaser Plaintiffs do not allege purchasing Globe gear or otherwise allege their injuries arose out of Globe's contacts with Montana. *See, e.g.*, *Yamashita v. LG Chem, Ltd*., 62 F.4th 496, 506 (9th Cir. 2023) (affirming dismissal for lack of personal jurisdiction where plaintiff's alleged injury did not arise out of or relate to defendant's contacts in the forum because plaintiff alleged injury from *other* products).

### B.    Non-Purchaser Plaintiffs Do Not Have Article III Standing to Assert Claims Against Globe

Non-Purchaser Plaintiffs have not alleged any cognizable injury-in-fact as to *Globe's* turnout gear when they allege having only purchased *other Defendants'* gear. A plaintiff cannot suffer injury-in-fact with respect to products it has not purchased. *See, e.g.*, *Contreras v. Johnson & Johnson Consumer Companies, Inc*., No. CV 12-7099-GW(SHx), 2012 WL 12096581, at *2 (C.D. Cal. Nov. 29, 2012)

16

(dismissing case except as to product that named plaintiff purchased); *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015) (dismissing named plaintiff's claims related to unpurchased products for lack of standing because **plaintiff "cannot conceivably allege any injuries from products that he never purchased or used"**) (emphasis added).

District courts in the Ninth Circuit only recognize Article III standing for class plaintiffs' claims involving products they did not purchase where the complaint alleges that the products and alleged misrepresentations are "substantially similar." *Renn v. Otay Lakes Brewery, LLC,* No. 23CV1139-GPC(BLM), 2023 WL 6050582, at *3 (S.D. Cal. Sept. 14, 2023).  Where products and their labels or representations about them differ, the products are not "substantially similar" to confer standing. *See Id.*; *Miller v. Ghirardelli Choco. Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012). Non-Purchaser Plaintiffs do not allege that Defendants' gear, or representations made about each Defendants' gear, are substantially similar.  Indeed, turnout gear is *built-to-order* based on *each customer's specifications*, including fabrics and finishes—turnout gear is not "substantially similar" to confer standing.

Moreover, Non-Purchaser Plaintiffs have not alleged facts demonstrating traceability to Globe as they did not purchase Globe gear.  This Court previously held that "[p]laintiff's allegations of purchasing defective turnout gear containing PFAS . . . from Globe . . establish traceability."  (Doc. 159 at 19.)  But Non-

17

Purchaser Plaintiffs do not allege purchasing Globe gear.  (Doc. 190 ¶¶ 32, 46, 58.)

Therefore, the "line of causation" between Globe's conduct and these Plaintiffs'

alleged harm is not "more than attenuated" as this Court previously held is required

for traceability; the line does not exist at all.  *See* (Doc. 159 at 14).

## IV.   NEWLY ADDED PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW

### A.   Connecticut Plaintiffs' Claims Fail as a Matter of Law

Connecticut Plaintiffs' Connecticut-law claims fail in several ways, requiring

dismissal.  The CPLA subsumes their breach of implied warranty claims, which

otherwise fail.  Connecticut Plaintiffs have not adequately alleged a CUTPA claim.

Additionally, their claims are time-barred.

### 1.   The CPLA Subsumes Claims For Personal Injury

Connecticut Plaintiffs' claims are premised on alleged risk of personal injury

to firefighters that use their allegedly PFAS-containing gear.  (Doc. 190 ¶ 438)

(identifying the "risk to the health and welfare of firefighters posed by Defendants'

PFAS Chemicals and turnout gear" as the source of "the foreseeable injury to

Connecticut Clas members").  But **the CPLA provides the "exclusive means by**

**which a party may secure a remedy for an injury caused by a defective product"**

**under Connecticut law**, *Gerrity v. R.J. Reynolds Tobacco Co.*, 263 Conn. 120, 126

(2003) (citing Conn. Gen. Stat. § 52-572n(a)) (emphasis added), barring Connecticut

Plaintiffs' implied warranties of merchantability and fitness for a particular purpose

18

claims because, like the CPLA claims, they, too, allege that "the turnout gear contained toxic levels of PFAS . . . rendering them unsuitable and unsafe for their ordinary purposes." *Compare* (Doc. 190 ¶ 370 *with* ¶ 401) ("Defendants knew or should have known their PFAS and turnout gear products containing PFAS, were not safe and were likely to cause toxic contamination"); *Sylvan R. Shemitz Designs, Inc. v. Newark Corp*., 291 Conn. 224, 230 (2009).

