# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| CITY AND COUNTY OF BUTTE-SILVER BOW, et al.,<br><br>Plaintiffs,<br><br><br>v.<br><br><br>3M COMPANY (F/K/A MINNESOTA MINING AND MANUFACTURING COMPANY); DUPONT DE NEMOURS, INC.; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; CORTEVA, INC.; GLOBE MANUFACTURING COMPANY LLC; W.L. GORE & ASSOCIATES, INC.; LION GROUP INC.; FIRE-DEX LLP; MORNING PRIDE MANUFACTURING LLC; and INNOTEX CORP,<br><br>Defendants. | CV-25-36-BU-BMM<br><br><br><br>ORDER ON MOTION FOR FEES, COSTS, AND A STAY OF PROCEEDINGS UNDER RULE 41(d) AND MOTION FOR SANCTIONS |

## INTRODUCTION

Defendants Globe Manufacturing Company, LLC ("Globe"), Lion Group,

Inc. ("Lion"), and W. L. Gore & Associates, Inc. ("Gore") filed a motion for fees, costs, and a stay of proceedings under Federal Rule of Civil Procedure 41(d) on April 10, 2026. (Doc. 204.) Defendants 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M"), DuPont de Nemours, Inc., The Chemours Company, The Chemours Company FC, LLC, Corteva, Inc., and Lion filed a motion for sanctions on May 7, 2026. (Doc. 237.) Plaintiffs the City of Stamford, Connecticut and Old Mystic, Connecticut ("Connecticut Purchaser Plaintiffs"), oppose the motions. (Doc. 235, Doc. 243.) The Court held a hearing on the matter on May 22, 2026. (Doc. 293.)

## BACKGROUND

Plaintiffs bring this nationwide class action against Defendants for the alleged sale, manufacture, and distribution of protective firefighter gear ("turnout gear") containing per- and polyfluoroalkyl substances ("PFAS") to fire departments and fire responding agencies. (Doc. 1 ¶¶ 1-9; Doc. 234 ¶¶ 1-9.) Plaintiffs allege that PFAS, found in the firefighter turnout gear, are associated with serious health effects, including cancer. (Doc. 234 ¶¶ 4-7.) Plaintiffs contend that Defendants concealed the known dangers of PFAS and failed to provide adequate safety warnings to the public and class members, despite having knowledge of the risks and harms of PFAS for decades. (*Id*. ¶¶ 10-12.)

Plaintiffs originally brought claims in separate cases in the District of Montana and the District of Connecticut. (*See* Doc. 190; *see Uniformed Pro. Fire Fighters Ass'n v. 3M Co.*, No. 3:24-cv-01101 (D. Conn.) ("*UPFFA*").) Connecticut Purchaser Plaintiffs filed the Connecticut action first, on June 25, 2024, and proceeded through the early stages of litigation including removal proceedings, discovery discussions, and Rule 12(b)(2) motions. *See* Complaint, *UPFFA*, No. 3:24-cv-01101, (D. Conn. June 25, 2024), Doc. 1 (*see generally* the complete docket). Defendants also unsuccessfully tried to remove the Connecticut action to the South Carolina Multi-District Litigation ("MDL") on PFAS in firefighting foam. *See Uniformed Pro. Fire Fighters Ass'n of Connecticut v. 3M Co.*, No. 3:24-CV-1101 (AWT), 2024 WL 4471356, at *1 (D. Conn. Oct. 10, 2024); *see also In re Aqueous Film-Forming Foams Products Liability Litigation*, 2:18-mn-2873-RMG ("*AFFF*"). The court and the MDL panel rejected the motion to transfer and a related motion to stay. *Uniformed Pro. Fire Fighters Ass'n of Connecticut*, 2024 WL 4471356, at *1; *see also In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 765 F. Supp. 3d 1379, 1380 (U.S. Jud. Pan. Mult. Lit. 2024).

