**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION**

| | |
|---|---|
| CITY AND COUNTY OF BUTTE-SILVER BOW, et al., <br><br> Plaintiffs, <br><br> v. <br><br> 3M COMPANY (F/K/A MINNESOTA MINING AND MANUFACTURING COMPANY); DUPONT DE NEMOURS, INC.; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; CORTEVA, INC.; GLOBE MANUFACTURING COMPANY LLC; W.L. GORE & ASSOCIATES, INC.; LION GROUP INC.; FIRE-DEX LLP; MORNING PRIDE MANUFACTURING LLC; INNOTEX CORP; and EIDP INC. (F/K/A E. I. DUPONT DE NEMOURS AND COMPANY), <br><br> Defendants. | **CV-25-36-BU-BMM** <br><br><br> **ORDER ON THIRD ROUND OF MOTIONS TO DISMISS** |

**INTRODUCTION**

Plaintiffs City and County of Butte-Silver Bow, Montana ("Butte-Silver

Bow" or "BSB"), Santa Monica, California ("Santa Monica"), City of Stamford,

1

Connecticut ("Stamford"), Old Mystic Fire District, Connecticut ("Old Mystic"), Mayor and City Council of Baltimore, Maryland ("Baltimore"), Charles County, Maryland ("Charles County"), City of St. Louis, Missouri ("St. Louis"), Kansas City, Missouri ("Kansas City"), Anniston, Alabama ("Anniston"), Little Rock, Arkansas ("Little Rock"), Pine Bluff, Arkansas ("Pine Bluff"), Markham, Illinois ("Markham"), Gary, Indiana ("Gary"), Worcester, Massachusetts ("Worcester"), Borough of Emmaus, Pennsylvania "(Emmaus"), and City of Oak Creek, Wisconsin ("Oak Creek") (collectively "Plaintiffs") filed a Second Amended Complaint ("SAC") against Defendants 3M Company ("3M"), Dupont De Nemours, Inc., The Chemours Company, The Chemours Company FC, LLC, Corteva, Inc. ("Dupont"), Globe Manufacturing Company LLC ("Globe"), W.L. Gore & Associates, Inc. ("Gore"), Lion Group Inc. ("Lion"), Fire-Dex LLP ("Fire-Dex"), Morning Pride Manufacturing LLC ("Morning Pride"), Innotex Corp. ("Innotex"), and EIDP Inc. (f/k/a E.I. Dupont De Nemours and Company) ("EIDP") (collectively "Defendants") on May 5, 2026. (Doc. 234.) Defendants filed motions to dismiss Plaintiffs' SAC. (Doc. 308, Doc. 311, Doc. 313, Doc. 315, Doc. 317, and Doc. 378.) Plaintiffs oppose the motions. (Doc. 338.) The Court held a hearing on the matter on July 9, 2026. (Doc. 373.)

## BACKGROUND

Plaintiffs bring this nationwide class action against Defendants for the alleged sale, manufacture, and distribution of protective firefighter gear ("turnout gear") containing per- and polyfluoroalkyl substances ("PFAS") to fire departments and fire responding agencies. (Doc. 234 ¶¶ 1-9.) Plaintiffs allege PFAS, found in the firefighter turnout gear, are associated with serious health effects, including cancer. (*Id*.) Plaintiffs contend that Defendants concealed the known dangers of PFAS and failed to provide adequate safety warnings to the public and class members, despite having knowledge of the risks and harms of PFAS for decades. (*Id*. ¶¶ 10-12.) Plaintiffs assert that the ineffective safety warnings render the products defective and unreasonably unsafe. (*Id*.) Plaintiffs allege that Defendants worked together to conceal the known dangers of PFAS from Plaintiffs and the public. (*Id*. ¶ 11.) Plaintiffs allege that Defendants' failure to warn of the harms from PFAS caused foreseeable injuries to class members who used turnout gear as intended. (*Id*.)

Plaintiffs comprise cities, counties, municipalities, and one fire district across the United States. (*Id*. ¶¶ 21-121.) Plaintiffs' claims arise under the Racketeer and Corrupt Organization Act ("RICO") and various state laws. (*Id*. ¶ 20.) Plaintiffs seek monetary damages to replace the defective turnout gear purchased. (*Id*. ¶¶ 19-20.)

Plaintiffs originally brought claims in separate cases in the District of Montana and the District of Connecticut. (*See* Doc. 190; *see Uniformed Pro. Fire Fighters Ass'n v. 3M Co*., No. 3:24-cv-01101 (D. Conn.) ("*UPFFA*").) Plaintiff

Butte Silver-Bow filed the action in the District of Montana on April 3, 2025. (Doc. 1.) Defendants filed motions to dismiss Plaintiff Butte Silver-Bow's Complaint (Doc. 1). (Doc. 100, Doc. 103, Doc. 105, and Doc. 107.) The Court denied Defendants' first round of motions to dismiss Plaintiff Butte Silver-Bow's Complaint. (Doc. 159.)

Plaintiff Butte Silver-Bow amended its complaint on March 13, 2026, to add new Plaintiffs including Santa Monica, Stamford, Old Mystic, Baltimore, Charles County, and St. Louis. (Doc. 190.) The First Amended Complaint ("FAC") additionally added three new Defendants including EIDP, Fire-Dex, and Morning Pride. (*Id.*) Defendants filed a second round of motions to dismiss. (*See* Doc. 193, Doc. 198, Doc. 200, and Doc. 202.)  Plaintiffs filed a Second Amended Complaint ("SAC") on May 5, 2026, adding several new Plaintiffs including the following: Kansas City, Anniston, Little Rock, Pine Bluff, Markham, Gary, Worcester, Emmaus, and Oak Creek; along with one new Defendant, Innotex. (Doc. 234.) The Court denied as moot Defendants' second round of motions to dismiss. (Doc. 252.)