Similarly, CPLA's exclusivity provision bars the CUTPA claim. The CPLA precludes CUTPA claims that "fall[] within the scope of the product liability act." *Hunte v. Abbott Labs, Inc*., 556 F. Supp. 3d 70, 94 (D. Conn. 2021) (quoting *Gerrity*, 263 Conn. at 129). CUTPA only permits recovery for, unlike here, alleged "financial injury . . . of a kind that has never been regarded as part of the traditional tort remedy for harm caused by a defective product." *Id.* Yet Connecticut Plaintiffs seek the same costs under their CPLA and CUTPA claims. *Compare* (Doc. 190 ¶ 395 *with* ¶ 405).

Indeed, "courts should be wary of plaintiffs trying to assert a CUTPA claim that, 'in reality,' is 'one falling within the scope of the product liability act,'" such as when CUTPA and CPLA claims are premised on the same conduct. *Hunte*, 556 F. Supp. 3d at 93-95. For example, in *Hunte*, the court found that the CPLA precluded plaintiff's CUTPA claim that was "nothing more than a product liability act claim dressed in the robes of CUTPA" because the "instances of unfairness and

19

deception that [plaintiff] alleges in asserting her CUTPA claim are precisely those that [she] alleged in support of her CPLA claim." *Id.* at 95 (internal quote and citation omitted). The same is true here: Connecticut Plaintiffs support their CUTPA and CPLA claims with the same allegations. *Compare* (Doc. 190 ¶¶ 391, 394 *with* ¶ 406). Accordingly, the CPLA precludes their CUTPA claim.[5]

### 2. Connecticut Plaintiffs' Breach of Implied Warranty Claims Fail

Even if Connecticut Plaintiffs' claims for breach of implied warranty are not subsumed under the CPLA, they have nonetheless not plausibly alleged that turnout gear was unfit for its intended purpose or otherwise unmerchantable. Connecticut law defines "merchantable" goods as those that satisfy several criteria, including that they are "fit for the ordinary purpose for which such goods are used." Conn. Gen. Stat. § 42a-2-314(2)(c); *Zito v. United Techs. Corp.*, No. 3:15-CV-744 (AWT), 2016 WL 2946157, at *8 (D. Conn. Mar. 11, 2016), *aff'd*, 673 F. App'x 117 (2d Cir. 2016) (merchantability claim failed where product at issue complied with NFPA and industry standards). Plaintiffs have not alleged that turnout gear they purchased failed to keep firefighters safe while fighting fires. Accordingly, the breach of implied warranty claims fail. *See also* 3M MTD FAC § III.C.3.

---

[5] The CUTPA claims also fail to satisfy Rule 9(b) as required for fraud-based CUTPA claims, *see E. Point Sys., Inc. v. Maxim*, 133 F. Supp. 3d 430, 440 (D. Conn. 2015), for similar reasons as the RICO claims. *See infra* at § V.

**B.**     **Maryland Plaintiffs', Santa Monica's, and St. Louis's Claims Fail as a Matter of Law**

Maryland Plaintiffs bring six Maryland law claims on their own behalf and on behalf of a Maryland subclass, adding three new claims: negligent design defect, negligent failure to warn, and breach of implied warranty of merchantability. Plaintiffs fail to allege facts stating these claims, which should be dismissed.