Plaintiffs filed the action in the District of Montana on April 3, 2025. (Doc. 1.) The action in the District of Montana began after the Connecticut action, yet it has progressed more quickly. For example, the Court already has addressed in their entirety the first round of motions to dismiss. (*See* Doc. 159.) The parties also briefed

one motion to appoint interim counsel. (*See* Doc. 88, Doc. 99, Doc. 102.) Montana Plaintiffs withdrew their motion to appoint interim counsel following a dispute with Defendants and Connecticut Purchaser Plaintiffs. (*See* Doc. 114.) Montana Plaintiffs and Connecticut Purchaser Plaintiffs resolved their dispute and eventually agreed to proceed forward only in the District of Montana. (*See* Doc. 235.) Other municipalities with similar claims also joined the litigation in the District of Montana. (*See* Doc. 190, Doc. 234.) Connecticut Purchaser Plaintiffs voluntarily dismissed their claims in Connecticut. (Doc. 243 at 6.) The personal injury case on behalf of Connecticut firefighters remains in the District of Connecticut. (*Id.*)

Defendants Globe Manufacturing Company, LLC ("Globe"), Lion Group, Inc. ("Lion"), and W. L. Gore & Associates, Inc. ("Gore") filed a motion for fees, costs, and a stay of proceedings under Federal Rule of Civil Procedure 41(d) against Connecticut Purchaser Plaintiffs on April 10, 2026. (Doc. 204.) Defendants 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M"), DuPont de Nemours, Inc., The Chemours Company, The Chemours Company FC, LLC, Corteva, Inc., and Lion filed a motion for sanctions against Connecticut Purchaser Plaintiffs on May 7, 2026. (Doc. 237.) Defendants 3M, Chemours, Corteva, and DuPont note in their motion for sanctions that they also join the motion for Rule 41(d) costs. (Doc. 238 at 27, n.6.) Connecticut Purchaser Plaintiffs oppose the motions. (Doc. 235, Doc. 243.) The Court will address both motions in this order.

## LEGAL STANDARD

"Rule 41(d) allows a court to award 'costs' incurred in litigation to a party if the plaintiff dismissed that litigation and then filed another suit based on the same claims, against the same defendant." *Moskowitz v. Am. Sav. Bank*, F.S.B., 37 F.4th 538, 542–43 (9th Cir. 2022). The court may stay the proceedings until the plaintiff satisfies the award of costs. Fed. R. Civ. P. 41(d)(2). "The language of Rule 41(d) clearly indicates that it conveys 'broad discretion' on federal courts to order stays and payment of costs, and that neither is mandatory." *Dammeier v. Home Depot U.S.A., Inc*., No. 16-5481 RJB, 2016 WL 4945305, at *2 (W.D. Wash. Sept. 16, 2016) (quoting *Esquivel v. Arau*, 913 F. Supp. 1382, 1386 (C.D. Cal. 1996)). The rule is "intended to serve as a deterrent to forum shopping and vexatious litigation." *Dammeier*, 2016 WL 4945305, at *2 (quoting *Esquivel*, 913 F. Supp. at 1386 (internal quotation and citation omitted)).

A court's "inherent powers [to assess sanctions] must be exercised with restraint and discretion." *Chambers v. NASCO, Inc*., 501 U.S 32, 44 (1991). This inherent power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id*. at 43 (quoting *Link v. Wabash R.R. Co*., 370 U.S. 626, 630-31 (1962)). A court may assess attorney's fees as a sanction "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons,

delaying or disrupting litigation, or has taken actions in the litigation for an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (citing *Chambers*, 501 U.S. at 45-46 & n.10); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980).

A court must make a specific finding that a party or lawyer acted in bad faith, or at least engaged in "conduct tantamount to bad faith," to justify sanctions under a district court's inherent authority. *Fink*, 239 F.3d at 993-94. Bad faith can include "a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* Courts possess inherent authority to fashion "appropriate sanctions" against parties who have abused the judicial process by judge-shopping. *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998) (citing *Chambers*, 501 U.S. at 44-45).

## DISCUSSION

Defendants argue that Connecticut Purchaser Plaintiffs engaged in improper forum-shopping when they chose voluntarily to dismiss their claims in the District of Connecticut and join this matter in the District of Montana. (Doc. 205; Doc. 238.) Defendants cite the following as evidence of forum-shopping by Connecticut Purchaser Plaintiffs: (1) Connecticut Purchaser Plaintiffs opposed transfer of their case to the *AFFF* MDL because "[Connecticut] Plaintiffs' action belong[ed] in the District of Connecticut" (*UPFFA*, Doc. 43 at 14); (2) Connecticut Purchaser

Plaintiffs opposed Butte Plaintiffs' motion to be appointed interim class counsel based on the first-to-file rule and stressed the differences between the two cases (*see* Doc. 130 at 32-35); (3) Judge Thompson's discovery order in Connecticut that "warn[ed]" "Plaintiffs against group treatment of Defendants" (*UPFFA*, Doc. 343); (4) the Court's order denying Defendants' motions to dismiss (*see* Doc. 159); and (5) the refusal of U.S. Magistrate Judge Farrish in the District of Connecticut to recuse himself from the case. (Doc. 205 at 17; *see also* Doc. 238 at 17-31.)