Defendants' third round of motions to dismiss assert several grounds to argue for dismissal of Plaintiffs' various claims. (Doc. 308, Doc. 311, Doc. 313, Doc. 315, Doc. 317, and Doc. 378.) Defendants seek to dismiss all Plaintiffs' claims alleged in the SAC pursuant to Fed. R. Civ. P. 12(b)(6). (*Id.*)

## LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires claimants to include in their complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint under the plausibility pleading standard of Rule 8(a)(2). *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal proves appropriate under Rule 12(b)(6) where the complaint fails to state a claim upon which relief can be granted. *Mendiondo v. Centinela Hospital Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A court may dismiss a complaint "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

A complaint must contain sufficient factual matter to state a plausible claim for relief on its face to survive a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim proves plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard does not require probability, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A court must "take[] as true and construe [] in the light most favorable to plaintiffs" all factual allegations set forth in the complaint. *Lee v.*

*City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted).

## DISCUSSION

Defendants seek to dismiss Plaintiffs' claims contained in the SAC on various grounds. Defendants assert that the Court lacks personal jurisdiction over Defendants. Defendants contend that Plaintiffs lack Article III standing to assert their claims. Defendants request dismissal of Plaintiffs' claims for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

In the alternative, Defendants ask the Court to stay the action pursuant to the first-to-file rule. The Court already has addressed similar issues in its order on Defendants' first motions to dismiss. (*See* Doc. 159.) The Court notes that it already has decided disputes over Plaintiff Butte Silver-Bow's claims against the Original Defendants and it will not revisit these arguments. The Court briefly will address the repeated arguments as to New Plaintiffs in addition to analyzing new arguments separately.

## I.    FIRST-TO-FILE RULE

Defendant Globe again argues that the first-to-file rule demonstrates that the Court should transfer this action to the District of Connecticut. (Doc. 309 at 47.) The Court declined to follow Globe's request in its order on the first motions to dismiss. (Doc. 159 at 5-12.) The Court does so again.

"Under the first-to-file rule, 'when cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy.'" *Emrit v. Musk*, No. CV-25-08-BLG-SPW-TJC, 2025 WL 1057060, at * 2 (D. Mont. Mar. 20, 2025) (citation omitted); *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240-41 (9th Cir. 2015), *report and recommendation adopted*, *Emrit*, 2025 WL 1042811. "Courts should be driven to maximize 'economy, consistency, and comity.'" *Kohn*, 787 F. 3d at 1240 (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999)).

A court should consider the following factors when deciding to apply the first-to-file rule: (1) the chronology of the lawsuits; (2) the similarity of the parties; and (3) the similarity of the issues. *Agri-Systems v. W. Nat'l Assur. Co.*, No. CV 20-44-BLG-SPW-TJC, 2020 WL 6781685, at *2 (D. Mont. Nov. 18, 2020) (citation omitted). The Ninth Circuit looks to whether a "substantial overlap" remains between the lawsuits wherein "[s]imultaneous adjudication of [] matters would waste judicial resources and undermine judicial efficiency." *Naden v. Numerex Corp.*, No. CV-08-107-BLG-RFC, 2008 WL 11413566, at *2 (D. Mont. Dec. 9, 2008). A court may choose not to apply the first-to-file rule for purposes of fairness and equity even when the three factors have been met. *Widjaja v. YUM! Brands, Inc.*, 2009 WL 10673334, at *4 (C.D. Cal. June 8, 2009).

As the Court previously recognized, a group of plaintiffs filed a class action on June 25, 2024, in the District of Connecticut ("Connecticut Action"). *UPFFA et al. v. 3M Co. et al.*, 3:24-cv-01101-AWT (D. Conn. June 25, 2024). The Connecticut Action plaintiffs filed a First Amended complaint on July 25, 2024. (*Id.*) The Connecticut plaintiffs filed their action before the Montana Action which proves sufficient for purposes of the chronology factor.

The plaintiffs in the Connecticut Action sought to represent a nationwide class of firefighter turnout gear purchasers, persons and entities, who purchased turnout gear allegedly containing PFAS from the named defendants. (*Id.*) The Connecticut Action putative class included municipalities that purchased firefighter turnout gear like Plaintiff Butte Silver-Bow. (*Id.*) Plaintiffs Stamford and Old Mystic ("Connecticut Purchaser Plaintiffs") voluntarily dismissed their claims in the Connecticut litigation, however, and recently joined the Montana Action. (*See* Doc. 234, Doc. 243 at 6.) Only the personal injury case on behalf of Connecticut firefighters remains in the District of Connecticut. (Doc. 243 at 6.)

Globe asserts that the Connecticut and Montana actions remain "highly similar and indeed involve the exact same sets of turnout gear." (Doc. 309 at 47.) The Court recognizes that the two actions share both legal and factual similarities. The Court concludes that the two actions now assert distinct claims. Purchaser Plaintiffs including the cities, municipalities, and counties who constitute parties to

the Montana action represent different interests and perspectives compared to those of the individual firefighters and firefighter unions. The Court remains unconvinced that "substantial similarity" now exists between the parties to both actions. *Kohn*, 787 F. 3d at 1240. The Court remains similarly concerned that substantial similarity of issues does not exist between the two actions. *Id*., at 1240-41 (citing *Int'l Fid. Ins. Co. v. Sweet Little Mex. Corp*., 665 F.3d 671, 677-78 (5th Cir. 2011). Claims similar to Plaintiffs' RICO claim and various state law consumer protection claims also remain absent from the Connecticut Action. (Doc. 338 at 129.)