First, Maryland Plaintiffs fail to state a claim for negligent design defect under Maryland Law. Their negligent design defect claim is premised on a risk-utility theory. (Doc. 190 ¶ 476) ("At all relevant times, the foreseeable risk of harm to firefighter health… posed by Defendants' PFAS-infused products outweighed the utility of using PFAS in those products and outweighed the cost to Defendants of reducing or eliminating such risk"). However, under Maryland law, the risk-utility test applies only when the product "malfunctions in some way." *See Maryland v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420, 461 (D. Md. 2019) (citing *Halliday v. Sturm, Ruger & Co.*, 368 Md. 186, 200 (2002)). Here, Plaintiffs do not allege that Globe's gear malfunctioned. *See* (Doc. 190 ¶¶ 462-76).

Nor have Maryland Plaintiffs alleged that a safer alternative design, required to maintain a Maryland design defect claim, existed before 2021. *See Ziegler v. Kawasaki Heavy Indus., Ltd.*, 74 Md. App. 613, 627 (1988) (affirming summary judgment in favor of defendant, noting that plaintiff failed to produce evidence that the design alternative would have made product safer); (Doc. 190 ¶¶ 196-99).

21

Accordingly, Maryland Plaintiffs' negligent design defect claim should be dismissed.

Second, for the reasons asserted in Globe's MTD, Maryland Plaintiffs' negligent failure to warn claim fails where they have not identified what warnings Globe provided to them.  (Doc. 108 at 32-33.)  Indeed, Plaintiffs identified only a "typical" Globe product label with no allegation that it was viewed by any Maryland purchaser.  (Doc. 190 ¶ 194.)  Moreover, that label plainly notified users that Globe's turnout gear complied with standards under National Fire Protection Association (NFPA) 1971-2018, which the International Association of Fire Fighters ("IAFF") contends required the use of PFAS.  (Doc. 108 at 16, 33.)  Under Maryland law, such a warning is legally adequate.  *See Nolan v. Dillon*, 261 Md. 516, 523 (1971) ("The duty is to give a reasonable warning, not the best possible one"); *Stanley v. Cent. Garden & Pet Corp.*, 891 F. Supp. 2d 757, 764 (D. Md. 2012).

Third, as to the breach of implied warranty of merchantability claim, Plaintiffs do not allege that Globe gear failed to perform its ordinary protective function and was therefore not merchantable as required under Maryland Code, Commercial Law § 2-314.  *See Simpson v. Standard Container Co.*, 72 Md. App. 199, 207-08 (1987) (affirming dismissal of plaintiff's claims for failing to allege that gasoline storage container was not fit for ordinary purpose for the storage of gasoline).  Claims under Maryland Code, Commercial Law § 2-314 must specify the product defect that

22

rendered the product unfit for ordinary purpose when the product was sold, which Plaintiffs have not done. *See Ford Motor Co. v. Gen. Acc. Ins. Co.*, 365 Md. 321, 333-34 (2001). Accordingly, Maryland Plaintiffs' breach of warranty claims should be dismissed.

Finally, Globe joins 3M and Gore's Motions to Dismiss Missouri and California law claims. Plaintiffs cannot sustain their claims under Missouri law against Globe either. *See* Gore MTD FAC § IV.A. Plaintiffs' California law claims fail, too, as Plaintiffs likewise lack privity with Globe when Santa Monica does not allege purchasing Globe turnout gear. *See supra* at 15-17; 3M MTD FAC § III.B; Gore MTD FAC § IV.B.

C.    **Connecticut Plaintiffs', Maryland Plaintiffs', and St. Louis's Claims are Time-Barred**

Statutes of limitations and repose bar or limit Plaintiffs' claims. The discovery rule and fraudulent concealment should not toll those limits, for reasons provided in Globe's MTD. *See* (Doc. 108 at 39-43). Indeed, at the latest, the public became aware of the alleged danger of PFAS in turnout gear by 2020 because, as this Court explained, "Plaintiff's Complaint cites studies on the dangers of PFAS starting in the 2020s," Doc. 159 at 48-49, including the 2020 study by Graham Peaslee, Doc. 190 ¶¶ 115-23, 177. Even if, "[t]he statute of limitations only begins to run under the discovery rule once Plaintiff[s] begin[] to have a suspicion of the injury," Doc. 159 at 49, (which does not hold true under Connecticut, Maryland, or

23

Missouri law), Plaintiffs allege that suspicion arose with the 2020 study—published five years before this action was filed—rendering Plaintiffs' claims time-barred.