Connecticut Purchaser Plaintiffs argue that they voluntarily dismissed their Connecticut claims and refiled in the District of Montana because consolidation would "vastly reduce the cost, procedural complexity, and potential conflicts for all parties." (Doc. 235 at 6.) Connecticut Purchaser Plaintiffs assert that the Montana action stands as the "most procedurally advanced of all related cases pending across the county, making this Court the only logical forum for consolidation to conserve judicial resources, promote efficient case management, and expeditiously advance the interests of the class the Connecticut Purchaser Plaintiffs seek to represent." (Doc. 243 at 6.) Connecticut Purchaser Plaintiffs further argue that the Connecticut court "has not made a single, substantive ruling against the Plaintiffs." (*Id*. at 12.) Connecticut Purchaser Plaintiffs also reiterate that the individual firefighter and firefighter union claims remain in Connecticut in front of the same judge to counter accusations of judge-shopping. (*Id*. at 16-17.)

The Court remains unpersuaded that Connecticut Purchaser Plaintiffs' conduct in this matter represents an abuse of the judicial system, warranting sanctions or an award of costs. The Court recognizes that Connecticut Purchaser Plaintiffs appear to have asserted somewhat inconsistent positions throughout the litigation. The Court fails to see how these slightly discrepant positions rise to the level of clear bad faith, forum-shopping, or abuse of the judicial process. The Court will address in turn each of Defendants' cited issues.

Defendants argue that Connecticut Purchaser Plaintiffs have taken hypocritical positions in first opposing transfer of their case into the *AFFF* MDL in South Carolina and later refiling in Montana. (Doc. 238 at 10; Doc. 205 at 14.) Defendants correctly assert that Connecticut Purchaser Plaintiffs stated that "[Connecticut] Plaintiffs' action belong[ed] in the District of Connecticut." (Doc. 205 at 14, citing *UPFFA*, Doc. 43 at 14.) Defendants' selective framing of Connecticut Purchaser Plaintiffs' position when opposing the transfer to the South Carolina *AFFF* MDL appears incomplete.

Connecticut Purchaser Plaintiffs filed a 15-page brief in opposition to the transfer that focuses primarily on the fact that it proved unlikely that Defendants would succeed in their effort to transfer the case. *See UPFFA*, Doc. 43. Connecticut Purchaser Plaintiffs argued that a full stay of the action while the *AFFF* MDL Panel formally decided on Defendants' motion to transfer would be prejudicial to

Connecticut Purchaser Plaintiffs, and a stay would provide no "countervailing advantages to the Court or to Defendants." *UPFFA*, Doc. 43 at 4. Connecticut Purchaser Plaintiffs emphasized that the Clerk of the Panel already had issued a determination that their case proved inappropriate for inclusion in the *AFFF* MDL. *Id*. at 8. The Court highlights these arguments to demonstrate that Connecticut Purchaser Plaintiffs did not premise their opposition to transfer into the *AFFF* MDL solely on concerns about location.

The Court also notes that the Connecticut Plaintiffs opposing the transfer to the *AFFF* MDL and stay included both the municipalities in this action—the Connecticut Purchaser Plaintiffs—and the individual firefighters and firefighter unions bringing claims in Connecticut. *Id*. The inclusion of the individual firefighters and firefighter unions at that step necessarily influenced Connecticut Plaintiffs' position in the briefing on where the action properly belonged. The Court recognizes that this nuance proves relevant to how the Court now evaluates that previous statement. The Court also emphasizes that the *AFFF* MDL included actions primarily focused on PFAS in firefighting foam which proves distinct both legally and factually from the issues in this action.