The Court notes that it already has addressed similar arguments on several occasions, including in its orders on the first motion to dismiss, the motions for sanctions or fees, costs, and a stay of proceedings under Federal Rule of Civil Procedure 41(d), and on the motion to stay for the JPML. (*See* Doc. 159, Doc. 300, Doc. 296.) The Court further reiterates that the Montana action has gone through numerous filings, motions, hearings, and judicial resources, and has progressed more quickly and procedurally surpassed the Connecticut Action. *See generally Clark v. McDonald's*, No. 3:22-CV-00628-NJR, 2023 WL 2648467, at *10 (S.D. Ill. Mar. 27, 2023) (considering stage of litigation of each action).

The Court determines that fair and equitable reasons remain to decline to apply the first-to-file rule and to keep this action in the District of Montana. *Clean Harbors, Inc*., 2010 WL 11627433, at *3 (D. Kan. Apr. 19, 2010). The Court again

declines to exercise its discretion to apply the first-to-file rule under these specific circumstances. Judicial efficiency and the interests of justice remain better served by maintaining this pending action in the District of Montana.

## II.    PERSONAL JURISDICTION

Defendants argue that the Court lacks personal jurisdiction over Defendants in Montana. (Doc. 314 at 16-20; Doc. 309 at 25; Doc. 312 at 5-7; Doc. 316 at 10-22; Doc. 318 at 5-25; Doc. 379 at 3-14.) All parties acknowledge that the Court already has concluded that it lacks general jurisdiction over Defendants as no Defendants' "place of incorporation" or "principal place of business" is in Montana. (Doc. 159 at 21, citing *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014).) Plaintiffs must establish specific personal jurisdiction over each Defendant.

The Court already has concluded that exercising personal jurisdiction over Defendants 3M, Dupont, Globe, Gore, and Lion proved reasonable as to Plaintiff BSB's claims. (Doc. 159 at 27.) Defendants argue that New Plaintiffs also must establish specific personal jurisdiction for their claims and Plaintiff BSB must establish personal jurisdiction over their claims as to the New Defendants. Plaintiffs first argue that RICO provides personal jurisdiction over all Defendants for all the claims. (Doc. 338 at 37.) The Court will address this issue before moving on to the remaining personal jurisdiction issues.

### A. Whether RICO Provides Personal Jurisdiction Over RICO Counts I and II as to Every Defendant.

10

Plaintiffs argue that the Court has personal jurisdiction over all Defendants under RICO, and, therefore, the Court does not need to address the remaining personal jurisdiction issues. (Doc. 338 at 37-50.) Defendants argue that Plaintiffs' RICO allegations prove insufficient to permit nationwide jurisdiction under RICO because Plaintiffs cannot demonstrate that no other district exists in which a court would have personal jurisdiction over all the alleged co-conspirators. (Doc. 357 at 9, citing *Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986).)

A RICO civil action or proceeding "against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). The Ninth Circuit has held that "[f]or nationwide service to be imposed under section 1965(b), the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Butcher's Union*, 788 F.2d at 539. Defendants argue that Plaintiffs have failed to meet the second step of this test (Doc. 357 at 9) and that Plaintiffs have failed to allege a single nationwide conspiracy (Doc. 316 at 16).

The Court already has concluded that Plaintiffs' allegations sufficiently alleged a nationwide conspiracy in the "PFAS Concealment Enterprise." (Doc. 159

11

at 33.) The Court declines to revisit this analysis. Globe, Gore, Morning Pride, Dupont, and Innotex also assert that the SAC fails to allege sufficiently their individual involvement in the enterprise as the SAC failed to refer to any communications between each Defendant and any other member of the alleged enterprise and failed to indicate when or how each Defendant became aware of the presence and danger of PFAS in its turnout gear, or otherwise participated in the enterprise. (Doc. 316 at 17-18, Doc. 309 at 17-21, Doc. 312-7, Doc. 372 at 4-5, and Doc. 318 at 21-22.)

The Court determines that Plaintiffs' allegations sufficiently establish that Defendants participated in an enterprise. Plaintiffs allege that each Defendant knew of the dangers of PFAS and actively hid the dangers for decades. (Doc. 234 ¶ 112-154.) Plaintiffs' SAC includes specific allegations to each Defendant and general allegations of the specific actions of Defendants. (*Id*.) Plaintiffs' SAC alleges that at least one Plaintiff uses or has used gear and/or productions from each Defendant. Plaintiffs' SAC specifically addresses the misrepresentations made by Defendants both separately and as a part of the enterprise. (*See e.g., Id*. ¶ 275 (Morning Pride publicly advertises its turnout gear as "[d]esigned to provide safety," referring to its turnout gear products as "the pioneer of safety by design.").

"A key justification for requiring plaintiffs to separately plead allegations of fraud as to each defendant is notice." *In re Volkswagen "Clean Diesel" Mktg., Sales*

*Pracs., & Prods. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 4890594, at \*11 (N.D. Cal. Oct. 30, 2017) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) ("To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge . . ..")). "Notice is not a problem here." *In re Volkswagen*, 2017 WL 4890594, at \*11. Each Defendant participated in the PFAS/turnout gear market with knowledge of the dangers. "[A] RICO conspiracy under § 1962(d) requires only that the defendant was 'aware of the essential nature and scope of the enterprise and intended to participate in it.'" *In re Volkswagen*, 2017 WL 4890594, at \*17 (quoting *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015) (quoting *United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004)). The Court concludes that Plaintiffs' allegations prove sufficient at this pleading stage to establish these elements of personal jurisdiction for a RICO claim.