The discovery rule does not apply to Plaintiffs' CUTPA or breach of warranty claims. "CUTPA's statute of limitations is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs." *See, e.g., Dichello Distribs. v. Anheuser-Busch, LLC*, 715 F. Supp. 3d 220, 267 (D. Conn. 2024) (internal quote and citation omitted); *Indep. Ins. Serv. Corp. v. Hartford Life Ins. Co.*, 472 F. Supp. 2d 183, 189-90 (D. Conn. 2007) (**The statute of limitations for CUTPA claims is "triggered upon the occurrence of the alleged violation, not the discovery of the alleged practice"** underlying the claim) (internal citations omitted; emphasis added). Likewise, **the discovery rule does not apply to breach of warranty claims**. Conn. Gen. Stat. § 42a-2-725(2) ("A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."). The statutes of limitations therefore bar the CUTPA and breach of warranty claims.

Under Maryland law, the limitations period runs from when plaintiff "gain[s] knowledge sufficient to put [plaintiff] on inquiry notice." *Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 452 (2000). Public statements in a news article are sufficient to place plaintiff on inquiry notice. Here, Plaintiffs' allegations

24

demonstrate that Plaintiffs could have reasonably discovered the alleged dangers of PFAS in turnout gear by 2017, when public media reported on the allegations. *See* (Doc. 190 ¶ 177). *See, e.g.*, *Virtual Physical Ctr.-Rockville, LLC v. Phillips Med. Sys. N. Am., Inc.*, 478 F. Supp. 2d 840, 848-49 (D. Md. 2007) (plaintiff's fraud and negligence claims barred where LA Times article provided inquiry notice of potential product safety issues).

Under Missouri law, statute of limitations accrues when the alleged injury is capable of ascertainment, or "can be discovered or made known, not when the plaintiff actually discovers injury or wrongful conduct." *Watson v. Menard, Inc.*, No. ED109525, 2021 WL 5456885, at *3 (Mo. Ct. App. Nov. 23, 2021) (citation omitted). Newspaper articles can provide the facts necessary to ascertain a claim. *See, e.g.*, *Yandell v. Kanakuk Heritage, Inc.*, No. SD38892, 2026 WL 279028, at *3 (Mo. Ct. App. Feb. 3, 2026).

Accordingly, Plaintiffs' Connecticut claims are barred by three- or four-year limitations periods. *See* Conn. Gen. Stat. § 42a-2-725(1); *Id.* §§ 52-572m, 52-577a; *Id.* § 42-110g(f). Plaintiffs' Maryland claims are barred by the three-year limitations period. *See* Md. Code, Cts. & Jud. Proc. § 5–101. And Plaintiffs' Missouri claims are barred by four- or five-year limitations periods. *See* Mo. Stat. §§ 516.100, 516.120; Mo. Stat. § 400.2-725.

## V.    PLAINTIFFS' RICO AND CONSPIRACY CLAIMS FAIL

Plaintiffs' amended RICO and conspiracy claims should be dismissed for failure to state a claim.  The FAC adds three Defendants—Old Dupont, Fire-Dex, and Morning Pride—to the purported "PFAS Concealment Enterprise."  They also add six Plaintiffs who purport to have been injured by Defendants' RICO-violative conduct.  Yet nowhere in the FAC have Plaintiffs pled any substantive participation or coordinated conduct by Defendants to form an "enterprise."  *See* (Doc. 108 at 28) (citing cases); (Doc. 101 at 34-40) (citing cases); *see also Marshall v. Goguen*, 604 F. Supp. 3d 980, 1013 (D. Mont. 2022) (alleging only "isolated incidents involving some, but never all, of the named defendants" did not sufficiently allege defendants acted as a unit).