The Court remains unpersuaded by Defendants' reliance on *Realtime Adaptive Streaming LLC v. Netflix*, Inc., 41 F.4th 1372 (Fed. Cir. 2022). The plaintiff in *Realtime* had filed suit in Delaware, proceeded through early litigation, and then

9

voluntarily dismissed and re-filed in the Central District of California. *Id*. at 1374. The plaintiff's timing clearly suggested forum-shopping because it voluntarily dismissed only after "a thorough report and recommendation from the Delaware magistrate judge finding claims of four of the [six] patents ineligible" and shortly "before the district court could rule on the magistrate judge's ineligibility findings." *Id*. In other words, the plaintiff knew an unfavorable decision was pending and jumped ship before it could be issued. To make matters worse, the plaintiff previously had opposed a motion to transfer the action to the Northern District of California because it "would be inconvenient and an unfair burden" on the plaintiff. *Id*. The facts in *Realtime* prove different from the case here, even when focused only on the inconsistent positions on transfer. *Realtime* fails to persuade the Court that Connecticut Purchaser Plaintiffs' actions here constitute forum-shopping. *Realtime* instead suggests to the Court that the bar remains high to sanction a plaintiff and that much more egregious behavior existed in *Realtime* than what it sees here.

The Court also observes that Connecticut Purchaser Plaintiffs repeatedly underlined their focus on efficiency and the "path that offered the best chance of securing relief as soon as possible." *Id*. at 14. Connecticut Purchaser Plaintiffs may have asserted inconsistent positions as to location throughout the proceedings, but they consistently have prioritized an efficient forum. It further proves worth underscoring that material facts shifted between the time Connecticut Purchaser

10

Plaintiffs opposed transfer to the *AFFF* MDL and the current status. Notably, the Montana action passed the Connecticut action in terms of progress and has proceeded more quickly through the litigation. In addition, the cities of Baltimore, St. Louis, and Santa Monica, and Charles County, Maryland decided to bring their own claims. The addition of these potential plaintiffs further altered how a party may have assessed the suitability of consolidation at that point in the process. Such changes in circumstances reasonably may justify a shift in any plaintiff's perspective on the proper path. This conduct provides no evidence of bad faith, abuse of the judicial process, or forum-shopping.

Defendants similarly argue that Connecticut Purchaser Plaintiffs' opposition to Montana Plaintiffs' motion to be appointed interim class counsel provides further evidence that their current position proves contradictory. (Doc. 238 at 12; Doc. 205 at 15.) Defendants correctly quote Connecticut Purchaser Plaintiffs' previous arguments that Montana Plaintiffs had "plagiarize[d]" their original complaint and that Connecticut Purchaser Plaintiffs represented the proper party to be appointed interim lead counsel. *UPFFA*, Doc. 323 at 3. The Court reiterates that circumstances substantively changed between the time of that filing and the instant matter. As noted earlier, the Montana action moved forward and became more procedurally advanced than the Connecticut action. Connecticut Purchaser Plaintiffs additionally argue that the litigation materially changed when the cities of Baltimore, St. Louis, and Santa

Monica, and Charles County, Maryland decided to bring their own claims. (Doc. 235 at 23.)

The Court agrees. It proves clear that the various Plaintiffs' counsel in this matter resolved any dispute and jointly determined that the changed nature of the litigation, and the quicker pace in the District of Montana, justified consolidation within Montana. The Court recognizes that Connecticut Purchaser Plaintiffs' previous arguments about the differences between the cases appear at least partially inconsistent now. The Court will not fault Connecticut Purchaser Plaintiffs for reevaluating their perspective on the prudence of consolidation at this point in the respective proceedings considering the several material changes across the board.

Defendants argue that the above-noted change in circumstances prove insufficient to justify Connecticut Purchaser Plaintiffs' shift and instead contend that the only changes in the proceedings relate to allegedly unfavorable decisions by the District of Connecticut. (Doc. 205 at 17; Doc. 238 at 24.) Defendants cite Judge Thompson's discovery order in Connecticut that allegedly "warn[ed]" "[Connecticut Purchaser] Plaintiffs against group treatment of Defendants." (Doc. 238 at 25; Doc. 205 at 19, citing *UPFFA*, Doc. 343.) Defendants further cite the refusal of U.S. Magistrate Judge Farrish in the District of Connecticut to recuse himself from the case. (Doc. 205 at 17; Doc. 238 at 15, n.1.) Connecticut Purchaser Plaintiffs counter that the Connecticut court issued no unfavorable decisions toward them and that

Defendants' examples demonstrate that they are "scour[ing] the record for any evidence they can find to twist into their favored narrative." (Doc. 243 at 14.) The Court generally agrees with Connecticut Purchaser Plaintiffs.