Defendants further argue that Plaintiffs fail to demonstrate that no other district exists in which a court would have personal jurisdiction over all Defendants in an action brought by Plaintiffs. (*See e.g.*, Doc. 353 at 14; Doc. 357 at 10-13.) Defendants primarily cite Delaware and Connecticut as alternative districts. Plaintiffs argue that a Delaware court would not have personal jurisdiction over Globe or Lion based either on general jurisdiction or specific personal jurisdiction.

(Doc. 338 at 41.) "Plaintiffs allege that 'none of the products purchased from Globe or Lion by any Plaintiff in this litigation was manufactured in or sold from Delaware, and that the Globe and Lion products any Plaintiff bought that are at issue in this litigation do not contain PFAS or any other material manufactured in or sold from Delaware.'" (*Id*. at 41-42, citing Doc. 234 ¶ 156.)

The Court remains skeptical of Plaintiffs' assertions that Delaware could not exercise personal jurisdiction over all Defendants. The Court previously has stated "that specific jurisdiction likely exists in Delaware over the two non-Delaware Defendants [Globe and Lion]." (Doc. 85 at 7.) Plaintiffs have made new allegations pertaining to Defendants' lack of relevant activity which may impact the Court's analysis. The Court concludes that it proves unnecessary to determine conclusively the proper outcome on this issue at this time. The Court recognizes that the JPML soon will be considering whether to consolidate these numerous class actions and parties into an MDL. A potential pending MDL would moot these issues and require additional and different briefing, argument, and analysis. The Court declines to further address this issue at this time, or the issue of pendent jurisdiction.

### B. Whether the Court May Exercise Personal Jurisdiction Over Defendants.

A plaintiff must show "minimum contacts" that are the result of the defendant's "purposeful availment" or "purposeful direction" to establish specific

14

jurisdiction over a non-resident defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801-02 (9th Cir. 2004). The defendant must have "committed an intentional act" that was "expressly aimed at the forum state." *Schwarzenegger*, 374 F.3d at 803. The plaintiff's claim also must "arise[] out of or relate[] to" that act. *Id.* at 802.

The Court already has determined that it properly may exercise personal jurisdiction over the Original Defendants for Plaintiff Butte Silver-Bow's claims. (Doc. 159.) The Court now will address personal jurisdiction over claims made by New Plaintiffs and claims made by Plaintiff Butte Silver-Bow against New Defendants.

### i.    New Defendants' contacts aimed at Montana.

Plaintiffs assert that the newly added manufacturer Defendants—Morning Pride, Innotex, and Fire-Dex—are subject to specific personal jurisdiction in Montana "on the same purposeful-availment basis the Court applied to the original Defendants." (Doc. 338 at 52.) The Court agrees.

A plaintiff cannot establish that a defendant purposefully availed itself to a particular jurisdiction simply by showing that "a defendant manufacturer 'placed its product into the stream of commerce.'" *Rodoni v. Royal Outdoor Prods., Inc.*, 2019 WL 2300400, at *3 (D. Mont. May 30, 2019) (quoting *Holland Am. Line Inc. v. Warsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007)). A national corporation's

actions must "target" the specific forum. *Id.* at *5. Such targeting can take the shape of "a regular flow or regular course of sales in the state or a special state-related design, advertising, advice, marketing, or [something] else." *J. McIntyre Machinery v. Nicastro*, 564 U.S. 873, 886 (2011) (Breyer, J., concurring) (quoting *Asahi Metal Indus. Co., Ltd. v. Sup. Calif., Solano Cnty.*, 480 U.S. 102, 111 (1987) (O'Connor, J., concurring)). A defendant's contacts with the state cannot be based on the "random, fortuitous, or attenuated" contacts he makes by interacting with other persons affiliated with the state. *Cataraha v. Elemental Prism, LLC*, 2018 WL 3448283, at *4 (D. Mont. July 17, 2018) (citing *Walden v. Fiore*, 571 U.S. 277, 286 (2014)).

Plaintiffs' SAC alleges that Fire-Dex's authorized dealer, Heiman Fire Equipment, Inc. ("Heiman"), maintains a dedicated "Montana Sales Team." (Doc. 234 ¶ 151.) Heiman's website states that it serves nine states, including Montana, and provides contact information for the Montana Sales Team. (*Id.*)[1]. The SAC alleges that "Heiman has delivered Fire-Dex equipment directly to BSBFD, including a sale of $5,264.25 in June 2023, for shipping to BSBFD in Butte." (*Id.*) The SAC further alleges that "Heiman similarly delivered Fire-Dex equipment directly to the Boulevard Fire Department in Butte in May and June 2023." (*Id.*)

---

[1] *See* https://heimanfiretrucks.com/sales-team.

16

The SAC alleges that Honeywell delivers products identified as "MORNING PRIDE MFG., LLC., DBA HONEYWELL FIRST RESPONDER PRODUCTS" directly to Montana. (*Id*. ¶ 152.) The SAC includes an image of a product labeled "PROTECTIVE GARMENT FOR STRUCTURAL FIRE FIGHTING" with the above identification that was delivered directly to the Racetrack Volunteer Fire Department in Butte-Silver Bow County, Montana. (*Id*.) Plaintiffs alleged that "[t]he image shows that the jacket was manufactured specifically for 'Racetrack VFD' on May 26, 2020." (*Id*.)