Further, despite adding claims of six Plaintiffs, no Plaintiff alleges, with the requisite Rule 9(b) particularity, any misrepresentation made by this expanded PFAS Concealment Enterprise to any Plaintiff, or that Globe participated in the enterprise's alleged concealment of the alleged dangers of PFAS in turnout gear.  As this Court recognized, the Ninth Circuit requires that RICO predicate acts of mail or wire fraud, as alleged here, be pled with sufficient particularity in accordance with Rule 9(b) and allege the "who, what, when, where, and how" of the fraud.  *See* (Doc. 159 at 27-28); *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist*., 940 F.2d 397, 405 (9th Cir. 1991); *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir.

26

1988).   A plaintiff must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation" made by *each* defendant in a RICO-enterprise based on fraudulent misrepresentations. *Moore v. Kayport Package Express*, 885 F.2d 531, 541 (9th Cir.1989) (citation omitted); (Doc. 159 at 27-28); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (finding Rule 9(b) not satisfied where complaint "merely lump[s] multiple defendants together" and does not "inform each defendant separately of the allegations surrounding his participation in the fraud") (citation omitted).   For example, in *Edwards v. Marin Park, Inc*., the Ninth Circuit affirmed dismissal of RICO claim under Rule 9(b) where complaint alleged the time and place of defendant's purportedly fraudulent notices, but did not contain "a word of the notices' specific contents."  356 F.3d 1058, 1065-66 (9th Cir. 2004).   And in *Swartz*, the Ninth Circuit found that allegations that some defendants "knew that [other defendants] were making . . . false statements to clients, . . .  and thus were acting in concert with [those other defendants]" and "were acting as agents [for those other defendants]" were insufficient as a matter of law under Rule 9(b).  476 F.3d at 765 (internal quote and citation omitted).

Here, **Plaintiffs do not allege "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation" made by Globe regarding its turnout gear.**  Indeed, Plaintiffs

27

identify only a single statement by Globe that addresses Globe's commitment to firefighter health and safety, and does not contain representations about turnout gear. (Doc. 190 ¶ 188.)  Otherwise generally alleging that Globe "misrepresent[ed] and omitt[ed] (or causing such misrepresentation and omissions to be made) the truth about turnout gear to Plaintiffs" does not satisfy Rule 9(b)'s particularity requirements.  *See, e.g.*, *Moore*, 885 F.2d at 542 (failing to specify time, place, and content of the fraud, the predicate act on which the RICO claim was based, was fatally deficient to plaintiff's RICO claims).  Plaintiffs' FAC therefore fails to plausibly allege a RICO claim against Globe and should be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims should be dismissed, or alternatively, transferred to the District of Connecticut under the first-to-file rule.

This 10th day of April, 2026          Respectfully,

/s/  Emma L. Mediak

James L. Stengel*
Paige Pavone*
ORRICK, HERRINGTON
& SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
jstengel@orrick.com
ppavone@orrick.com

Hillary Dang*

28

Lowell J. Chandler
ORRICK, HERRINGTON &
SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 339-8400
hdang@orrick.com
lchandler@orrick.com

Nicholas J. Lofing
Emma L. Mediak
GARLINGTON, LOHN &
ROBINSON, PLLP
350 Ryman Street, P.O. Box 7909
Missoula, MT 59807-7909
Telephone: (406) 523-2500
njlofing@garlington.com
elmediak@garlington.com

*Attorneys for Globe
Manufacturing Company, LLC*

*admitted pro hac vice*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d), I certify that the above brief is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced, and the word count, calculated by Microsoft Office Word, is 6,470 words, excluding the caption, tables of contents and authorities, signature block, certificate of service, and certificate of compliance.

/s/ Emma L. Mediak_____

Attorneys for Globe Manufacturing
Company, LLC