Defendants' first example of an adverse ruling relates to a statement from Judge Thompson that future briefing on motions to dismiss should be addressed in separate filings rather than through an omnibus filing or group treatment. *UPFFA*, Doc. 343. Defendants compare that statement to the Court's order on Defendants' motions to dismiss in the District of Montana action that rejected Defendants' claim that Plaintiffs impermissibly had lumped together certain Defendants. (Doc. 205 at 19, citing Doc. 159 at 15.) The Court finds lacking this alleged evidence of adverse rulings, or motivation to judge-shop. The Court acknowledges that the implications of each order potentially may have indicated a slightly more favorable forum in the District of Montana. The evidence proves slight, however, and the Court fails to see how this conduct rises to the examples of bad faith or clear judge-shopping demonstrated in the case law. *See e.g., Kern Oil & Refining Co. v. Tenneco Oil Co.*, 792 F.2d 1380, 1390 (9th Cir. 1986).

The Court similarly concludes as to the U.S. Magistrate Judge's refusal to recuse himself from the case in Connecticut. Connecticut Purchaser Plaintiffs assert that they believe U.S. Magistrate Judge Farrish is fair and impartial, despite having moved for his recusal. (Doc. 235 at 22.) The Court fails to see how this decision

represents a sufficiently adverse ruling to substantiate Defendants' judge-shopping claims. Neither this decision, nor the indications from Judge Thompson concerning group treatment on the briefing for future motions to dismiss, prove comparable to the examples cited in case law. In *Kern Oil & Refining Co.*, the district court granted partial summary judgment against the party before the party voluntarily dismissed the claim. 792 F.2d at 1390. The *Kern* case proved procedurally more complex, but for purposes of comparison, the district court had entered a substantive ruling on motions for summary judgment that clearly disfavored the party later accused of forum shopping. *Id.*

The Ninth Circuit in *Ponkey v. LLR, Inc.*, similarly concluded that a plaintiff had been forum-shopping when she sought a transfer based on a forum-selection clause only "after the district court had made substantive rulings unfavorable to her." 2025 WL 3034693, at *1 (9th Cir. Oct. 30, 2025). The court in *Wexler v. Regents Univ. of California* suggested that the plaintiff was judge-shopping when he sought recusal only after the court had "dismissed with prejudice [the plaintiff's] federal claims, denied his motion to amend to add new federal claims, and declined to exercise supplemental jurisdiction over his state law claims." No. 25-CV-00377-EMC, 2026 WL 579213, at *1 (N.D. Cal. Mar. 2, 2026). These orders represented substantive adverse rulings.

*Alul v. Am. Honda Motor Co., Inc.*, concluded that no forum-shopping existed where there was a "lack of any unfavorable ruling" in a case that had been voluntarily dismissed and later refiled. No. 16-CV-04384-JST, 2016 WL 7116934, at *3 (N.D. Cal. Dec. 7, 2016). *Alul* reasoned that "'attempting to achieve tactical advantage in the choice of a forum . . . is a perfectly legitimate goal in an adversarial system of justice,' so long as [p]laintiffs are not trying to 'escap[e] a prior unfavorable ruling in its own case.'" *Id*. (quoting *True Health Chiropractic Inc. v. McKesson Corp*., No. 13-CV-02219-JST, 2013 WL 6000539, at *3 (N.D. Cal. Nov. 12, 2013)) (cleaned up and internal citation omitted). *Calvert v. Berg*, concluded that the plaintiff had engaged in impermissible forum-shopping when he sought to remove the case from bankruptcy court and move into district court after the bankruptcy judge had "issued several rulings that [plaintiff's counsel] may [have] deem[ed] unfavorable," including sanctioning the plaintiff's counsel and holding him in civil contempt for failure to comply with a Bankruptcy Rule 2004 subpoena. No. C13-1019JLR, 2013 WL 3407790, at *6 (W.D. Wash. July 8, 2013).