Plaintiffs SAC alleges that Innotex's website has a dealer locator page that identifies the following three dealers in Montana: (1) Axmen Fire Equipment, 7655 Highway 10 West, Missoula, Montana 59808; (2) McFadden Consulting, LLC, 256 Saint Johns St., Lolo, Montana 59847-9605; and (3) Northern Rockies Fire Inc., 2549 U.S. Highway 2 E, Kalispell, Montana 59901. (*Id*. ¶ 153.)[2] Plaintiffs allege that Northern Rockies Fire Inc. lists Innotex turnout gear for sale. (*Id*. ¶ 154.)[3] Plaintiffs also allege that LN Curtis, which sells turnout gear to Plaintiff Butte Silver-Bow's Fire District in Montana, lists Innotex turnout gear for sale. (*Id*.)[4]

These contacts prove sufficient to establish Defendants' purposeful availment to Montana. "Physical entry into the state, either by the defendant in person or

---

[2] Innotex's store locator page no longer identifies any Montana dealers. *See* https://innotexprotection.com/en-ca/store-locator/.

[3] The Court could not verify this claim.

[4] *See* https://lncurtis.com/innotex/.

through an agent, goods, mail, or some other means, qualifies as a relevant contact." *Cataraha*, 2018 WL 3448283, at *4 (citing *Walden*, 571 U.S. at 285). Defendants' products did not enter Montana randomly through the stream of commerce. Defendants made efforts to market, sell, and advertise their products into Montana.

The Court finds unpersuasive Fire-Dex's argument that Plaintiffs fail to allege any Montana entity purchased its gear. (Doc. 368 at 7-8.) Plaintiffs provide a receipt and shipping information that indicates purchase which proves sufficient at this stage even if an authorized dealer made the shipment. (Doc. 234 ¶ 151.) The Court finds similarly uncompelling Innotex's arguments (Doc. 372 at 5-6) and Morning Pride's arguments (Doc. 316 at 10-15) on this matter. Defendants' conduct establishes contacts expressly aimed at the forum state, not merely contacts that were "random, fortuitous, or attenuated." *Walden,* 571 U.S. at 286.

### ii.    Forum-related activities.

A plaintiff must establish an affiliation between the forum and the underlying controversy. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). "[P]rincipally, [an] activity or an occurrence that takes place in the forum State [] is therefore subject to the State's regulation." *Id.* at 359-60 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017)). The Court again concludes that Plaintiff BSB's claims relate to the purchase in Montana of allegedly defective turnout gear manufactured, sold,

18

marketed, and distributed by Defendants. Plaintiff BSB's alleged injuries, buying and using defective turnout gear that needs replacement, occurred in Montana. The above purposeful contacts by Defendants of selling, advertising, and marketing the turnout gear connects to conduct in the forum state of Montana. Unlike *Tackett v. Duncan*, 334 P.3d 920, 929 (Mont. 2014), Defendants' links to Montana continue to go beyond only a connection with Plaintiff BSB. New Defendants Fire-Dex, Innotex, and Morning Pride's contacts with the forum and the underlying controversy remain sufficiently related to establish specific personal jurisdiction at this stage of the litigation.

### iii.    Reasonableness.

Courts must consider whether the exercise of personal jurisdiction would comport with due process. *Kell v. Freedom Arms Inc*., 748 F. Supp. 973, 980-81 (D. Mont. 2024) (citing *Milky Whey, Inc. v. Dairy Partners, LLC*, 342 P.3d 13, 17 (Mont. 2015)). Due process "depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford*, 592 U.S. at 358 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945)).

Courts may consider the following factors when examining the reasonableness of personal jurisdiction: (1) the extent of the defendant's purposeful

interjection into Montana; (2) the burden on defendant of defending in Montana; (3) the extent of the conflict with the sovereignty of another possible forum; (4) Montana's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of Montana to plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Cataraha*, 2018 WL 3448283, at *5. The "burden falls on the defendant to overcome a presumption of reasonableness by presenting a compelling case that jurisdiction would be unreasonable." *Id*.

The Court again finds that exercising personal jurisdiction over New Defendants appears reasonable. The Court twice has addressed some of the factors. (*See* Doc. 85, Doc. 159.) Montana continues to have a strong interest in protecting its citizens involved in this action. It does not appear that litigation would be more burdensome or expensive in Montana than any other forum. Immovable evidence, not within Montana, would not be an issue in the case. The District of Montana efficiently can resolve the disputes between Plaintiff BSB and Defendants, as explained above relating to the first-to-file rule.

The Court understands that Defendants may be burdened by adjudication of these claims in Montana. Defendants' contacts with the forum outweigh these concerns. Defendants will be burdened by adjudication of Plaintiff BSB's claims in any forum. Defendants have directed contacts to the Montana market with the

products at issue in this case. These directed contacts support the Court's exercise of personal jurisdiction over the New Defendants as it did with the Original Defendants.

### C. Personal Jurisdiction Over New Defendant EIDP.

EIDP mainly reasserts the same lack of personal jurisdiction arguments of Dupont that the Court already has rejected (Doc. 159, Doc. 173). (Doc. 379 at 6-11.) The Court previously determined that Dupont's contact with Montana, specifically the targeted giveaways aimed at Montana held by Globe and Dupont to giveaway firefighter turnout gear, proved sufficient to establish personal jurisdiction over Dupont. Although a newly added defendant to the action, it is the Court's understanding from the SAC that EIDP remains an extension of Dupont with the same contacts to Montana as Dupont. (Doc. 234 at 31-32.) Plaintiffs refer to EIDP as "Old Dupont" and collectively as "Dupont" in the SAC. (Doc. 234 at 12.)