The Court remains unpersuaded that Connecticut Purchaser Plaintiffs' actions constitute forum-shopping as nothing in the record demonstrates any adverse or unfavorable substantive rulings against Connecticut Purchaser Plaintiffs. The record in Connecticut instead suggests an impartial, and potentially relatively favorable, forum for Connecticut Purchaser Plaintiffs as the court denied Defendants' Rule

15

12(b)(2) motions without prejudice, granted Plaintiffs' motion for jurisdictional discovery, and rejected Defendants' proposed scheduling order while admittedly suggesting that it would not provide the exact discovery schedule that Plaintiffs preferred. (Doc. 243 at 14, citing *UPFFA*, Doc. 296, at 12-16, Doc. 343.)

The Court recognizes, as Defendants assert, that the Ninth Circuit does not mandate proof of a previous adverse ruling as a prerequisite to substantiate a judge-shopping claim. (Doc. 271 at 15.) Defendants further cite cases where courts found judge-shopping when a plaintiff voluntarily dismissed a complaint immediately after having been assigned to a specific judge. *See e.g.*, *Hernandez v. City of El Monte*, 138 F.3d 393, 398 (9th Cir. 1998); *In re Fieger,* 1999 WL 717991, No. 97–1359 (6th Cir. Sept. 10, 1999) (the plaintiffs filed thirteen duplicate complaints in the same district and then dismissed all but one of them and their attorney publicly admitted that he had done so in order to ensure assignment to his judge of preference). The plaintiffs in *Hernandez* filed first in federal court, and then, after learning their judge assignment, refiled the same case in state court under a different name. 138 F.3d at 398. The Ninth Circuit concluded that the district court's conclusion that such action constituted judge-shopping was not clearly erroneous, although it determined that dismissal proved an improper remedy. *Id*. at 398-400. No similar facts exist here. In fact, the individual firefighter and firefighter union claims remain in the District of Connecticut in front of Judge Thompson. This fact undermines Defendants'

suggestion that Connecticut Plaintiffs believe that Judge Thompson would be an unfavorable decision-maker.

Defendants have provided insufficient evidence for the Court to make a specific finding of bad faith or otherwise conclude that Connecticut Purchaser Plaintiffs have abused the judicial process or met the requirements to warrant relief under FRCP Rule 41(d). Connecticut Purchaser Plaintiffs also have "persuasively explain[ed] their actions" to the Court. *See Owen v. Hyundai Motor Am.*, No. 2:22-CV-00882-KJM-CKD, 2023 WL 2529782, at *1 (E.D. Cal. Mar. 15, 2023) (explaining that burden is on plaintiffs to justify their actions for Rule 41(d) motion) (citing *Milkcrate Athletics, Inc. v. Adidas Am., Inc.,* 619 F. Supp. 3d 1009, 1025 (C.D. Cal. 2022); *Whole E Nature, LLC v. Wonderful Co., LLC*, No. 17-10, 2017 WL 4227150, at *4–5 (S.D. Cal. Sept. 22, 2017)).

The Court emphasizes that consolidation of these numerous claims and cases, regardless of district, proves efficient, less costly, and beneficial to all parties. The Court recognizes that some delay occurred between the time when Connecticut Purchaser Plaintiffs allegedly decided to voluntarily dismiss, did seek dismissal, and then refiled their action in Montana. Connecticut Purchaser Plaintiffs provided a sufficient justification to the Court for this delay in that they needed to organize, consolidate, and ensure proper refiling with the numerous parties. The Court also points out that much of Defendants' work and the resources that Defendants have

17

expended in the Connecticut action will not go to waste as they likely will prove relevant and helpful in the Montana action. The Court emphasizes that consolidation likely will financially benefit the parties in the long-term. The Court declines to grant Defendants' motion for fees, costs, a stay of proceedings under Rule 41(d) (Doc. 204) and declines to grant Defendants' motion for sanctions (Doc. 237).

**ORDER**

Accordingly, **IT IS ORDERED** that Defendants' Globe, Lion, and Gore Motion for Fees, Costs, and a Stay of Proceedings Under Federal Rule of Civil Procedure 41(d) (Doc. 204) is **DENIED**. Defendants' 3M, DuPont de Nemours, Inc., The Chemours Company, The Chemours Company FC, LLC, Corteva, Inc., and Lion Motion for Sanctions (Doc. 237) is **DENIED**.

DATED this 28th day of May, 2026.

_____
Brian Morris, Chief District Judge
United States District Court