The Court finds it may exercise personal jurisdiction over EIDP for the same reasons as outlined by the Court relating to Defendant Dupont. The Court declines to address EIDP's reasserted arguments that any of its limited Dupont contacts directed at Montana remain insufficiently related to Plaintiff Butte-Silver Bow's claims as "[n]one of [the Court's] precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do." *Ford*, 592 U.S. at 361-62. *Ford* emphasized the disjunctive nature of the relatedness

prong of personal jurisdiction. *Id. Ford* noted that though "[t]he first half of that standard asks about causation, . . . the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Id*.; *see also Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1094 (9th Cir. 2023). Plaintiff Butte-Silver Bow sufficiently alleges that Dupont's contacts with Montana, and by extension EIDP's contacts with Montana, relate to Plaintiff Butte-Silver Bow's claims. Plaintiff Butte-Silver Bow alleges that Dupont advertised and distributed the same model and design of firefighter turnout gear sets containing Dupont's PFAS containing materials to volunteer Montana fire departments on numerous occasions. Dupont has served a market in Montana for the very turnout gear sets that Plaintiff Butte-Silver Bow alleges were defective and caused injury in Montana. *Ford*, 592 U.S. at 365.

The Court acknowledges that EIDP disputes that it provided PFAS containing materials to either Globe or MSA that could have been included in the giveaway turnout gear. (Doc. 379 at 7.) The Court must take Plaintiff Butte Silver Bow's factual allegations as true and resolve factual disputes in Plaintiff Butte Silver Bow's favor, however, at the motion to dismiss stage. *See e.g. Gaspari Nutrition, Inc. v. Kaltwasser*, No. CV 16-5522-JFW (GJSx), 2017 WL 11632947, at *4 (C.D. Cal. Mar. 30, 2017) (citing *Marvix Photo, Inc. v. Brand Techs., Inc*., 647 F.3d 1218, 1223 (9th Cir. 2011).)). Plaintiff Butte Silver Bow has plausibly alleged that the turnout

22

gear given away by Dupont/Globe and distributed into Montana could have contained PFAS-containing materials manufactured by Dupont entities such as EIDP.

### D. Personal Jurisdiction Over New Plaintiffs' Claims.

The Court recognizes potential validity behind Defendants' claims of procedural defects and barriers related to the Court exercising personal jurisdiction over New Plaintiffs' claims. The Court briefly will address these concerns as they relate to *Bristol-Myers*. (*See e.g.*, Doc. 314 at 16-20.) Defendants argue that *Bristol-Myers* forecloses New Plaintiffs' claims against Defendants as their claims remain disconnected from any Defendants' actions in Montana. (*Id*.) Plaintiffs argue that *Bristol-Myers* "does not bar nationwide Rule 23 class actions." (Doc. 338 at 54.) Plaintiffs assert that *Bristol-Myers* involved a mass tort action, not a class action, and that the weight of authority demonstrates that *Bristol-Myers* does not extend to class actions. (*Id*. at 56.)

The Court recognizes the authority supporting both arguments. The Court observes that no binding authority directly clarifies the proper result. The Court finds that it proves imprudent to engage in substantive analysis on the issue at this time. The Court reiterates that the JPML soon will be considering whether to consolidate these numerous class actions and parties into an MDL. A potential pending MDL would moot these issues and require additional and different briefing, argument, and

analysis. The Court declines to further address this issue, or the Parties' additional arguments pertaining to personal jurisdiction, at this time. The Court specifically declines to address the discussion regarding personal jurisdiction as to putative class members at this time.

### III.    ADDITIONAL ELEMENTS OF PLAINTIFFS' RICO CLAIMS

RICO makes it unlawful "for any person . . . associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). A RICO claim requires plausible allegations "that the defendant engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally, that (5) the defendant caused injury to plaintiff's business or property." *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086 (9th Cir. 2002). These elements must be pleaded with particularity. *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065 (9th Cir. 2004); *see* Fed. R. Civ. P. 9(b). The particularity requirement means that "the pleader must state the time, place, and specific content of the false representations," "the identities of the parties to the misrepresentation," and "'the role of each defendant in each scheme.'" *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## A. Indirect Purchaser Rule.

The U.S. Supreme Court has barred claims by indirect purchasers in the antitrust context. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 726-27, 746 (1977). *Illinois Brick* stands for the proposition that "indirect purchasers who are two or more steps removed from the violator in a distribution chain" cannot sue for damages. *Apple Inc. v. Pepper*, 587 U.S. 273, 279, n.1 (2019). The Ninth Circuit has not determined whether *Illinois Brick* applies to civil RICO claims. *Biederman v. FCA US LLC*, 765 F. Supp. 3d 920, 932 (N.D. Cal. 2025), *appeal voluntarily dismissed*, No. 25-3063 (9th Cir. 2025). Every other federal court of appeals has held, however, that *Illinois Brick* applies to civil RICO claims. *Id*.

*Biederman* originally certified an interlocutory appeal under § 1292(b). The Ninth Circuit granted permission to hear the appeal in *Biederman* on June 18, 2025. The appeal in *Biederman* presented the specific issue of "whether *Illinois Brick* applies to claims brought under 18 U.S.C. § 1964(c) [RICO]." *Biederman v. FCA US LLC*, 2025 WL 1266907, at *3. The parties had briefed the issue fully. *Biederman v. FCA US, LLC, et. al*., Case No. 25-3063 (9th Cir. 2025). The plaintiffs voluntarily dismissed their appeal. *Biederman* no longer remains pending before the Ninth Circuit.

The Ninth Circuit's original grant of appeal indicated that substantial grounds exist for differences of opinion as to whether *Illinois Brick's* indirect-purchaser rule

25

applies to civil RICO claims. The Court previously determined that reserving ruling on this issue would promote judicial efficiency given the uncertainty and differences of opinion in the application of the indirect-purchaser rule to RICO claims in the Ninth Circuit. Although the appeal no longer remains pending, the Court determines it prudent at this time to again deny Defendants' motion to dismiss Plaintiffs' RICO claim without prejudice. The Court recognizes that the numerous related class actions in this litigation and across the country may soon be consolidated and it declines to issue such a substantive ruling before that time.

### B. Proximate Cause.

The causation element of a RICO claim requires a plaintiff "to show that a RICO predicate offense not only was a 'but for' cause of his injury but was the proximate cause as well." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010). The plaintiff's injury must have some direct relation with the defendant's alleged conduct. *Id*. at 9-10. A connection between the plaintiff's injury and the defendant's conduct "that is 'too remote,' 'purely contingent,' or 'indirect' proves insufficient" to establish causation. *Id*. A plaintiff's damages under a RICO claim "cannot be contingent on or derivative of harm suffered by a different party." *Williams & Cochran, LLP v. Quechan Tribe of the Fort Yuma Indian Reservation*, No. 317CV01436GPCMDD, 2018 WL 6018504, at *12 (S.D. Cal. Nov. 16, 2018) (citing

*Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 494-95 (4th Cir. 2018)).

The Court again determines that the connection between Plaintiffs' injury, buying allegedly defective turnout gear and needing replacement gear, and Defendants' alleged conduct of concealing the known dangers of PFAS, proves sufficient for proximate causation at this stage. Plaintiffs' claims revolve around the alleged collective effort to conceal the dangers of PFAS to continue manufacturing, selling, and distributing PFAS-laden turnout gear. Defendants' alleged collaborative effort in keeping PFAS information from the public directly connects to Plaintiffs' alleged injury of purchasing defective turnout gear without knowing its harms.

The Court recognizes that multiple Defendants had to work together to allegedly conceal the dangers of PFAS. Unlike the allegations in *Slay's Restoration*, 884 F.3d at 494-95, Plaintiffs' injuries are not contingent on, or derivative from, an injury of another party closer to Defendants in the chain of causation. *See Albert v. Glob. Tel\*Link Corp.*, 68 F.4th 906, 911 (4th Cir. 2023). Plaintiffs claim to have remained unaware of PFAS dangers due to Defendants' alleged concealment efforts. Plaintiffs allege that this lack of awareness caused them to purchase the turnout gear containing PFAS, and to suffer harm caused by Defendants' conduct. Plaintiffs' injuries do not appear too remote, indirect, or contingent on another's harm.

27

Plaintiffs plausibly have alleged that Defendants' racketeering activity proximately caused Plaintiffs' injury.

### IV.    ARTICLE III STANDING

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold [*sic*] requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983); *Montana Wildlife Fed'n v. Bernhardt*, No. 4:18-CV-69-BMM, 2021 WL 4865257, at *1 (D. Mont. June 21, 2021). Article III standing requires the following plausible allegations: (i) that the plaintiff suffered an injury in fact that is concrete, particularized and actual or imminent; (ii) that the injury in fact is fairly traceable to the defendant; and (iii) that the injury in fact would likely be redressed by judicial relief and a favorable decision. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180-81 (2000) (citations omitted).

"[S]tanding is not dispensed in gross." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (quoting *TransUnion*, 594 U.S. at 431). A plaintiff bears the burden of demonstrating "standing for each claim that they press against each defendant, and for each form of relief that they seek." *Murthy*, 603 U.S. at 44-45 and 61 (internal quotation marks omitted). Plaintiffs' main allegations revolve around Defendants' alleged conduct of "design[ing], develop[ing], manufactur[ing], test[ing],

packag[ing], promot[ing], market[ing], advertis[ing], distribut[ing], and/or [selling]

PFAS." (Doc. 234 ¶¶ 10, 135, 213-234.) Plaintiffs allege that "[a]ll of the Defendants

either manufactured or sold, at some point during the class period, a range of

products that use PFAS in addition to PFAS-infused turnout gear." (*Id.* ¶ 18.)

Plaintiffs allegedly purchased the turnout gear, sold by various Defendants,

and in particular, 3M, Globe, Dupont, Gore, Lion, Fire-Dex, Innotex and Morning

Pride, containing the harmful PFAS between 2008 and 2024. (*Id.* ¶ 27, 33, 38, 43,

48, 53, 57, 64, 69, 75, 81, 90, 96, 105, 112, and 121.) Plaintiffs allege that the supply

chain starts with 3M and/or Dupont manufacturing the PFAS chemicals and the rest

of the Defendants manufacturing and/or distributing the PFAS components into

technical fabrics and products, and, eventually, turnout gear. (*Id.* ¶¶ 213-234.)

Plaintiffs allege harm from the purchase of the allegedly defective turnout gear

containing PFAS. (*Id.* ¶ 9.) Plaintiffs seek reimbursement to replace the allegedly

harmful turnout gear containing PFAS purchased by Plaintiffs. (*Id.* ¶ 19-20.) The

Court will address the elements of Article III standing in turn.

### A. Injury-in-Fact.

Defendants assert that Plaintiffs fail to assert an injury-in-fact that proves

concrete, particularized, and actual or imminent. (*See e.g.*, Doc. 309 at 21.)

Defendants fail to distinguish the injury Plaintiffs' SAC now alleges with the injury

Plaintiff BSB previously alleged. Plaintiffs allege that peer-reviewed testing found

PFAS in every layer of turnout gear of the kind Plaintiffs purchased, including in gear manufactured by Defendants Globe, Lion, and Gore. (*See* Doc. 234 ¶¶ 197-205). Plaintiffs further allege that studies concluded that firefighters had PFAS blood serum levels and that turnout gear is a "key exposure route." (*Id*. ¶¶ 206-209.)

These allegations undermine Defendants' arguments that the injuries, or risk of injury, prove speculative. Unlike *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009), Plaintiffs' allegations demonstrate that someone has suffered injury from PFAS-contaminated turnout gear, in addition to the monetary injury they suffer due to replacement costs. Plaintiffs provide sufficient allegations that replacement costs prove actual. Plaintiffs' allegations are not merely "conjectural or hypothetical." *Id*. Plaintiffs also include allegations that Defendants made various assertions of safety, suggesting such promises were included in the benefit of the bargain. *Id*.; (*see e.g.*, Doc. 234 ¶ 275 (Morning Pride publicly advertises its turnout gear as "[d]esigned to provide safety," referring to its turnout gear products as "the pioneer of safety by design.").) Injury-in-fact can be based on a "substantial risk that harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm." *See In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1213 (N.D. Cal. 2014) (quoting *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 414 n.5 (2013)). The Court finds Plaintiffs' allegations sufficient to demonstrate injury-in-fact at this time.

### B. Traceability.

A party must establish "a causal connection between the injury and the conduct complained of" to establish traceability for standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Traceability "does not require parties to show proximate causation or but-for causation." *In re Snowflake, Inc. Data Sec. Breach Litig.*, 2025 WL 3023007, at *5 (D. Mont. Oct. 29, 2025) (internal quotations omitted). Traceability instead requires only that "[t]he line of causation between the defendant's action and the plaintiff's harm" be "more than attenuated." *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1141 (9th Cir. 2013). The presence of multiple links in a causal chain does not bar traceability so long as the links are not "hypothetical or tenuous." *See id*. at 1141-42. For example, the court in *Peeler v. SRG Glob. Coatings, LLC*, 2024 WL 4625640, at *11-12 (E.D. Mo. Oct. 30, 2024), determined that the plaintiffs had established causation by alleging that one of the defendants had manufactured PFAS used in another defendant's manufacturing process.

Plaintiffs must establish Article III standing for each Defendant and "tie [its alleged] injur[ies] to each Defendant" individually. *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig. (Hardwick)*, 87 F.4th 315, 320 (6th Cir. 2023). The law does not require Plaintiffs to show that each Defendant was the "sole source" of the injuries. *Wash. Envt'l Council*, 732 F. 3d at 1142. The Court recognizes that

Plaintiffs' SAC integrates additional Defendants into the causal chain. The Court fails to find, however, how these New Defendants so disrupt the causal chain as to weaken the previously established standing.

The causal chain involves multiple Defendants, but not "third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries" which would make Plaintiffs' causal chain too weak to support standing. *Wash. Envt'l. Council*, 732 F.3d at 1142 (quoting *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F. 3d 849, 867 (9th Cir. 2012)). Plaintiffs connect the plausible links in the chain of traceability for all Defendants by alleging the collective enterprise, and collective liability, of Defendants in concealing the known dangers of PFAS in the turnout gear.

The Court already has rejected 3M's argument that Plaintiffs must trace their alleged injuries with high-level specificity. (*See* Doc. 159 at 15-17.) No rule requires the scientific and pleading particularity that 3M seeks. (*See id.*, citing *Winans v. Ornua Foods N. Am. Inc.*, 731 F. Supp. 3d 422, 428 (E.D.N.Y. 2024); *Clinger v. Edgewell Pers. Care Brands, LLC*, 2023 WL 2477499, at *3 (D. Conn. Mar. 13, 2023); *Banks v. E.I. DuPont de Nemours & Co.*, 2022 WL 3139087 at *9 (D. Del. Aug. 4, 2022).) The Court previously has determined that Plaintiff BSB sufficiently demonstrated traceability over their claims against Globe based on direct purchase of Globe's products. (*See* Doc. 159 at 19.) The Court recognizes that the analysis

32

proves different for Non-Purchaser Plaintiffs' claims against Globe. The Court declines to address this issue in-depth at this time.

The Court similarly declines to issue a substantive holding on Morning Pride's traceability claim, and other Defendants' similar arguments regarding traceability, as to Plaintiffs that do not allege that they bought Morning Pride or specific Defendants' products. (*See* Doc. 316 at 6-10.) The Court notes Plaintiffs' arguments sufficiently allege an interconnected enterprise that demonstrates collective participation and collective liability in concealing the known dangers of PFAS in turnout gear. (Doc. 338 at 68.) The Court determines that it proves imprudent to issue a substantive ruling on this issue at this time considering the pending decision by the JPML and potential consolidation of this and related cases in the near future.

## V.    PLAINTIFFS' STATE LAW CLAIMS

The Court recognizes the Parties extensively discussed issues related to Plaintiffs' various state law claims. The Court declines to issue a substantive holding on these disputes at this time. The Court instead will address these issues, if necessary, at a later date.

## CONCLUSION

The Court recognizes that it declined to provide final, substantive orders on numerous sections of this order. The Court declines, without prejudice, Defendants' motions to dismiss (Doc. 308, Doc. 311, Doc. 313, Doc. 315, Doc. 317, and Doc.

378). The Court will revisit the Parties' arguments as necessary at a later date. The Court finds that the pending JPML decision counsels against such substantive rulings on numerous disputes at this time. The Court recognizes that this decision contributes to delay in the matter at this time. The Court hopes, however, that this choice leads to increased judicial efficiency in the future.

## ORDER

Accordingly, **IT IS ORDERED** that Defendants' Motions to Dismiss (Doc. 308, Doc. 311, Doc. 313, Doc. 315, Doc. 317, and Doc. 378.) are **DENIED, without prejudice.** The Court will consider, as appropriate, any outstanding legal issues following the decision of the JMPL.

DATED this 28th day of July 2026.

Brian Morris, Chief District Judge
United States District Court

34